# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

WILLIS BICKHAM, JR.,

               Plaintiff,

    v.                                         3:24-CV-1417
                                                (DNH/MJK)

ALEX CZEBINIAK and DETECTIVE
HLAVACEK,

               Defendants.

---

WILLIS BICKHAM, JR., Plaintiff, pro se

MITCHELL J. KATZ, U.S. Magistrate Judge

TO THE HONORABLE DAVID N. HURD, U.S. DISTRICT JUDGE:

## ORDER and REPORT-RECOMMENDATION

Plaintiff commenced this action on November 21, 2024, by filing a complaint and a motion to proceed *in forma pauperis* ("IFP"). (Dkt. Nos. 1, 2). On November 22, 2024, United States District Judge David N. Hurd administratively closed this matter because plaintiff's IFP application was incomplete. (Dkt. No. 5). On December 6, 2024, plaintiff refiled his IFP application. (Dkt. No. 8). The Clerk has sent to the court for review plaintiff's complaint, together with his application to proceed *in forma pauperis* ("IFP") (Dkt. Nos. 1, 8).

1

## I.    <u>IFP Application</u>

Plaintiff declares in his IFP application that he is unable to pay the filing fee. (Dkt. No. 8).  After reviewing his application, this court finds that plaintiff is financially eligible for IFP status.

However, in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and 28 U.S.C. § 1915.  Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward pro se litigants and must use extreme caution in ordering *sua sponte* dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed.  *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir.

2

2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

In addition, Fed. R. Civ. P. 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 does not require detailed factual allegations, it does "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Houston v. Collerman*, No. 9:16-CV-1009 (BKS/ATB), 2016 WL 6267968, at *2 (N.D.N.Y. Oct. 26, 2016) (quoting *Iqbal,* 556 U.S. at 678). A pleading that contains allegations that "'are so vague as to fail to give the defendants adequate notice of the claims against them' is subject to dismissal." *Id.* (citing *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009)).

## II.  **Complaint**

On June 24, 2023, plaintiff was arrested by Detective Hlavacek and charged with one count of a criminal sex act in the first degree arising from an alleged interaction between plaintiff and a minor in the city of Binghamton, New York (Compl., pgs. 4,

7).[1] On August 2, 2024, plaintiff was indicted by a grand jury and charged with rape in the first degree, two counts of a criminal sexual act in the first degree, and one count of forcible touching. (Compl., pgs. 3-6). During his opening statement at trial on July 24, 2024, Assistant District Attorney Alex Czebiniak told the jury that he was going to prove that plaintiff was guilty of two counts of a criminal sex act in the first degree. (Compl., pg. 6). On July 25, 2024, the jury acquitted plaintiff on the first count of a criminal sex act in the first degree and Judge Joseph F. Cawley dismissed the second count of a criminal sex act because the victim allegedly testified at trial that the crime did not happen. The victim's trial testimony conflicted with her grand jury testimony. (Compl., pg. 6).[2]

The complaint alleges that plaintiff has been "disrespected by inmates," "looked at different[ly] by corrections officers," and "treated differently." (Compl., pg. 4). Plaintiff also alleges that his "name and character ha[ve] been slandered," and that he has suffered "a lot of mental issues." (Compl., pg. 4). Plaintiff also alleges that he lost human contact, money, job opportunities, educational opportunities, vocational opportunities, sexual activity, travel, and more. (Compl., pg. 5). According to plaintiff,

---

[1] Page references are to CM/ECF pagination system.

[2] Plaintiff attached what purports to be a copy of the Indictment (Compl. pgs. 3-6) (IND – 70708-23/001) as an exhibit to the complaint. The court is unable to determine whether plaintiff has included all pages of the Indictment. The court also notes the Broome County Clerk's Office October 8, 2024 letter advising plaintiff that his request for a Certificate of Disposition regarding Indictment 70708-23/001was not available because plaintiff was awaiting sentencing. (Dkt. No. 1-1, pg. 1). The October 8, 2024 letter suggests that perhaps plaintiff was either convicted or accepted a negotiated plea of one or more of the remaining charges in the Indictment. As plead, the complaint does not provide any clarity on this issue.

4

he was housed in solitary confinement because he was involved in a fight with another individual at the Broome County Jail. (*Id.*). Certain family members will not answer plaintiff's calls, and plaintiff lost his apartment together with personal possessions. (*Id.*).

The complaint sets forth three claims – the first for false arrest, the second for wrongful incarceration, and the third for defamation and intentional infliction of emotional distress. (Compl., pg. 8). By letter dated November 26, 2024 (Dkt. No. 7, pg. 1), plaintiff enclosed an affidavit ("Affidavit") in further support of his claims against the defendants. Plaintiff's Affidavit couches his claims within the framework of the Fourth and Eighth Amendments. (*Id.*).

By letter dated December 2, 2024, plaintiff advised the court that he wanted to amend the caption of his complaint to *Willis Bickham Jr. v. Alex Czebiniak Prosecuting District Attorney City of Binghamton.* (Dkt. No. 10)*.* Plaintiff's letter expressly states that he is not pursuing any claims against New York State, only against the "city defendants" for violations of his Fourth and Eighth Amendment rights. (*Id.*). The court does not construe plaintiff's letter as a request to terminate Detective Czebiniak as a named defendant.[3]

Plaintiff seeks monetary damages in the amount of $8,000,000.00.

---

[3] Where, as here, the plaintiff is pro se, his complaint must be construed "liberally, reading it with special solicitude and interpreting it to raise the strongest claims that it suggests." *J.S. v. T'Kach*, 714 F.3d 99, 103 (2d Cir. 2013) (quoting *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010)). This mandate "applies with particular force when a plaintiff's civil rights are at issue." *Maisonet v. Metro. Hosp. & Health Hosp. Corp.,* 640 F. Supp. 2d 345, 348 (S.D.N.Y. 2009).

## III.    Fourth Amendment

### A.    Legal Standard

A section 1983 claim for false arrest or false imprisonment "rest[s] on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). "False arrest is simply false imprisonment accomplished by means of an unlawful arrest." *Jenkins v. City of N.Y.*, 478 F.3d 76, 88 n.10 (2d Cir. 2007). Such claims are one and the same because "[f]alse arrest and false imprisonment overlap; the former is a species of the latter." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). The elements of a Fourth Amendment false arrest/imprisonment claim under 42 U.S.C. § 1983 are the same as those for a false arrest claim under New York law. *Kraft v. City of New York*, 696 F. Supp. 2d 403, 418 (S.D.N.Y. 2010). The New York State standard for false arrest requires that: "'(1) the defendants intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.'" *Sethi v. Nassau Cnty.*, No. 11-CV-6380, 2014 WL 2526620, at *3 (E.D.N.Y. June 3, 2014) (quoting *Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003)). An arrest is privileged if it is based on probable cause. *See Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest.") (citations and quotations omitted).

"To determine the existence of probable cause, a court considers the totality of the circumstances, *Jenkins v. City of New York*, 478 F.3d 76, 90 (2d Cir. 2007), based

on 'a full sense of the evidence that led the officer to believe that there was probable cause to make an arrest.'" *Guan v. City of New York*, 37 F.4th 797, 804 (2d Cir. 2022) (quoting *Stansbury v. Wertman*, 721 F.3d 84, 93 (2d Cir. 2013)). The court considers "those facts available to the officer at the time of the arrest and immediately before it." *Id.* (quoting *Fabrikant v. French*, 691 F.3d 193, 214 (2d Cir. 2012) (quoting *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)).

In *Coyle v. Coyle*, 354 F. Supp. 2d 207 (E.D.N.Y. 2005), the court held that, in establishing probable cause, an arresting officer may rely upon the report of the victim, absent circumstances that raise doubts as to the victim's veracity. *Id.* at 211-212 (citing *Loria v. Gorman*, 306 F.3d 1271, 1290 (2d Cir. 2002); *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001); *Singer v. Fulton County Sheriff,* 63 F.3d 110, 119 (2d Cir. 1995); *Thomas v. County of Putnam*, 262 F. Supp. 2d 241, 247 (S.D.N.Y. 2003)). The fact that plaintiff was ultimately found not guilty "has no bearing on his false arrest claim." (*Id.* at 211) (citing *Singer*, 63 F.3d at 118).

Probable cause does not require the police to be certain that a subsequent prosecution of the plaintiff will be successful, and once they have probable cause to arrest, the fact that they did not continue to investigate the situation is not material to the probable cause analysis. *Id.* at 212 (citations omitted). Probable cause may exist even if the arrest is based on "mistaken information" provided that the arresting officer acted reasonably and in good faith in relying on that information. *Id.* (citing *Welch v. City of New York*, No. 95-CV-8953, 1997 WL 436382, at *5 (S.D.N.Y. Aug. 4, 1997)). The Second Circuit affirmed the District Court's decision in *Coyle*, finding that the

plaintiff failed to allege any facts supporting his claim that the officers who arrested him lacked probable cause. *Coyle v. Coyle*, 153 F. App'x 10, 11 (2d Cir. 2005). The Second Circuit specifically stated that once a police officer has a "'reasonable basis for believing that there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.'" 153 F. App'x at 11 (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997)).

### B.    Analysis

In its current form, plaintiff's complaint does not provide sufficient facts for the court to conclude whether he can state a claim against Detective Hlavacek for false arrest/wrongful incarceration. Although plaintiff references the alleged victim's later testimony that the criminal activity never happened (Compl., pg. 4), he does not allege facts that would support an allegation that Detective Hlavacek lacked a good faith basis to rely on the information provided to him by the victim at the time of the arrest. *See Coyle*, 354 F. Supp. 2d at 212; *see also Curley v. Village of Suffern,* 268 F.3d 65, 70 (2d Cir. 2001) ("When information is received [by an officer] from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity.")*.* Otherwise, plaintiff's complaint is devoid of any allegations even suggesting that Detective Hlavacek lacked probable cause to arrest. *See Karupaiyan v. New York,* No. 23-1257-CV, 2024 WL 2174272, at *2 (2d Cir. May 15, 2024) (finding that plaintiff failed to plead a false arrest claim under § 1983 as he did "not allege any facts showing that the officers lacked probable cause for the arrest[.]").

The court therefore recommends that plaintiff's claims for false arrest/wrongful incarceration be dismissed without prejudice and with leave to amend. *See Harris v. Harris*, No. 19-CV-11658, 2020 WL 1140745, at *3 (S.D.N.Y. Mar. 9, 2020) (dismissing plaintiff's false arrest claim on initial review with leave to amend, directing plaintiff upon amendment to "allege any facts suggesting that the police failed to exercise their independent judgment and that there was no probable cause to arrest him.").

## IV.  Eighth Amendment

### A. Legal Standard

The Eighth Amendment prohibits the infliction of cruel and unusual punishments on persons convicted of crimes. *See* U.S. Const. amend. VIII. A pre-trial detainee, on the other hand, is not entitled to the Eighth Amendment's protection against cruel and unusual punishment, since "as a pre-trial detainee the plaintiff is not being 'punished.'" *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000)). Instead, pre-trial detainees in state custody are protected against mistreatment at the hands of prison officials by the Due Process Clause of the Fourteenth Amendment. *Id*. Whether plaintiff's claim is analyzed under the Eighth Amendment or Fourteenth Amendment, he must nevertheless allege the defendants' personal involvement in the alleged deprivation. *See Forbes v. Chakravorty*, 2015 U.S. Dist. LEXIS 114967, at *10 (S.D.N.Y. Aug. 18, 2015) ("even if Plaintiff plausibly alleges the requisite elements of an Eight[h] Amendment claim , he must further allege that each defendant was personally involved in the constitutional violation."); *see also*

9

*McNair v. Ponte*, 2018 U.S. Dist. LEXIS 29792, at *31 (S.D.N.Y. Feb. 22, 2018) (plaintiff failed to allege facts demonstrating defendants' personal involvement in his Fourteenth Amendment conditions of confinement claim.)

### B. Analysis

The complaint fails to allege facts that would allow the court to discern whether plaintiff was a pre-trial detainee or a convicted state prisoner, as indicated in the complaint (Compl., pg. 2), at the time his alleged Eighth Amendment claim accrued which seems to arise from his time at the Broome County Jail. (Dkt. No. 7, pg. 3). While the complaint only addresses the two counts of criminal sex act in the first degree, it is silent on the rape in the first degree and forcible touching charges alleged in the Indictment. (Compl. pgs. 3-6). The complaint fails to allege whether those two charges were disposed of by a jury verdict, plea agreement, or by some other method. As a result, the court is unable to analyze whether plaintiff's allegations of cruel and unusual punishment should be addressed under the Eighth Amendment or under the Due Process Clause of the Fourteenth Amendment. Regardless, the complaint is devoid of any allegations suggesting that Detective Hlavacek was personally involved in the alleged deprivation of plaintiff's rights under the Eighth Amendment or Fourteenth Amendment. Accordingly, the court recommends that plaintiff's Eighth Amendment claim be dismissed without prejudice with leave to amend for plaintiff to clarify whether his alleged claim falls within the framework of the Eighth Amendment or the Fourteenth Amendment and to what extent, if any, Detective Hlavacek was involved in the alleged deprivation.

10

## V.  <u>A.D.A. Czebiniak</u>

It is well-settled that "[p]rosecutors sued under § 1983 enjoy absolute immunity 'from claims for damages arising out of prosecutorial duties that are intimately associated with the judicial phase of the criminal process.'" *Joyner v. Cty. of Cayuga*, No. 5:20-CV-1904088 (MAD/TWD), 2020 WL 1904088, at *9 (N.D.N.Y. Apr. 17, 2020) (quoting, *inter alia, Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir. 1996) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976))). Prosecutorial immunity from § 1983 liability is broadly defined, covering "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) (quoting *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994)). This includes "the decision to bring charges against a defendant, presenting evidence to a grand jury, and the evaluation of evidence prior to trial." *Moye v. City of New York*, No. 11 Civ. 316, 2012 WL 2569085, at *5 (S.D.N.Y. July 3, 2012) (quoting *Johnson v. City of New York*, No. 00 CIV 3626, 2000 WL 1335865, at *2 (S.D.N.Y. Sept. 15, 2000)). Immunity even extends to "the falsification of evidence and the coercion of witnesses," *Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir. 1981) (citing *Lee v. Willins*, 617 F.2d 320, 321-22 (2d Cir. 1980)), "the knowing use of perjured testimony," "the deliberate withholding of exculpatory information," *Imbler*, 424 U.S. at 431 n.34, the "making [of] false or defamatory statements in judicial proceedings," *Burns v. Reed*, 500 U.S. 478, 490 (1991), and "conspiring to present false evidence at a criminal trial," *Dory*, 25 F.3d at 83.

Here, the complaint only contains allegations concerning A.D.A. Czebiniak's conduct in prosecuting the crime against plaintiff. There are no allegations that A.D.A. Czebiniak acted outside the scope of his responsibilities as a prosecutor. The court therefore recommends that plaintiff's claims against defendant A.D.A. Czebiniak be dismissed with prejudice and without leave to amend.

## VI.  Intentional Infliction of Emotional Distress/Defamation

Plaintiff's third claim seeks relief for intentional infliction of emotional distress which is "not a cognizable claim" under Section 1983. *See Chavis v. Syracuse Police Dep't*, No. 8:24-CV-889 (MAD/MJK), 2024 WL 4948681, at *3 (N.D.N.Y. Dec. 3, 2024) (quoting *York v. City of Johnstown*, No. 1:20-CV-01616 (MAD/ML), 2022 WL 2209441 (N.D.N.Y. June 21, 2022)) (citations omitted). The court therefore recommends that plaintiff's claim for intentional infliction of emotional distress be dismissed with prejudice and without leave to amend.

Plaintiff's third claim also seeks relief for defamation against local news outlets, none of whom are parties to this action and which are more appropriately litigated in state court. Plaintiff's claim for defamation is therefore dismissed without prejudice and without leave to amend.

Insofar as plaintiff's Section 1983 are all being dismissed, the court declines to exercise supplemental jurisdiction over plaintiff's claims for intentional infliction of emotional distress and defamation, both of which are state law claims.

12

## VII.  **Opportunity to Amend**

Generally, before the court dismisses a pro se complaint or any part of the complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Here, the court recommends that:

> (a) plaintiff's Fourth Amendment claim for false arrest/wrongful incarceration be dismissed without prejudice and with leave to amend;

> (b) plaintiff's Eighth Amendment claim Eighth be dismissed without prejudice and with leave to amend;

> (c) plaintiff's claim against A.D.A. Czebiniak be dismissed with prejudice and without leave to amend;

> (d) plaintiff's claim for intentional infliction of emotional distress be dismissed with prejudice and without leave to amend; and

> (e) plaintiff's claim for defemination be dismissed without prejudice and without leave to amend.

**WHEREFORE**, based on the findings above, it is

ORDERED, that plaintiff's motion to proceed IFP (Dkt. No. 8) is **GRANTED**,[4] and it is further

ORDERED, that plaintiff's request to voluntarily discontinue his claims against the State of New York (Dkt. No. 10) is **GRANTED**, and it is further[5]

RECOMMENDED, that the complaint be **DISMISSED WITH PREJUDICE** and without leave to amend against Assistant District Attorney Czebiniak[6] based on his prosecutorial immunity, and it is further

RECOMMENDED, that plaintiff's third claim for intentional infliction of emotional distress be **DISMISSED WITH PREJUDICE** and without leave to amend; and it is further

RECOMMENDED, that plaintiff's third claim for defamation be **DISMISSED WITHOUT PREJUDICE** and without leave to amend, and it is further

---

[4] The court notes that although plaintiff's IFP application has been granted, plaintiff will still be required to pay fees that he may incur in the future regarding this action, including but not limited to copying and/or witness fees.

[5] Although New York State is listed as a defendant in the caption to the action, it is not listed as a party in section III of the complaint. It also appears that plaintiff initially listed several other defendants in section III of the complaint that were scratched out and not included as party-defendants.

[6] Generally, when a district court dismisses a pro se action *sua sponte*, the plaintiff will be allowed to amend his action. *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999). However, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Pucci v. Brown*, 423 Fed. App'x 77, 78 (2d Cir. 2011).

**RECOMMENDED**, that all remaining claims be **DISMISSED WITHOUT PREJUDICE**[7] and with leave to amend pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted, and it is further

**RECOMMENDED**, that if the District Judge adopts this Order and Report-Recommendation, plaintiff be given thirty (30) days from the date of the District Judge's order, within which to submit a proposed amended complaint to the court for its consideration, and that plaintiff be advised that **any amended pleading must be a COMPLETE PLEADING, WHICH WILL SUPERCEDE THE COMPLAINT**, and that plaintiff must include all the remaining facts and causes of action in the amended complaint. **No facts or claims from the original complaint may be incorporated by reference**, and it is

**RECOMMENDED,** that if the District Court adopts this Order and Report-Recommendation, and plaintiff files a proposed amended complaint, the proposed pleading be returned to me for review, and it is

**ORDERED**, that while plaintiff may file objections to this Order and Report-Recommendation, before plaintiff submits any amended pleading, he should wait for the District Court to rule on the above Orders and Recommendations, and it is further

---

[7] Should Plaintiff seek to pursue any of the claims dismissed without prejudice, he must file an amended complaint. Any amended complaint, which shall supersede and replace the original Complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant which Plaintiff has a legal right to pursue, and over which jurisdiction may properly be exercised. Any amended complaint filed by Plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on plaintiff by regular mail.[8]

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:  January 7, 2025

Mitchell J. Katz
U.S. Magistrate Judge

---

[8] The Clerk shall also provide plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Case 3:24-cv-01417-DNH-MJK    Document 13    Filed 01/07/25    Page 17 of 103

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

2016 WL 6267968
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Eddie HOUSTON, Plaintiff,

v.

COLLERMAN, et. al., Defendants.

9:16-CV-1009 (BKS/ATB)
|
Signed 10/26/2016

**Attorneys and Law Firms**

EDDIE HOUSTON, 08-A-3122, Mid-State Correctional Facility, P.O. Box 2500, Marcy, New York 13403, Plaintiff, pro se.

**AMENDED DECISION AND ORDER** [1]

[1]     On October 20, 2016, the Court issued a Decision and Order upon initial review of plaintiff's complaint. Dkt. No. 4. This Amended Decision and Order is issued to correct clerical errors in the Conclusion of the Order.

BRENDA K. SANNES, United States District Judge

**I. Introduction**

**\*1** The Clerk has sent to the Court for review a civil rights action filed by pro se plaintiff Eddie Houston. Dkt. No. 1 ("Compl."). Plaintiff has not paid the statutory filing fee for this action and seeks leave to proceed in forma pauperis. Dkt. No. 2 ("IFP Application").

**II. IFP Application**

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 W L 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). Upon review of plaintiff's IFP Application, the Court finds that plaintiff has demonstrated sufficient economic need and filed the inmate authorization form required in the Northern District of New York. Plaintiff's IFP application (Dkt. No. 2) is granted. [2]

[2]     Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions or appeals that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). Based upon the Court's review of plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service, it does not appear that plaintiff has accumulated three strikes for purposes of 28 U.S.C. § 1915(g).

**III. Initial Screening**

Having found that plaintiff meets the financial criteria for commencing this action in forma pauperis, and because plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. §§ 1915(e) and 1915A. Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [3]

[3]     To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

**\*2** Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure. Rule 8 of

Case 3:24-cv-01417-DNH-MJK    Document 13    Filed 01/07/25    Page 18 of 103
Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz,* No. 95 CIV. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank,* No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown,* 335 Fed.Appx. 102, 104 (2d Cir. 2009).

## IV. Summary of the Complaint [4]

[4] Plaintiff annexed exhibits to the complaint. Dkt. No. 1-1. To the extent that the exhibits are relevant to the incidents described in the complaint, the Court will consider the complaint as well as any documents attached as exhibits. *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortgage Corp.,* 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz,* No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). The Court will construe the allegations in plaintiff's complaint with the utmost leniency. *See, e.g., Haines v. Kerner,* 404 U.S. 519, 521 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

**\*3** Plaintiff, an inmate currently being held at Mid-State Correctional Facility ("Mid-State C.F."), asserts claims arising out of his confinement in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). The incidents that form the foundation for this complaint occurred while plaintiff was confined at Elmira Correctional Facility ("Elmira C.F."). *See* Compl., *generally.* On July 13, 2013, plaintiff filed a grievance claiming that defendants Officer Copestick ("Copestick") and Officer Schieber ("Schieber") harassed him, on more than one occasion, about his medication. *See id.* at 6; *see* Dkt. No. 1-1 at 3-5. On August 5, 2013, after an investigation into the allegations, the Superintendent of Elmira C.F. denied plaintiff's grievance. *See* Dkt. No. 1-1 at 5.

On September 30, 2013, plaintiff was on his way to the masjid to participate in Ramadan when he was stopped by Copestick and Schieber and directed to the wall for a pat-frisk. *See* Compl. at 5. While plaintiff's hands were on the wall, Schieber "violently kicked" his legs from underneath him. *See id.* Schieber "stomped" on plaintiff's ankles while Copestick attempted to choke plaintiff. *See id.* During the assault, the officers yelled racial slurs. *See id.* Defendant Sergeant Collerman ("Collerman") watched the officers beat plaintiff. *See* Compl. at 5. As a result of the attack, plaintiff's eyeglasses were broken, his ankle was swollen, and he could not walk. *See id.* at 5, 9.

At approximately 5:00 p.m., plaintiff received medical treatment for complaints of pain in his right big toe and swelling in his right foot. *See* Dkt. No. 1-1 at 19. Plaintiff

Case 3:24-cv-01417-DNH-MJK    Document 13    Filed 01/07/25    Page 19 of 103

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

received Motrin and was advised to follow with sick call requests, if needed. *See id.* A "use of force/inmate injury" report was compiled. [5] *See id.* At approximately 7:15 p.m., plaintiff, a diabetic, told a medical provider that he had not received his daily "medication." *See id.* The provider ordered various medications to be delivered to plaintiff on a daily basis. *See id.*

[5]    The Use of Force report was not annexed as an exhibit to the complaint.

On October 1, 2013, plaintiff received a misbehavior report charging him with assault on staff and with refusing a direct order and search. [6] *See* Compl. at 5. On the same day, plaintiff was placed in confinement in the Special Housing Unit ("SHU"). *See* Dkt. No. 1-1 at 19. On October 3, 2013, plaintiff attended a Hearing regarding the misbehavior report. [7] *See* Dkt. No. 1-1 at 10. On November 3, 2013, plaintiff received a copy of the hearing disposition dismissing all charges. *See* Dkt. No. 1-1 at 11; Dkt. No. 1 at 5.

[6]    The name of the officer who served the misbehavior report is not clearly legible on the Hearing Disposition annexed as an exhibit. *See* Dkt. No. 1-1 at 10. Plaintiff does not allege that Copestick, Schieber, or Collerman delivered the report. The disposition form indicates that the charges were reported by Schieber. *Id.* The misbehavior report was not annexed as an exhibit to the complaint.

[7]    The officer who presided over the hearing was a Captain at Elmira C.F. However, the name of the hearing officer is not clearly legible. *See* Dkt. No. 1-1 at 10-11.

On November 3, 2013, plaintiff was released from the SHU. *See* Compl. at 5. While plaintiff was in the SHU, he was unable to participate in Ramadan, denied religious meals, denied parole, and excluded from mental health programs. *See id.*

Construed liberally, the complaint contains the following claims: (1) Copestick and Schieber violated plaintiff's Eighth Amendment rights with use of excessive force (Fifth, Fifteenth, Twentieth, and Twenty-Second Causes of Action); (2) Collerman failed to protect plaintiff from the assault in violation of plaintiff's Eighth Amendment rights (Fifteenth Cause of Action); (3) defendants were deliberately

indifferent to plaintiff's serious medical needs in violation of the Eighth Amendment (Sixth, Seventh, and Fifteenth Causes of Action); (4) Copestick and Schieber retaliated against plaintiff in violation of plaintiff's First Amendment rights (Twenty-First Cause of Action); (5) plaintiff's First Amendment rights to religious freedom were violated (Fourth Cause of Action); (6) plaintiff's Fourteenth Amendment rights to due process and equal protection were violated (First, Second, Third, Sixth, Sixteenth, and Eighteenth Causes of Action); (7) defendants failed to investigate plaintiff's complaints and follow grievance procedures (Tenth and Thirteenth Causes of Action); (8) perjury claims against officers who filed the misbehavior report (Eleventh and Seventeenth Causes of Action); and (9) supervisory claims against DOCCS (Eighth, Ninth, Twelfth, Fourteenth, Nineteenth, Twenty-Third, Twenty-Fourth, Twenty-Fifth, and Twenty Sixth Causes of Action). *See* Compl., *generally.* Plaintiff seeks compensatory damages, injunctive relief, and criminal charges against defendants (Eleventh and Seventeenth Causes of Action). *See* Compl. at 9-13.

## V. Analysis

### A. Eleventh Amendment

**\*4**  The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer,* 568 F.3d 355, 365-66 (2d Cir. 2009). It is well-settled that Congress did not abrogate states' immunity through 42 U.S.C. § 1983, *see Quern v. Jordan,* 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the claims asserted in plaintiff's complaint. *See generally Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 38-40 (2d Cir. 1977); *Dawkins v. State of New York,* No. 93-CV-1298 (RSP/GJD), 1996 W L 156764 at \*2 (N.D.N.Y. 1996).

Here, insofar as plaintiff seeks an award of money damages pursuant to Section 1983 against DOCCS, those claims are

Case 3:24-cv-01417-DNH-MJK   Document 13   Filed 01/07/25   Page 20 of 103
Houston v. Collerman, Not Reported in Fed. Supp. (2016)
2016 WL 6267968

dismissed as plaintiff seeks relief from a defendant immune from suit under section 1983. *See LeGrand v. Evan*, 702 F.2d 415, 417 (2d Cir. 1983); *see Meehan v. Kenville*, 555 Fed.Appx. 116 (2d Cir. 2014); *see Simmons v. Gowanda Corr. Facility*, No. 13-CV-0647, 2013 WL 3340646, at *1 (W.D.N.Y. July 1, 2013) ("the New York State Department of Corrections and [the named correctional facility] enjoy the same Eleventh Amendment immunity from suit in federal court as enjoyed by the state itself") (quoting *Posr. v. Court Officer Shield No. 207*, 180 F.3d 409, 411 (2d Cir. 1999)).

### B. Eighth Amendment

#### 1. Excessive Force Claims

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) ("[t]he Supreme Court has emphasized that the nature of the force applied is the core judicial inquiry in excessive force cases —not whether a certain quantum of injury was sustained."). "Accordingly, when considering the subjective element of the governing Eighth Amendment test, a court must be mindful that the absence of serious injury, though relevant, does not necessarily negate a finding of wantonness." *Wynter v. Ramey*, No. 11-CV-0257 (DNH/DEP), 2013 W L 5465343, at *5 (N.D.N.Y. Sept. 30, 2013) (citations omitted).

Plaintiff has identified the time, location and individuals involved in the alleged assault. Thus, the Court finds that plaintiff's Eighth Amendment excessive force claims against Copestick and Schieber survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to

whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

#### 2. Failure To Intervene

**\*5** The failure of corrections officers to employ reasonable measures to protect an inmate from violence by others may rise to the level of an Eighth Amendment violation. *See Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985). Moreover, allegations that an officer failed to intervene and prevent assaults are sufficient to state an Eighth Amendment failure to protect claim. *See Rogers v. Artus*, No. 13-CV-21, 2013 WL 5175570, at *3 (W.D.N.Y. Sept. 11, 2013). To establish liability under a failure to intervene theory, a plaintiff must prove the use of excessive force by someone other than the individual and that the defendant under consideration: 1) possessed actual knowledge of the use by another of excessive force; 2) had a realistic opportunity to intervene and prevent the harm from occurring; and 3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force. *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001). In order to succeed on a claim of failure to protect, the inmate "must establish both that a substantial risk to his safety actually existed and that the offending [defendant] knew of and consciously disregarded that risk." *See Walsh v. Goord*, No. 07-CV-0246, 2007 WL 1572146, at *9 (W.D.N.Y. May 23, 2007) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1970)). In addition, a failure-to-protect claim requires a showing that prison officials acted with "deliberate indifference" to the inmate's safety. *Morales v. New York State Dep't of Corr.*, 842 F.2d 27, 30 (2d Cir. 1988).

At this early stage of the proceeding, plaintiff has alleged enough to require a response from Collerman to plaintiff's claim that he failed to protect plaintiff from the assault by Copestick and Schieber. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

#### 3. Deliberate Indifference to Serious Medical Needs

To state an Eighth Amendment claim for medical indifference, a plaintiff must allege that the defendant was deliberately indifferent to a serious medical need. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component of an Eighth Amendment deliberate indifference

Houston v. Cofferman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

medical claim "requires that the alleged deprivation must be sufficiently serious, in the sense that a condition or urgency, one that may produce death, degeneration, or extreme pain exists." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)) (internal quotation marks omitted). Under the subjective element, medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act ... that evinces 'a conscious disregard of a substantial risk of serious harm.' " *Chance v. Armstrong*, 143 F. 3d 698, 703 (2d Cir. 1998) (quoting *Hathaway*, 99 F.3d at 553). "Deliberate indifference requires more than negligence but less than conduct undertaken for the very purpose of causing harm." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). To assert a claim for deliberate indifference, an inmate must allege that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702. The inmate must also demonstrate that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer*, 511 U.S. at 835. An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle*, 429 U.S. at 105-06.

In this instance, even assuming plaintiff's injuries were sufficiently serious, plaintiff must allege facts to demonstrate that defendants acted with a sufficiently culpable state of mind. *See Hathaway*, 99 F.3d at 553. Plaintiff claims that his medical treatment was inadequate because his ankle was not x-rayed until he was transferred to "his next facility," two months after the alleged incident. *See* Compl. at 10. "When the basis of a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious,' to support an Eighth Amendment claim." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (citing *Chance*, 143 F.3d at 702). "Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, this Court has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment, ignored a 'life-threatening and fast-degenerating' condition for three days; or delayed major surgery for over two years." *Demata*

*v. New York State Corr. Dep't of Health Servs.*, 198 F.3d 233 (2d Cir. 1999) (internal citations omitted).

**\*6** Here, the complaint is void of any facts establishing that any defendant deliberately delayed plaintiff's medical treatment. On the day of the alleged attack, plaintiff received medical attention and prescription medication. *See* Dkt. No. 1-1 at 19. Plaintiff was treated on three other occasions in October 2013 for foot pain before undergoing x-rays on November 14, 2013. Dkt. No. 1-1 at 20-21. During those visits, plaintiff received ice packs, Motrin, and refused Ibuprofen. See id. Plaintiff does not allege that his condition deteriorated during that time. *See Rodriguez v. City of New York*, 802 F.Supp. 477, 482 (S.D.N.Y. 2011) (finding that the plaintiff did not establish that his condition worsened as a result of a delay between his request and receipt of medical attention). Plaintiff does not allege that he sought and was refused medical treatment during this two month time period. *See Kee v. Hasty*, No. 01 Civ. 2123, 2004 W L 807071, at \*29 (S.D.N.Y. April 14, 2004) (holding that the plaintiff's Eighth Amendment claims were overly conclusory because the inmate failed to specify the dates on which he was denied proper treatment, the nature of his needs on those dates, and the nature of the treatment that was purportedly denied by the defendants). The complaint lacks any facts to plausibly suggest that any defendant knew of the severity of plaintiff's injury and the risk posed by any delay in his treatment.

Plaintiff, a diabetic, also claims that he was unable to read or see for over one year because his eye glasses were not replaced until over a year after the assault. *See* Compl. at 10. The complaint does not contain any facts suggesting that plaintiff made any complaints or sick call requests to any defendant related to his eyeglasses. Plaintiff also failed to assert facts suggesting that he made any defendant "aware of the serious harm could occur" if he was not provided with his glasses. *See Myrie v. Calvo/Calvoba*, 591 F.Supp.2d 620, 628 (S.D.N.Y. 2008) (holding that the complaint did not suggest that any defendant was deliberately indifferent to the plaintiff's vision problems).

Plaintiff's Eighth Amendment allegations are also subject to dismissal based upon the failure to plead personal involvement on the part of any defendant. It is well settled in this Circuit that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Thus, "a Section 1983

Case 3:24-cv-01417-DNH-MJK    Document 13    Filed 01/07/25    Page 22 of 103
Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas,* No. 04-CV-7263, 2008 W L 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted). The complaint lacks any facts suggesting that Copestick, Schieber, or Collerman were involved in plaintiff's medical treatment or refused to allow plaintiff to receive medical attention. In the absence of factual allegations sufficient to plausibly suggest that any defendant was personally involved, the complaint fails to state a cognizable claim against him. Consequently, plaintiff's Eighth Amendment claims for deliberate indifference to plaintiff's medical needs are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim.

### C. First Amendment

#### 1. Retaliation

Plaintiff alleges that Copestick and Schieber assaulted him in retaliation for plaintiff's grievance against them. *See* Compl. at 6,13. To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting the following: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff – namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977); *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir. 2001)). The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act." *Dawes,* 239 F.3d at 491, *overruled on other grounds by Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002) (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir. 1983)); *Franco v. Kelly,* 854 F.2d 584, 590 (2d Cir. 1988).

*7 It is well-settled that filing a grievance is constitutionally protected conduct. *Johnson v. Eggersdorf,* 8 Fed.Appx. 140, 144 (2d Cir. 2001); *Graham v. R.J. Henderson,* 89 F.3d 75, 80 (2d Cir. 1996). A plaintiff can establish a causal connection that suggests retaliatory intent by showing that his protected activity was close in time to the complained-of adverse action. *Espinal v. Goord,* 558 F.3d 119, 129 (2d Cir. 2001) (citations omitted). While there is no "bright line" defining the limits of the temporal relationship, courts in the Circuit have held that an adverse action taken within three months after a protected activity can reasonably be perceived as retaliatory. *See Gorman-Bakos v. Cornell Coop. Extn. of Schenectady Cty.,* 252 F.3d 545, 554 (2d Cir. 2001); *see also Ashok v. Barnhart,* No. 01-CV-1311, 289 F.Supp.2d 305, 314 (E.D.N.Y. Oct. 30, 2003) (the interval between a protected activity and an adverse action that results in a finding of retaliation is generally no more than several months).

At this juncture, the Court finds that plaintiff's retaliation claims against Copestick and Schieber survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

#### 2. Religious Claims

Plaintiff alleges that the defendants violated his religious rights because he was unable to participate in Ramadan and denied his religious meals as a direct result of the false misbehavior report. Dkt. No. 1 at 5-6.

Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause. *See Ford v. McGinnis,* 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier,* 417 U.S. 817, 822 (1974)). "Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, [however,] are the interests of prison officials charged with complex duties arising from administration of the penal system." *Id.* (citing *Benjamin v. Coughlin,* 905 F.2d 571, 574 (2d Cir. 1990)). To state a First Amendment Free Exercise claim, a plaintiff must allege that (1) the practice asserted is religious in the person's scheme of beliefs, and that the belief is sincerely held; (2) the challenged practice of the prison officials infringes upon the religious belief; and (3) the challenged practice of the prison officials furthers some legitimate penological objective. *Farid v. Smith,* 850 F.2d 917, 926 (2d Cir.

Case 3:24-cv-01417-DNH-MJK    Document 13    Filed 01/07/25    Page 23 of 103

Houston v. Coleman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

1988] (citations omitted). A prisoner "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006) (citing *Ford*, 352 F.3d at 591). [8] A religious belief is "sincerely held" when the plaintiff subjectively, sincerely holds a particular belief that is religious in nature. *Ford*, 352 F.3d at 590. A prisoner's sincerely held religious belief is "substantially burdened" where "the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly v. Coughlin*, 76 F.3d 468, 476–77 (2d Cir. 1996). Once a plaintiff establishes that a sincerely held religious belief has been substantially burdened, "[t]he defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that these articulated concerns were irrational." *Salahuddin*, 467 F.3d at 275 (quoting *Ford*, 352 F.3d at 595) (punctuation omitted).

[8]    The Second Circuit has yet to decide whether the "substantial burden" test survived the Supreme Court's decision in *Emp't Div. v. Smith*, 494 U.S 872, 887 (1990), in which the Court suggested that application of the test "puts courts in 'the unacceptable business of evaluating the relative merits of differing religious claims.' " *Ford*, 352 F.3d at 592 (quoting *Emp't Div.*, 494 U.S. at 887); *see also Williams v. Does*, 639 Fed.Appx. 55, 56 (2d Cir. May 6, 2016) ("We have not yet decided whether a prisoner asserting a free-exercise claim must, as a threshold requirement, show that the disputed conduct substantially burdened his sincerely held religious beliefs."); *Holland v. Goord*, 758 F.3d 215, 220-21 (2d Cir. 2014) (declining to decide whether a prisoner must show, as a threshold matter, that the defendants' conduct substantially burdened his sincerely held religious beliefs in connection with a First Amendment free exercise claim). In the absence of any controlling precedent to the contrary, I have applied the substantial-burden test in this matter.

**\*8**  In this case, plaintiff has not alleged who issued the misbehavior report and it is not attached to the complaint. An inmate "has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997). While a false misbehavior report may give rise to a claim under § 1983 "when done in retaliation for the exercise of a

constitutional right," *Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015), here there is no such allegation. While the deprivation of religious meals in SHU may be sufficient to state a claim, *see Williams v. Does*, 639 Fed.Appx. 55, 56 (2d Cir. 2016); *Skates v. Shusda*, No. 9:14-CV-1092 (TJM/ DEP), 2016 WL 3882530, at \*\*4-5 (N.D.N.Y. May 31, 2016), here there is no indication that the defendants had any personal involvement in that conduct. The allegations, without more, fail to plausibly suggest that any defendant burdened plaintiff's right to freely practice his religion. Thus, plaintiff's First Amendment claims against are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### D. Fourteenth Amendment

#### 1. Equal Protection/Discrimination

Plaintiff claims that the September 30, 2013 assault was racially motivated. *See* Compl. at 6, 12. "When verbal harassment and simultaneous physical abuse ... are considered together, [courts] have little doubt concluding that plaintiff's allegations [are] sufficient to state a § 1983 claim for discrimination on the basis of race. *Cole v. Fischer*, 379 Fed.Appx. 40, 43 (2d Cir. 2010). "Under the Fourteenth Amendment's Equal Protection clause, a plaintiff may be able to recover for a physical assault that would not meet the objective threshold for Eighth Amendment excessive force claims, if the defendant's conduct was motivated by racial or religious discrimination." *Bhuiyan v. Wright*, No. 9:06-CV-409 ATB, 2011 WL 1870235, at \*9 (N.D.N.Y. May 13, 2011) (citation omitted).

At this juncture, plaintiff has sufficiently plead a Fourteenth Amendment equal protection claim to warrant a response from Copestick and Schieber. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

#### 2. Due Process

Plaintiff claims that defendants violated his due process rights when they failed to replace plaintiff's eyeglasses. *See* Compl. at 10. Plaintiff also asserts that his Fourteenth Amendment rights were violated because he was improperly confined to the SHU without a hearing as a result of a

Case 3:24-cv-01417-DNH-MJK    Document 13    Filed 01/07/25    Page 24 of 103

Houston v. Coleman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

false misbehavior report. *See id.* at 10. During his SHU confinement, was allegedly unable to participate in Ramadan, denied his religious meals, denied parole, and excluded from mental health programs. *See id.*

### a. Property Claim

The Supreme Court has held that the negligent or intentional deprivation of prisoner's property may not be the basis for constitutional claims if sufficient post deprivation remedies are available to address the claim. *Hudson v. Palmer*, 468 U.S. 517, 531 (1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 541 (1981)); *Davis v. New York*, 311 Fed.Appx. 397, 400 (2d Cir. 2009) (An alleged loss of property, "whether intentional or negligent – will not support a due process claim redressable under § 1983 if 'adequate state post-deprivation remedies are available.' ") (quoting *Hudson*, 468 U.S. 533). "New York in fact affords an adequate post-deprivation remedy in the form of, *inter alia*, a Court of Claims action." *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001). Because plaintiff has access to adequate state law remedies, he has not been deprived of property without due process of law and therefore cannot state a claim for relief pursuant to Section 1983. *See Love v. Coughlin*, 714 F.2d 207, 208-09 (2d Cir. 1983) (per curiam); *see also Aziz Zarif Shabazz v. Pico*, 994 F.Supp. 360, 473-74 (S.D.N.Y. 1998) (dismissing the plaintiff's claim that defendants destroyed his eyeglasses in violation of his due process rights). Thus, plaintiff's due process claims related to his eyeglasses are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### b. SHU Confinement

**\*9** To establish a due process claim, plaintiff must establish: "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (citation and internal quotation marks omitted). In this case plaintiff alleges that the false misbehavior report resulted in a SHU sentence.[9]

[9]    The complaint contains conflicting factual allegations related to the length of plaintiff's SHU confinement. Plaintiff claims that after "one month of being housed in SHU," he was released. *See*

Compl. at 5. In the Third Cause of Action, plaintiff claims that he served "over 60 days in SHU." *See id.* at 9.

A prisoner "has a liberty interest that is implicated by SHU confinement if it 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *J.S. v. T'Kach*, 714 F.3d 99, 106 (2d Cir. 2013) (quoting *Sandin v. Conner*, 515 U.S. 472, 484, (1995)); *see also Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). In making this determination courts are to consider, "among other things, the duration and conditions of confinement." *J.S.*, 714 F.3d at 106; *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009). The conditions of confinement are to be considered "in comparison to the hardships endured by prisoners in general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration." *Davis*, 576 F.3d at 134; *Palmer*, 364 F.3d at 66 n.4.

Although the Second Circuit has "explicitly avoided" creating "a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights," the Court has established guidelines. *Palmer*, 364 F.3d at 65. W here the plaintiff is confined for "an intermediate duration – between 101 and 305 days – 'development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required.' " *Id.* (quoting *Colon v. Howard*, 215 F.3d 227, 234 (2d Cir. 2000)). While confinements for less than 101 days "under normal SHU conditions may not implicate a prisoner's liberty interest," such confinements "could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions of *Sealy* or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer*, 364 F.3d at 65; *see Davis*, 576 F.3d at 133.[10]

[10]    The Second Circuit has noted that "[i]n the absence of a detailed factual record, we have affirmed dismissal of due process claims only in cases where the period of time spent in SHU was exceedingly short – less than the 30 days that the *Sandin* plaintiff spent in SHU—and there was no indication that the plaintiff endured unusual SHU conditions." *Palmer*, 364 F.3d at 65-66; *see Davis*, 576 F.3d at 133. Absent allegations in the complaint that the conditions of confinement were in some way

Case 3:24-cv-01417-DNH-MJK   Document 13   Filed 01/07/25   Page 25 of 103

Houston v. Cofferman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

atypical, however, many courts in this Circuit have granted motions to dismiss claims by plaintiffs with confinement exceeding thirty days when the plaintiffs failed to allege that the conditions of confinement were in some way atypical. *See, e.g., Acevedo v. Fischer,* No. 12-CV-6866, 2014 WL 5015470 at \*15 (S.D.N.Y. Sept. 29, 2014) (citing cases involving confinements of between forty and fifty days which were dismissed for failure to allege a protected liberty interest because there were no allegations of unusual confinement).

**\*10** In this case, the duration of the confinement, 30 to 60 days, "was not long enough to constitute an atypical and significant deprivation by itself," and the Court therefore must "look to the conditions of confinement." *Palmer,* 364 F.3d at 66; *see also Davis,* 576 F.3d at 133. Plaintiff claims that while he was confined in the SHU, he was unable to participate in Ramadan, denied his religious meals, denied parole, and excluded from his mental health program. *See* Compl. at 5, 10; Dkt. No. 1-1 at 1.

It is well established that prisoners do not have a constitutional right to parole. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex,* 442 U.S. 1, 7 (1979). "Where a state has created a statutory scheme for parole, the Due Process Clause protects prisoners insofar as they 'have a legitimate expectancy of release that is grounded in the state's statutory scheme.' " *Barna v. Travis,* 239 F.3d 169, 170–72 (2d Cir. 2001) (per curiam) (citing *Greenholtz,* 442 U.S. at 11–13). "New York's parole scheme is not one that creates in any prisoner a legitimate expectancy of release." *Barna,* 239 F.3d at 171. Plaintiff has also failed to plead that his inability to participate in mental health programs impacted a protected liberty interest. *See Nieves v. Prack,* No. 6:15-CV-6101, 2016 WL 1165820, at \*4 (W.D.N.Y. March 24, 2016) ("[Plaintiff's] claim that his inability ... to participate in various educational, vocational, rehabilitative or self-help programs might have hindered his ability to receive an early parole or release is ... speculative and fails to allege interference with a protected liberty interest.") (citations omitted). Here, the complaint lacks facts establishing when, how many times, and who deprived plaintiff of the right to attend his mental health program. With respect to plaintiff's religious claims, courts have found that the deprivation of communal religious services does not constitute an atypical and significant hardship. *See Arce v. Walker,* 139 F.3d 329, 336 (2d Cir. 1998) (finding that eighteen days in administrative segregation, including loss of exercise and access to religious services, did not constitute atypical and significant hardship); *Holland v.*

*Goord,* No. 05-CV-6295, 2006 WL 1983382, at \*7 (W.D.N.Y. July 13, 2006) (holding the inability to attend Muslim services and celebrate the end of Ramadan while confined in the SHU for seventy-seven days is not an atypical hardship).

Even assuming that plaintiff had pled facts sufficient to show that his confinement imposed an atypical and significant hardship, however, and therefore pled the existence of a valid liberty interest, the complaint fails to state a claim based upon the Fourteenth Amendment and due process. It is well settled that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir. 1986)). In this case, a hearing regarding the charges was held within two days of plaintiff's receipt of the misbehavior report. Plaintiff does not allege that he was denied any procedural due process during that hearing. Moreover, the complaint lacks facts suggesting that any named defendant issued the misbehavior report or presided over the disciplinary hearings. Based upon the aforementioned, plaintiff's Fourteenth Amendment claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. *See Livingston v. Kelly,* 561 F.Supp.2d 329, 332 (W.D.N.Y. 2008) (dismissing plaintiff's false-report claims because the plaintiff failed to allege that the disciplinary hearings on the reports did not meet constitutional due process standards).

### E. Failure to Respond to Grievances and Failure to Investigate

**\*11** Plaintiff also claims that his constitutional rights were violated because the facility grievance program is "never followed." *See* Compl. at 11. There is no constitutional right of access to the established inmate grievance program. *Davis v. Buffardi,* No. 9:01-CV-0285 (PAM/GJD), 2005 WL 1174088, at \*3 (N.D.N.Y. May 4, 2005) ("[p]articipation in an inmate grievance process is not a constitutionally protected right"); *Shell v. Brzezniak,* 365 F.Supp.2d 362, 369-70 (W.D.N.Y. 2005) ("[i]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim"); *Cancel v. Goord,* No. 00. Civ. 2042, 2001 WL 303713, at \*3 (S.D.N.Y. Mar. 29, 2001) ("inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983"); *Mimms v. Carr,* No. 09-CV-5740, 2011 WL 2360059, at \*10 (E.D.N.Y. June 9, 2011) ("It is well-established that

2016 WL 6267968

prison grievance procedures do not create a due-process-protected liberty interest.") (citing cases). Simply stated, there is no underlying constitutional obligation to afford an inmate meaningful access to the internal grievance procedure, or to investigate and properly determine any such grievance.

To the extent that plaintiff attempts to assert a separate constitutional claim based upon the Inspector General's failure to investigate, the law is also clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials. *Bernstein v. New York*, 591 F.Supp.2d 448, 460 (S.D.N.Y. 2008) (collecting cases); *Torres v. Mazzuca*, 246 F.Supp.2d 334, 341-42 (S.D.N.Y. 2003) (Prisoners do not have a due process right to a thorough investigation of grievances.); *DeShaney v. Winnebego Soc. Servs.*, 489 U.S. 189, 196 (1989) (The Due Process Clause confers no right to governmental aid, even where that aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual); *Pine v. Seally*, No. 9:09-CV-1198, 2011 W L 856426, at *9 (N.D.N.Y. Feb. 4, 2011) ("the law is ... clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials") (citing *Bernstein*, 591 F.Supp.2d at 460).

In this regard, plaintiff's claims do not involve a constitutional violation and are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### F. Cause of Action for Criminal Charges/Perjury
"New York does not recognize a common law cause of action for [...] perjury." *Harris v. Summers*, No. 5:14-CV-0013 (LEK/DEP), 2014 W L 1340032, at *5 (N.D.N.Y. Apr. 3, 2014) (citing *Carvel v. Ross*, No. 12-CV-0722, 2011 W L 856283, at *12 (S.D.N.Y. Feb. 16, 2011) (dismissing the plaintiff's perjury claim because "there [is] no private right of action" for perjury)). Moreover, plaintiff's claim is not actionable because it is well-settled that a private citizen does not have a constitutional right to bring a criminal complaint against another individual. *Harper v. New York Child Welfare Comm'rs*, No. 3:12-CV-0646 (NAM/DEP), 2012 WL 3115975, at *4 (N.D.N.Y. May 14, 2012) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)). Consequently, plaintiff's request to charge defendants with "perjury" is dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

### G. Injunctive Relief Against DOCCS
Plaintiff demands injunctive relief directing DOCCS to require "each officer" to wear body cameras to prevent future assaults and other related injunctive relief. *See* Compl. at 10-12. Plaintiff is presently confined at Mid-State C.F. and therefore, plaintiff's request for injunctive relief involving changes to the operation of security at Elmira C.F., is dismissed as moot. *See Edwards v. Horn*, No. 10 Civ. 6194, 2012 WL 760172, at *23 (S.D.N.Y. March 8, 2012) (dismissing the plaintiff's claim for injunctive relief because the plaintiff had been released from prison).

*12 Even assuming plaintiff's request is broader and intended to encompass all DOCCS facilities, the request is nonetheless improper and subject to dismissal. The PLRA provides "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of the particular plaintiff." 18 U.S.C. § 3626(a)(1)(A). "[A] proposed order directing the installation of securities cameras – is beyond the narrow scope permitted by the PLRA." *Barrington v. New York*, 806 F.Supp.2d 730, 750 (S.D.N.Y. 2011) (dismissing the plaintiff's request for injunctive relief seeking an order directing Green Haven to install security cameras as overly broad and unnecessary to correct the alleged past violations of his rights). Accordingly, plaintiff's request for injunctive relief is dismissed.

### VI. Conclusion
**ORDERED** that plaintiff's in forma pauperis application (Dkt. No. 2) is **GRANTED**; [11] and it is further

[11]   Plaintiff should note that, although the Court has granted his application to proceed in forma pauperis, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**ORDERED** that the Clerk provide the Superintendent of the facility, designated by plaintiff as his current location, with a copy of plaintiff's authorization form, and notify the official that this action has been filed and that plaintiff is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk of the Court provide a copy of plaintiff's inmate authorization form to the Financial Deputy of the Clerk's Office; and it is further

Case 3:24-cv-01417-DNH-MJK    Document 13    Filed 01/07/25    Page 27 of 103
Houston v. Collerman, Not Reported in Fed. Supp. (2016)
2016 WL 6267968

**ORDERED** that the following claims are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) plaintiff's § 1983 claims for monetary damages against DOCCS; (2) constitutional claims based upon the failure to adhere to the grievance policy and investigate; and (3) plaintiff's claims related to perjury and filing criminal charges against defendants; and it is further

**ORDERED** that the following claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) Eighth Amendment claims against defendants for deliberate indifference to plaintiff's serious medical needs; (2) First Amendment freedom of religion claims; (3) Fourteenth Amendment due process claims; and (4) claims for injunctive relief against DOCCS [12]; and it is further

[12]    If plaintiff wishes to pursue any claim dismissed without prejudice, he is advised to that, if accepted for filing, any amended complaint will entirely replace the original complaint and incorporation of prior claims is not permitted.

**ORDERED** that DOCCS is **DISMISSED** as a defendant herein; and it is further

**ORDERED** that the following claims survive the Court's sua sponte review under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) and require a response: (1) the Eighth Amendment use of excessive force claims against defendants Copestick and Schieber; (2) the Eighth Amendment failure-to-intervene claim against defendant Collerman; (3) the First Amendment retaliation claims against defendants Copestick and Schieber; and (3) the Fourteenth Amendment equal protection claims against Copestick and Schieber; and it is further

**ORDERED**, that the Clerk shall issue summons and forward them, along with copies of the Complaint, to the United States Marshal for service upon the remaining defendants. The Clerk shall forward a copy of the Summons and Complaint to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**\*13 ORDERED**, that a response to the complaint be filed by the remaining defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure;

**ORDERED**, that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; their failure to do so will result in the dismissal of his action**; and it is further

**ORDERED**, in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009), the Clerk of the Court is directed to provide plaintiff with copies of opinions from Westlaw and the Federal Appendix cited in this Decision and Order; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules.

Dated: October 26, 2016.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 6267968

---

2014 WL 2526620

2014 WL 2526620
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Arsharan SETHI, Plaintiff,
v.
NASSAU COUNTY, Nassau County Police Department,
Nassau County P.O. Jeff Bigger, sued herein individually
and in his official capacity, P.O. Eviscerate, sued herein
in his individual and official capacity, Rxr Security Guard
Randy Lnu, Rxr Management Company, Defendants.

No. 11–CV–6380 (SJF)(GRB).
|
Signed June 3, 2014.

**Attorneys and Law Firms**

Harsharan Sethi, Plainview, NY, pro se.

Liora M. Ben-Sorek, Mineola, NY, Heath Adam Bender,
Eustace & Marquez, White Plains, NY, for Defendants.

**ORDER**

FEUERSTEIN, District Judge.

**\*1** On December 30, 2011, plaintiff Harsharan Sethi
("plaintiff") commenced this action pursuant to 42 U.S.C.
§ 1983 ("Section 1983") against Nassau County, Nassau
County Police Department, Police Officer Jeff Biggers
(s/h/a "P.O. Jeff Bigger"), and Police Officer Gregory
Echevarria (s/h/a "P.O. Eviscerate") (collectively, the
"County Defendants"), and RXR Management Company and
"RXR Security Guard Randy" (together, "RXR"). [1] Compl.
On March 23, 2012, the County Defendants answered and
asserted a cross-claim against RXR. [Docket Entry No. 2].
On March 13, 2013, this Court granted RXR's motion for
summary judgment and dismissed all claims and cross-
claims against RXR with prejudice. [Docket Entry No. 26].
Now before the Court is the County Defendants' motion for
summary judgment. [Docket Entry No. 45]. For the reasons
that follow, the County Defendants' motion is GRANTED.

[1]     Specifically, plaintiff asserts three (3) "causes of
        action." First, plaintiff claims that Officer Biggers

and Officer Echevarria "confined plaintiff and
assaulted him without probable cause." Complaint
("Compl.") [Docket Entry No. 1], ¶ 30. The
Court will address this "cause of action" as
two (2) separate claims: (i) false arrest or false
imprisonment (the "false arrest claim"); and (ii)
excessive force. Second, plaintiff alleges that
the "failure of [Nassau County and the Nassau
County Police Department] to provide training
and supervision regarding when a seizure of
a private citizen is appropriate and what is
reasonable force to be used in connection with
such seizure constitutes gross negligence and/or
deliberate indifference to the rights and safety
of the citizens of the state of New York and
the County of Nassau" (the *"Monell* claim"
or "municipal liability claim"). Compl. ¶ 34.
Third, plaintiff asserts that RXR assisted Officer
Biggers and Officer Echevarria "in assaulting
plaintiff, unlawfully seizing plaintiff and forcefully
removing him from the premises without reason or
probable cause." Compl. ¶ 40.

I. Factual Background [2]

[2]     The facts are taken from the undisputed statements
        in the County Defendants' Statement of Material
        Facts Pursuant to Local Civil Rule 56.1 ("Defs.'
        56.1 Stmt.") [Docket Entry No. 47], plaintiffs'
        Response to Defendants' Statement of Material
        Facts Pursuant to Rule 56.1 ("PL' 56.1 Stmt.")
        [Docket Entry No. 49], the declaration of
        Liora M. Ben–Sorik in support of the County
        Defendants' motion for summary judgment ("Ben–
        Sorik Decl.") [Docket Entry No. 46] and the
        exhibits attached thereto, and my review of the
        record.

On December 1, 2011, Michelle Trabucchi ("Trabucchi") [3]
called 911 to report that a former employee of Cambridge,
whom she identified as plaintiff Harsharan Sethi, was seen
taking photographs of employees in the lobby level of the
office building, located at 498 RXR Plaza, Uniondale, New
York ("RXR Plaza"). (Defs.' 56.1 Stmt. ¶¶ 2–4; Nassau
Cnty. P.D. Event Search, at 1–2). Trabucchi informed the
911 operator that Cambridge "has an ongoing lawsuit with
[plaintiff]," that plaintiff was "now pacing back and forth"
and "looks a little off," and that employees were "very upset"
and "very nervous." (Defs.' 56.1 Stmt. ¶ 3; Nassau Cnty. P.D.
Event Search, at 2).

2014 WL 2526620

3

Plaintiff contends that Trabucchi "was an employee of Worldwide Who's Who ... and was calling for Worldwide Who's Who." (Pl.' 56.1 Stmt. ¶ 2). This is belied by the record. Nassau County Police Department records identify the caller as "Cambridge Who's Who." (Ben–Sorik Decl., Ex. C ("Nassau Cnty. P.D. Event Search"), at 1). Trabucchi testified that she has never worked for Worldwide Who's Who, which is the "umbrella company" for four (4) companies-Cambridge Who's Who Publishing ("Cambridge"), Elite American Publishing ("Elite"), Professional Biographers, and Who's Who Publishers-that are all in the same building and are owned by the same person. (Ben–Sorik Decl., Ex. J ("Trabucchi Depo."), at 6, 25–26). Trabucchi worked for Cambridge as a senior human resources generalist from February 2008 through November 2011, and then began working for Elite. (*Id.* at 6–7). Trabucchi was working for Elite when she made the 911 call on December 1, 2011. (*Id.* at 7). While employed as a senior human resources generalist for both Cambridge and Elite, Trabucchi reported to Deb Morrissey, a Cambridge employee. (*Id.*).

In response to Trabucchi's 911 call, Officer Biggers and Officer Echevarria (together, the "Officers") arrived at RXR Plaza and spoke with Cambridge personnel. (Defs.' 56.1 Stmt. ¶¶ 7, 9). The Officers were told that plaintiff had been fired from his position at Cambridge. (Ben–Sorik Decl., Ex. H ("Biggers Depo."), at 30). The Officers were informed that "one of [Cambridge's] employees was down in the cafeteria and being followed by [plaintiff] and he was taking pictures ... of her." (Ben–Sork Decl., Ex. G ("Echevarria Depo."), at 12–13). The Officers were shown a postcard with "derogatory statements" about Cambridge, purportedly sent by plaintiff to Cambridge employees and/or clients, which included photographs of Cambridge employees. (Biggers Depo., at 29–31; Echevarria Depo., at 12–13; Trabucchi Depo., at 30–32). Following their conversation with Cambridge personnel, the Officers returned to the lobby level of RXR Plaza, where a female Cambridge employee identified plaintiff. (Defs.' 56.1 Stmt. ¶¶ 10–11; Echevarria Depo., at 13–15).

The Officers approached plaintiff and asked him for identification, but plaintiff refused to provide identification and "became very agitated." (Echevarria Depo., at 15–17; Defs.' 56.1 Stmt. ¶¶ 13–17). According to Officer Biggers, plaintiff "was immediately being combative with us" and

"[r]efused to show us his I.D." (Biggers Depo., at 22). At some point, plaintiff told the Officers that he was at RXR Plaza for a dental appointment and presented an appointment card for a future date. [4] (Defs.' 56.1 Stmt. ¶¶ 18; Biggers Depo., at 23–24; Transcript, at 4–5). Officer Biggers went to the dentist's office and was informed that "[plaintiff] was not a patient, [and] was not there for an appointment." (Biggers Depo., at 28; Defs.' 56.1 Stmt. ¶¶ 19–20). Upon concluding that plaintiff "had no legitimate reason to be in the building," the Officers asked plaintiff to leave RXR Plaza. (Biggers Depo., at 28–29; Defs.' 56.1 Stmt. ¶¶ 21–23).

4

On December 1, 2011, plaintiff carried a recording device in the breast pocket of his shirt, which recorded all of his interactions at RXR Plaza. (Ben–Sorik Decl., Ex. I ("Sethi Depo."), at 68–75). The transcript of the audio recording reveals that plaintiff was at the dentist's office for approximately nine (9) minutes, during which time he spoke with the receptionist about insurance coverage and x-rays, and scheduled an appointment for January 11, 2011. (Ben–Sorik Decl., Ex. F ("Transcript"), at 1–3). Plaintiff was not treated by a dentist on December 1, 2011. (Sethi Depo., at 66).

**\*2** When plaintiff did not immediately leave RXR Plaza following the Officers' request, the Officers escorted plaintiff outside, with Officer Echevarria holding plaintiffs right wrist and triceps, and Officer Biggers with a hand on plaintiff's back. [5] (Defs.' 56.1 Stmt. ¶¶ 24–27; Echevarria Depo., at 28–30; Biggers Depo., at 36–41). Once outside, the Officers instructed plaintiff to "get in [his] car" and "leave the property." (Transcript, at 11–12).

5

During the encounter, plaintiff accused the Officers of "hitting" him while he was escorted from the building. (Transcript, at 6). However, plaintiff admitted during his deposition that he used the word "hitting" to describe that one of the officers "pulled my hand and he extended all the way back and twist it." (Sethi Depo., at 134).

Plaintiff did not seek medical treatment for any injuries alleged to have been incurred during the December 1, 2011 encounter with the Officers, nor has plaintiff sought any mental health counseling. (Sethi Depo. at 138, 141). Plaintiff did not file a complaint with any agency regarding the events of December 1, 2011. (*Id.* at 145).

2014 WL 2526620

## II. Analysis

### A. Standard of Review

"Summary judgment must be granted where the pleadings, the discovery and disclosure materials on file, and any affidavits show 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' " *Brown v. Eli Lilly & Co.,* 654 F.3d 347, 358 (2d Cir.2011) (quoting Fed.R.Civ.P. 56(a)). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 202 (2d Cir.2007) (internal quotation marks omitted). "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ramos v. Baldor Specialty Foods, Inc.,* 687 F.3d 554, 558 (2d Cir.2012) (internal quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano,* 557 U.S. 557, 586, 129 S.Ct. 2658, 174 L.Ed.2d 490 (2009) (internal quotation marks and citation omitted); *see also Fabrikant v. French,* 691 F.3d 193, 205 (2d Cir.2012).

"The moving party bears the burden of establishing the absence of any genuine issue of material fact." *Zalaski v. City of Bridgeport Police Dep't,* 613 F.3d 336, 340 (2d Cir.2010) (citation omitted). If this burden is met, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown,* 654 F.3d at 358 (citation omitted). In order to defeat summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations or unsubstantiated speculation." *Id.* (internal quotation marks and citations omitted); *see also Jeffreys v. City of N.Y.,* 426 F.3d 549, 554 (2d Cir.2005) ("At the summary judgment stage, a nonmoving party must offer some hard evidence showing that its version of the events is not wholly fanciful." (internal quotation marks and citation omitted)).

### B. Section 1983

**\*3** Section 1983 of Title 42 of the United States Code provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured

42 U.S.C. § 1983. "Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *Filarsky v. Delia,* ––– U.S. ––––, ––––, 132 S.Ct. 1657, 1661, 182 L.Ed.2d 662 (2012). Thus, to state a Section 1983 claim, a plaintiff must allege: (1) that the challenged conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States," and (2) that such challenged conduct was "committed by a person acting under color of state law." *Cornejo v. Bell,* 592 F.3d 121, 127 (2d Cir.2010) (quoting *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir.1994)); *see also Rehberg v. Paulk,* ––– U.S. ––––, –––– – ––––, 132 S.Ct. 1497, 1501–02, 182 L.Ed.2d 593 (2012). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of [federal] rights established elsewhere." *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir.1999).

#### 1. Claims Against the Officers

##### a. False Arrest Claim

Plaintiff claims that the Officers subjected "him to an illegal seizure and forc[ed] him from the building without probable cause or reason." Compl. ¶ 3. A claim for false arrest, based on the Fourth Amendment right to be free from unreasonable seizures, is "substantially the same as a false arrest claim under New York law." *Weyant v. Okst,* 101 F.3d 856 (2d Cir.1996). To state a claim for false arrest, a plaintiff must show that: "(1) the defendant[s] intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Jocks v. Tavernier,* 316 F.3d 128, 134–35 (2d Cir.2003) (internal quotation marks and citation omitted).

The County Defendants contend that plaintiff was merely "temporarily stopped to enable Police Officers Biggers and Echevarria in investigating a 911 call of harassment," and that plaintiff was not arrested because he "was free to leave, and even encouraged to leave, the RXR premises." Memorandum of Law in Support of the County Defendants' Motion for Summary Judgment ("Defs.' Mot.") [Docket Entry No. 48], at 6–7. Alternatively, defendants argue that even if plaintiff s detention constituted an arrest, it was privileged "in light of the existence of probable cause." *Id.* at 7.

Police officers may conduct investigatory stops if they have "a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.' " *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (quoting *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Arrests, on the other hand, must be supported by probable cause. *See United States v. Vargas,* 369 F.3d 98, 101 (2d Cir.2004). "Whether an arrest supportable by probable cause occurs, as distinct from a form of Fourth Amendment intrusion supportable by less than probable cause, depends on the seizure's level of intrusiveness, and on the corresponding degree of justification required to effect each level of intrusiveness." *Posr v. Doherty,* 944 F.2d 91, 98 (2d Cir.1991). "A permissive investigative stop may become an unlawful arrest if the means of detention are 'more intrusive than necessary.' " *United States v. Tehrani,* 49 F.3d 54, 61 (2d Cir.1995) (quoting *United States v. Perea,* 986 F.2d 633, 644 (2d Cir.1993)). "In determining whether an investigatory stop is sufficiently intrusive to ripen into a *de facto* arrest, the Second Circuit considers the 'the amount of force used by the police, the need for such force, and the extent to which the individual's freedom of movement was restrained.' " *Vargas,* 369 F.3d at 101 (quoting *Perea,* 986 F.2d at 645).

**\*4** Assuming, *arguendo,* that plaintiff's brief encounter with the Officers constituted an arrest, plaintiff may not succeed on his false arrest claim if the Officers had probable cause. *See Singer v. Fulton Cnty. Sheriff,* 63 F.3d 110, 118 (2d Cir.1995). Probable cause exists whenever "an arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Id.* at 119 (internal quotation marks and citation omitted). Probable cause may "exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information."

*Bernard v. United States,* 25 F.3d 98, 102 (2d Cir.1994) (citation omitted). "The burden of establishing the absence of probable cause rests on the plaintiff." *Nelson v. Hernandez,* 524 F.Supp.2d 212, 220 (E.D.N.Y.2007) (citations omitted). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." *Weyant,* 101 F.3d at 845.

The Officers arrived at RXR Plaza in response to a 911 call "for a suspicious person who was harassing and following his former employee and fellow employers," "videotaping them with his cell phone," and who "appeared to be nervous and acting erratically." (Biggers Depo., at 10–11). Upon speaking with Cambridge personnel, the Officers learned that plaintiff had harassed employees in the past. The Officers were shown cards, purportedly sent by plaintiff, which included derogatory comments and photographs of Cambridge employees. A Cambridge employee identified plaintiff to the Officers. Based on this information, the Officers had "reasonably trustworthy information" to believe that plaintiff had, and was presently, harassing CWW employees.[6] *See Singer,* 63 F.3d at 119. Plaintiff submits no evidence other than his own unsubstantiated conclusion, which is insufficient to satisfy his burden to establish that the Officers lacked probable cause. *See Nelson,* 524 F.Supp.2d at 220.

6  Under New York law, a person who "intentionally and repeatedly harasses another person by following such person in or about a public place" is guilty of harassment in the first degree. N.Y. Penal Law § 240.25. A person is guilty of harassment in the second degree when, "with intent to harass, annoy or alarm another person ... [he] follows a person in or about a public place," or "engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose." N.Y. Penal Law § 240.26. A person who, "with intent to harass, annoy, threaten or alarm another person ... communicates with a person, anonymously or otherwise, by ... mail, or by transmitting or delivering any other form of written communication, in a manner likely to cause annoyance or alarm" is guilty of aggravated harassment in the second degree. N.Y. Penal Law § 240.30.

Furthermore, plaintiff was not restrained during the encounter with the Officers, and was in fact, encouraged to leave RXR Plaza. (Defs.' Mot., at 7). It was not until plaintiff ignored the Officers' request that plaintiff leave the premises that the Officers physically touched plaintiff and escorted him out of the building. Under these specific circumstances, plaintiff's encounter with the Officers constituted an investigatory stop, and not an arrest. At the very least, based upon the totality of the circumstances and the facts as told to them, the Officers had a reasonable basis to support an investigatory stop. *See United States v. Gori,* 230 F.3d 44, 53 (2d Cir.2000) (police officer may stop a person to investigate possible criminal behavior based upon reasonable suspicion, even if there is no probable cause to make an arrest); *Floyd v. City of N.Y.,* 959 F.Supp.2d 540, 648 (S.D.N.Y.2013) ("The police has reasonable suspicion to forcibly stop [the suspect] for suspected harassment because he matched a specific description provided by an identified victim, and was in close proximity to the reported harassment just minutes after it allegedly occurred."); *United States v. McCargo,* 464 F.3d 192, 197 (2d Cir.2006) (officers had reasonable suspicion for investigatory stop, where defendant was within proximity of reported crime, even though officers had no physical description of the suspect). Accordingly, the County Defendants' motion for summary judgment is granted with respect to plaintiff's false arrest claim.

    b. Excessive Force Claim

**\*5** Plaintiff complains that he was subjected to excessive force during his encounter with the Officers on December 1, 2011. Claims "that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' " are "analyzed under the Fourth Amendment's 'objective reasonableness standard.' " *Graham v. Connor,* 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *see also Terranova v. New York,* 676 F.3d 305, 308 (2d Cir.2012), *cert. denied,* ––– U.S. ––––, 133 S.Ct. 414, 184 L.Ed.2d 156 (2012) ("Claims that the police used excessive force are judged under the Fourth Amendment's 'objective reasonableness' standard." (internal quotation marks and citations omitted)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Graham,* 409 U.S. at 396–97; *see also Tracy v. Freshwater,* 623 F.3d 90, 96 (2d Cir.2010) (accord).

The force used by the Officers to remove plaintiff from RXR Plaza was reasonable under the circumstances where, as discussed above, plaintiff refused to provide identification, became "agitated" and "combative," and failed to comply with the Officers' request that he leave RXR Plaza. (Echevarria Depo., at 17; Biggers Depo., at 22). While plaintiff complained that the Officers were "hitting" him as he was escorted from RXR Plaza, plaintiff later admitted that he used the word "hitting" to describe that one of the officers "pulled [his] hand and [ ] extended all the way back and twist[ed] it." (Transcript at 6; Sethi Depo. at 134). Furthermore, plaintiff admits that he sustained no injuries as a result of the encounter and did not require any medical treatment. Therefore, as a matter of law, "such amount of force cannot be considered excessive ." *Petway v. City of N.Y.,* No. 02–CV–279, 2014 WL 839931, at \*8 (E.D.N.Y. Mar. 4, 2014) (granting summary judgment and dismissing excessive force claim where officer's "slight shove" caused plaintiff no injury and required no medical treatment); *see also Genia v. N, Y. State Troopers,* No. 03–CV–0870, 2007 WL 869594, at \*20 (E.D.N.Y. Mar. 20, 2007) (holding "alleged 'push' cannot constitute unreasonable excessive force in violation of the Fourth Amendment" where plaintiff did not seek medical attention and did not allege any specific injuries); *Roundtree v. City of N.Y.,* 778 F.Supp. 614, 622 (E.D.N.Y.1991) ("[T]o conclude that a 'push' that does not cause the slightest of physical injuries to the plaintiff is nonetheless an actionable use of excessive force would be to hold that *any* physical contact by the arresting officer with an arrested person is actionable."). Accordingly, the County Defendants' motion for summary judgment is granted with respect to plaintiff's excessive force claim. [7]

[7]    Defendants argue that even if the Officers' brief detention and minimal physical contact with plaintiff constitute a constitutional deprivation, the Officers are entitled to qualified immunity. (Defs .' Mot., at 14–15). "As a general rule, police officers are entitled to qualified immunity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights." *Kerman v. City of N.Y.,* 374 F.3d 93, 108 (2d Cir.2004) (citations omitted). However, "[i]f the plaintiff fails to establish a constitutional violation, the qualified immunity inquiry ends and the plaintiff may not recover." *Cowan v. Breen,* 352 F.3d 756, 761 (2d Cir.2003) (internal quotation marks and citations

Case 3:24-cv-01417-DNH-MJK    Document 13    Filed 01/07/25    Page 33 of 103
Sethi v. Nassau County, Not Reported in F.Supp.3d (2014)
2014 WL 2526620

omitted). Because plaintiff has failed to establish a constitutional violation, plaintiff's false arrest and excessive force claims fail and no qualified immunity analysis is required.

C. Municipal Liability Claim

**\*6** Under *Monell v. Dep't of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), "a municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven,* 691 F.3d 72, 80 (2d Cir.2012). In order to prevail on such a claim against a municipal defendant, the plaintiff must establish as a prerequisite an underlying constitutional violation on the part of individual municipal actors. *See Segal v. City of N.Y.,* 459 F.3d 207, 219 (2d Cir.2006) ("*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."); *Askins v. Doe No. 1,* 727 F.3d 248, 253 (2d Cir.2013) (same).

Plaintiff asserts a *Monell* claim against Nassau County and the Nassau County Police Department. Compl. ¶¶ 32–38. "Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dep 't,* 224 F.Supp.2d 463, 477 (E.D.N.Y.2002) (citations omitted). The Nassau County Police Department is an administrative arm of Nassau County, and thus, lacks capacity to be sued. *See id.* (dismissing claim against police department because it is merely administrative arm of municipality); *Sorell v. Inc. Vill. of Lynbrook,* No. 10–cv–49, 2012 WL 1999642, at \*5 (E.D.N.Y. June 4, 2012) (dismissing claims against the Nassau County Police Department because it is merely an administrative arm of Nassau County, which had been named separately as a defendant for each of plaintiff s claims); *Wharton v. Cnty. of Nassau,* No. 07–cv–2137, 2010 WL 3749077, at \*3 (E.D.N.Y. Sep.20, 2010) (dismissing claims against the Nassau County Police Department because, as an administrative arm of Nassau county, it lacked capacity to be sued). Accordingly, all claims against the Nassau County Police Department are dismissed.

Furthermore, plaintiff has not established an underlying constitutional violation to which *Monell* liability can extend. *See Segal,* 459 F.3d at 219. Therefore, plaintiff's *Monell* claim against Nassau County is dismissed.

III. Conclusion

For the foregoing reasons, the County Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 is granted. The Clerk of the Court shall enter judgment accordingly and close this case.

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 2526620

End of Document    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:24-cv-01417-DNH-MJK    Document 13    Filed 01/07/25    Page 34 of 103

Karupaiyan v. New York, Not Reported in Fed. Rptr. (2024)

2024 WL 2174272

2024 WL 2174272
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Palani KARUPAIYAN, Plaintiff-Appellant,

v.

State of NEW YORK, City of New York, New York
City Police Department (NYPD), John Does Police
Officers of NYPD, Fredrick Dsouza, Pravin Pandey, Raja
Pandey, Adar Management Corp., Defendants-Appellees.

23-1257-cv
|
May 15, 2024

Appeal from a judgment of the United States District Court
for the Eastern District of New York (Ann M. Donnelly,
*District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY
ORDERED, ADJUDGED, AND DECREED** that the
judgment of the district court is **AFFIRMED IN PART,
VACATED IN PART,** and **REMANDED** for further action
consistent with this order.

**Attorneys and Law Firms**

For Plaintiff-Appellant: Palani Karupaiyan, pro se,
Philadelphia, PA.

For Defendants-Appellees: No appearance.

Present: Dennis Jacobs, William J. Nardini, Steven J.
Menashi, Circuit Judges.

**SUMMARY ORDER**

 *1 Plaintiff-Appellant Palani Karupaiyan, *pro se*, sued the
State and City of New York, the New York City Police
Department ("NYPD"), unnamed NYPD officers, three
private individuals, and a real estate company under various
federal and state causes of action. Karupaiyan's allegations
stem from several disagreements and altercations with his co-
tenants and his apartment's management company, as well as
purported discrimination by New York City police officers
who allegedly responded to his residence and arrested him
after one of his co-tenants called 911 after an altercation. After
granting Karupaiyan *in forma pauperis* status, the district
court dismissed his complaint under 28 U.S.C. § 1915(e)(2)

(B)(ii) for failure to state a claim but permitted him leave
to amend. *See* Karupaiyan v. New York, No. 23-CV-5424
(AMD) (LB), 2023 WL 9020011 (E.D.N.Y. Sept. 8, 2023).
Instead of amending, Karupaiyan appealed. [1] We assume the
parties' familiarity with the case.

[1]   Because the time to amend has long since run
      despite multiple extensions, the dismissal without
      prejudice has ripened into a final and appealable
      order over which we may exercise jurisdiction. *See*
      28 U.S.C. § 1291; *Salmon v. Blesser*, 802 F.3d 249,
      252 n.2 (2d Cir. 2015).

**I. Forfeiture of Issues on Appeal**

While we liberally construe *pro se* filings to raise the strongest
arguments they suggest, *McLeod v. Jewish Guild for the
Blind*, 864 F.3d 154, 156 (2d Cir. 2017), *pro se* appellants
must still clearly state the issues on appeal in their briefs,
*see* *Moates v. Barkley*, 147 F.3d 207, 209 (2d Cir. 1998). We
normally do not decide issues that are not briefed. *Id.*; *see also*
*LoSacco v. City of Middletown*, 71 F.3d 88, 93 (2d Cir. 1995)
("[W]e need not manufacture claims of error for an appellant
proceeding *pro se* ...."). [2] Nor will we decide issues that a *pro
se* appellant briefs only "in passing." *Gerstenbluth v. Credit
Suisse Secs. (USA) LLC*, 728 F.3d 139, 142 n.4 (2d Cir. 2013).

[2]   Unless otherwise indicated, case quotations omit
      all internal quotation marks, alteration marks,
      footnotes, and citations.

Karupaiyan's brief largely fails to address the substance of the
district court's decision dismissing his complaint. The only
substantive grounds his brief could be read to raise are that
Defendant-Appellee Fredrick Dsouza filed a "false charge"
against him and that his alleged arrest was discriminatory,
which can be read to challenge the dismissal of his false arrest
and malicious prosecution claims under 42 U.S.C. § 1983. We
accordingly conclude that he has forfeited all other issues.

**II. *Sua Sponte* Dismissal**

Karupaiyan appears to challenge the district court's *sua sponte*
dismissal of his complaint under § 1915(e)(2)(B). While we
have cautioned against *sua sponte* dismissals without notice
and opportunity to be heard in certain contexts, *see* *Catzin v.
Thank You & Good Luck Corp.*, 899 F.3d 77, 82–83 (2d Cir.
2018), the district court granted Karupaiyan leave to amend
his complaint to fix the defects identified, but he did not take

Case 3:24-cv-01417-DNH-MJK   Document 13   Filed 01/07/25   Page 35 of 103

**Karupaiyan v. New York, Not Reported in Fed. Rptr. (2024)**

2024 WL 2174272

advantage of the offer. We discern no error in the *sua sponte* dismissal under these circumstances.

## III. Merits

**\*2**  We review *de novo* Karupaiyan's challenge to the dismissal of his false arrest and malicious prosecution claims arising out of his alleged arrest. *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). We conclude that he failed to state a claim for false arrest under 42 U.S.C. § 1983 against Fredrick Dsouza and Pravin Pandey because they are private citizens and did not act under color of state law. A private individual becomes a state actor for the purposes of § 1983 only when (1) the state compelled the conduct, (2) the private party acted jointly with a state, or (3) the private party fulfilled a role that is traditionally a public state function. *See Sybalski v. Indep. Group Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008). Filing a complaint with the police does not fit within any of these categories. *See Dahlberg v. Becker*, 748 F.2d 85, 93 (2d Cir. 1984) (holding that "mere invocation" of state legal procedures does not amount to state action under § 1983).

Karupaiyan also fails to plead a false arrest or malicious prosecution claim under § 1983 against NYPD officers or the City of New York, as he does not allege any facts showing that the officers lacked probable cause for the arrest, *see Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021) ("Probable cause to arrest is a complete defense to an action for false arrest."), or that the criminal proceedings terminated in his favor, *see Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (requiring a plaintiff to plead "termination of the proceeding in [his] favor").

The remainder of Karupaiyan's brief seeks various remedies that are not related to any of the claims he raised below—for example, he seeks an order reorganizing the New York State Unified Court System. He points to no authority that would permit such relief, even assuming he had a meritorious claim.

## IV. Prejudice

Although Karupaiyan's claims against the State of New York fail, the district court erred by dismissing them with prejudice. The district court correctly dismissed these claims because New York is entitled to state sovereign immunity and has not waived that immunity. *See Karupaiyan*, 2023 WL 9020011, at *2. The "constitutional principle of sovereign immunity" poses "a bar to federal jurisdiction over suits against nonconsenting States." *Alden v. Maine*, 527 U.S. 706, 730 (1999). "When subject matter jurisdiction is lacking, 'the district court lacks the power to adjudicate the merits of the case,' and accordingly 'Article III deprives federal courts of the power to dismiss the case with prejudice.' " *Green v. Dep't of Educ. of City of N.Y.*, 16 F.4th 1070, 1074 (2d Cir. 2021) (quoting *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54–55 (2d Cir. 2016)). Therefore, because the district court lacked jurisdiction over the claims against the State of New York, it was erroneous to dismiss those claims with prejudice rather than without prejudice.

The district court likewise erred by dismissing with prejudice Karupaiyan's landlord-tenant claims—other than those under the Fair Housing Act or 42 U.S.C. § 1981—pursuant to Federal Rule of Civil Procedure 12(h)(3). *See Karupaiyan*, 2023 WL 9020011, at *5. Because Rule 12(h)(3) provides for dismissal for lack of subject matter jurisdiction, such a dismissal must be without prejudice. *See Green*, 16 F.4th at 1074. We therefore remand with instructions for the district court to modify its judgment to dismiss these claims without prejudice. *See Russo v. United States*, No. 22-1869, 2024 WL 726884, at *2 (2d Cir. Feb. 22, 2024).

\* \* \*

We have considered Karupaiyan's remaining arguments and find them unpersuasive. Accordingly, we **AFFIRM** the judgment of the district court in part, **VACATE** the judgment insofar as the district court dismissed with prejudice claims over which it lacked subject matter jurisdiction, and **REMAND** for the district court to amend its judgment to dismiss these claims without prejudice.

## All Citations

Not Reported in Fed. Rptr., 2024 WL 2174272

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 1140745

2020 WL 1140745
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Laquan Devota HARRIS, Plaintiff,

v.

Sarah A. HARRIS, et al., Defendants.

19-CV-11658 (CM)
|
Signed 03/09/2020

**Attorneys and Law Firms**

Laquan Devota Harris, Brooklyn, NY, pro se.

ORDER TO AMEND

COLLEEN McMAHON, Chief United States District Judge:

**\*1**  Plaintiff, appearing *pro se*, brings this action under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), alleging that Defendants violated his rights. [1] By order dated January 24, 2020, the Court granted Plaintiff's request to proceed without prepayment of fees, that is, *in forma pauperis* (IFP). For the reasons set forth below, the Court grants Plaintiff leave to file an amended complaint within sixty days of the date of this order.

[1]    Plaintiff initially filed this action in the United States District Court for the Eastern District of New York. On December 18, 2019, that court transferred this action to the Southern District of New York.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

The Supreme Court has held that under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

**BACKGROUND**

Plaintiff, a Brooklyn resident, filed this complaint regarding events that allegedly occurred in the office of an unidentified organization in Manhattan. He uses the Eastern District's civil rights complaint form and checks off boxes indicating that he brings this action against state or local officials under § 1983, and against federal officials under *Bivens*. Plaintiff sues Sarah Harris, identified as "Director"; Christopher Guradino, a police officer; Michael Hernandez, a police officer; William Fields, who is listed with a badge number but is not identified; and "William", identified as "Director cases." (ECF No. 1, 2-3.)

**\*2**  Plaintiff claims theft of legal documents, a bank card, and monies; discrimination; "violation of contract"; false arrest, police misconduct; and denial of his right to freedom of speech. (*Id.* at 4.) He asserts the following as the facts underlying his claims, verbatim:

Harris v. Harris, Not Reported in Fed. Supp. (2020)

2020 WL 1140745

On Weds Dec 4th 2019 Sarah A Harris gave false accusation word of mouth after interviewing Mr Harris violating Mr Harris Hipea rights of officers all involved theft Legale documentation stoleing Bank card stoleing funds stoling $1700 Debit From account. All defends lieable for discrimination race color mental health discrimination on Sept 17 Mr Harris was falsely arrested Dec 4, 2019 Ms Harris ordered Mr Harris to be subjected to targeting Mr Harris discrimination violation of contract.

(*Id.* at 5.) Plaintiff seeks monetary damages, and would like Defendants to be prosecuted and incarcerated.

## DISCUSSION

**A. Defendants' Liability under § 1983 and *Bivens***

Plaintiff purportedly brings this action under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). To state a claim under § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988). A plaintiff may bring *Bivens* claims against a federal official to seek redress for a violation of his constitutional rights. *See Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) ("[*Bivens*] is the federal analog to suits brought against state officials under [§ 1983]."). But *Bivens* relief is available only against federal officials who are personally liable for the alleged constitutional violations. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017).

### 1. Claims under *Bivens*

Although Plaintiff indicates that he brings this action against federal officials under *Bivens*, he does not name any federal official as a defendant or allege any facts suggesting that federal officials were involved in the alleged events giving rise to his claims. Because Plaintiff does not bring claims

against any federal official, he fails to state a colorable claim under *Bivens*.

### 2. Police officers defendants

Plaintiff appears to name only two state actors as defendants – Police Officers Christopher Guradino and Michael Hernandez – and possible a third, if William Fields is a police officer. But he does not state what these defendants did or failed to do that violated his rights. To state a claim under § 1983, a plaintiff must allege facts showing the defendants' direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). Plaintiff has failed to state any claims for relief with respect to the police officers.

### 3. Defendant Harris and William

In addition, there is no indication in the complaint that the two remaining defendants – Sarah Harris and William – are state actors. The "under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.' " *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citations omitted). Generally, a private party who does not work for any state or other government body, would not be subject to liability under § 1983. *See Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)). But "a private actor acts under color of state law when the private actor 'is a willful participant in joint activity with the State or its agents.' " *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (citation omitted). Plaintiff does not identify who Harris and William are or the organization they work for. Nor does he allege any facts showing that they are state actors subject to liability under § 1983.

**\*3** Because of the lack of sufficient facts in the complaint, the Court cannot definitively say that there is no set of facts on which Plaintiff may be able to proceed under § 1983 against the named defendants. The Court, therefore, grants Plaintiff leave to submit an amended complaint to state facts showing how the police officers were personally involved in the events giving rise to his claims. He must also allege facts showing that Harris and William either work for the State or other government, or engaged in concerted action with a state actor that would make them liable under § 1983. Plaintiff must state whether William Fields is a police officer, and if not, allege facts indicating that he should be considered a state actor.

2020 WL 1140745

## B. Plaintiff's Claims

**1.** False arrest

Plaintiff asserts that he was falsely arrested based on Defendant Harris's false accusation. He may be able to state a false arrest claim, but he does not provide sufficient facts for the Court to make that determination.

To state a § 1983 false arrest claim, a plaintiff must allege that the defendants deprived him of his Fourth Amendment rights by intentionally confining him without his consent and without justification. [2] *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). An arrest is privileged if it is based on probable cause. *Jenkins v. City of N.Y.*, 478 F.3d 76, 84 (2d Cir. 2007) ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest.") (internal quotation marks and citations omitted). "When information is received [by an officer] from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity." *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001).

[2]   For the elements of a § 1983 false arrest claim, the Court first looks to state law. *See Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 925 (2017) ("[T]o flesh out the elements of this constitutional tort, we must look for 'tort analogies.' "); *see also Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018) (holding that common law principles are meant simply to guide rather than to control the definition of § 1983 claims and courts should not "mechanically apply" the law of New York State).

In addition, a complainant – such as Defendant Harris – cannot be held liable on a false arrest claim merely for seeking police assistance or providing information, as the police are free to exercise their own judgment as to whether an arrest is warranted. *See Kraft v. City of New York*, 696 F. Supp. 2d 403, 42122 (S.D.N.Y. 2010); *Holley v. Cty. of Orange, New York*, 625 F. Supp. 2d 131, 142-43 (S.D.N.Y. 2009). "To hold a defendant liable as one who affirmatively instigated or procured an arrest, a plaintiff must show that the defendant or its employees did more than merely provide information to the police." *King v. Crossland Sav. Bank*, 111 F.3d 251, 257 (2d Cir. 1997); *see also Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 217 (2d Cir. 2000) ("The mere reporting of a crime to police and giving testimony are insufficient [to initiate prosecution]; it must be shown that [the] defendant

played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act.") (citations omitted).

Here, Plaintiff asserts a false arrest claim, but he fails to plead enough factual detail to show that any violations occurred. He does not describe the circumstances of the arrest, such as what events gave rise to the arrest, what Defendant Harris allegedly did or said, or what charges were brought against him as a result of the arrest. In addition, even if Defendant Harris provided false information to the police, Plaintiff does not allege any facts indicating that the police failed to conduct an independent evaluation of the circumstances leading to his arrest, or that the police lacked probable cause to arrest him. It is not enough to declare that the defendants falsely arrested him, he must allege facts indicating that the defendants lacked probable cause to arrest and detain him.

**\*4** In light of Plaintiff's *pro se* status, however, the Court grants him leave to assert in his amended complaint any facts to support his false arrest claim. Plaintiff must describe the circumstances of his arrest and state what Defendant Harris and the police officers did or said. Plaintiff should allege facts indicating that Defendant Harris took an active role in his arrest, such as importuning the police to act with the intent to confine Plaintiff. Further, Plaintiff should also allege any facts suggesting that the police failed to exercise their independent judgment and that there was no probable cause to arrest him.

2. Discrimination, police misconduct, and violation of freedom of speech

Plaintiff also allege that he was subjected to discrimination and police misconduct and that his freedom of speech was impeded. But these assertions are vague, without any facts to support them. Although Plaintiff asserts that Defendants are liable for discrimination based on his race and mental health (ECF No. 1, 5), he does not allege any facts suggesting a discrimination claim. Plaintiff does not allege that any defendants treated him differently from other similarly situated individuals or that any such treatment was based on an immutable characteristic – such as his race or disability – or any other improper factor. Similarly, Plaintiff fails to allege any facts in support of his claims that he was subjected to police misconduct and that his freedom of speech was hindered.

Should Plaintiff choose to submit an amended complaint, the Court grants him leave to detail his discrimination, police misconduct, and freedom of speech claims. He must

Case 3:24-cv-01417-DNH-MJK   Document 13   Filed 01/07/25   Page 39 of 103
Harris v. Harris, Not Reported in Fed. Supp. (2020)
2020 WL 1140745

allege any facts suggesting that the defendants discriminated against him by treating him differently because of a protected characteristic; that the police acted unlawfully; and that he was denied his right to freedom of speech. Plaintiff must also allege facts showing how each defendants was involved in the alleged violations.

### 3. HIPAA

Plaintiff asserts that Defendant Harris violated his "Hipea rights." That statement could be read as asserting that Defendant Harris violated his right to privacy under the Health Insurance Portability and Accountability Act (HIPAA). HIPAA generally provides for the confidentiality of individually identifiable health information, *see* 42 U.S.C. §§ 1320d-1 to d-7, and it authorizes the Secretary of Health and Human Services to make final regulations and bring enforcement actions. *See* 42 U.S.C. § 300gg-22. HIPAA permits health care providers and other covered entities to disclose protected health information without patient consent in certain situations, such as in response to a court order. *See, e.g.*, 45 C.F.R. § 164.512(e)(1)(i), (ii).

The Second Circuit has noted that "[i]t is doubtful that HIPAA provides a private cause of action," *Bond v. Conn. Bd. of Nursing*, 622 F. App'x 43, 44 (2d Cir. 2015), and district courts in this circuit have uniformly held that it does not, *see, e.g., Warren Pearl Constr. Corp. v. Guardian Life Ins. Co. of Am.*, 639 F. Supp. 2d 371, 377 (S.D.N.Y. 2009) (collecting cases for the proposition that "HIPAA does not provide for either an express or implied private right of action."); *Mele v. Hill Health Ctr.*, 609 F. Supp. 2d 248, 255 (D. Conn. 2009) (holding that individuals cannot sue to enforce HIPAA or seek damages caused by such disclosures).

Plaintiff's allegations are insufficient to show a violation of HIPAA, and even if he could allege such a violation, HIPAA does not provide a private cause of action allowing an individual suit. To the extent Plaintiff may be asserting a HIPAA claim, the Court dismisses it for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2) (B)(ii).

### 4. Private prosecution

**\*5** The Court also denies Plaintiff's requests for Defendants' prosecution and incarceration. A private citizen cannot prosecute a criminal action in federal court. *See Leek v. Timmerman*, 454 U.S. 83, 86-87 (1981) (prisoners lack standing to seek the issuance of an arrest warrant); *Linda*

*R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). And because federal prosecutors possess discretionary authority to bring criminal actions, they are "immune from control or interference by citizen or court." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972). Accordingly, the Court dismisses any claims in which Plaintiff seeks the criminal prosecution of the defendants for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

## C. Remaining Claims

Plaintiff's remaining contract and theft claims sound in state law. The federal district courts have supplemental jurisdiction over state-law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); *see Lastra v. Barnes and Noble Bookstore*, ECF 1:11-CV-2173, 35, 2012 WL 12876, at *8 (S.D.N.Y. Jan. 3, 2012). Section 1367(c) "confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise," *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997), and it includes a provision stating that a district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Because it is not clear whether Plaintiff can state any federal claims, the Court reserves judgment on whether to exercise its supplemental jurisdiction over potential state law claims.

## LEAVE TO AMEND

Plaintiff is granted leave to amend his complaint to detail his claims as described above. Should Plaintiff choose to file an amended complaint, the Court strongly encourages him to ask for assistance from someone who can help him organize his thoughts and claims. If Plaintiff needs legal advice related to this matter, he may contact the New York Legal Assistance Group's Legal Clinic for Pro Se Litigants in the Southern District of New York, which is a free legal clinic staffed by attorneys and paralegals to assist those who are representing themselves in civil lawsuits in this Court. A copy of a flyer with details of the clinic is attached to this order.

In the amended complaint, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim

Case 3:24-cv-01417-DNH-MJK    Document 13    Filed 01/07/25    Page 40 of 103

Harris v. Harris, Not Reported in Fed. Supp. (2020)
2020 WL 1140745

against each defendant. Plaintiff is also directed to provide the addresses for any named defendants.

To the greatest extent possible, Plaintiff's amended complaint must:

    a) give the names and titles of all relevant persons;

    b) describe all relevant events, stating the facts that support Plaintiff's case including what each defendant did or failed to do;

    c) give the dates and times of each relevant event or, if not known, the approximate date and time of each relevant event;

    d) give the location where each relevant event occurred;

    e) describe how each defendant's acts or omissions violated Plaintiff's rights and describe the injuries Plaintiff suffered; and

    f) state what relief Plaintiff seeks from the Court, such as money damages, injunctive relief, or declaratory relief.

Essentially, the body of Plaintiff's amended complaint must tell the Court: who violated his federally protected rights; what facts show that his federally protected rights were violated; when such violation occurred; where such violation occurred; and why Plaintiff is entitled to relief. Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wishes to maintain must be included in the amended complaint.

**CONCLUSION**

  **\*6** The Clerk of Court is directed to mail a copy of this order to Plaintiff and note service on the docket. Plaintiff is granted leave to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within sixty days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 19-CV-11658 (CM). An Amended Civil Rights Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the complaint will be dismissed for failure to state a claim upon which relief may be granted.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Attachment



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
Write the full name of each plaintiff.

_____CV_____
(Include case number if one has been assigned)

-against-

AMENDED

COMPLAINT

Do you want a jury trial?
☐ Yes  ☐ No

_____
Write the full name of each defendant. If you need more space, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section II.

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 2/10/17

**Harris v. Harris, Not Reported in Fed. Supp. (2020)**
Case 3:24-cv-01417-DNH-MJK    Document 13    Filed 01/07/25    Page 41 of 103

2020 WL 1140745

## I. BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☐ Federal Question

☐ Diversity of Citizenship

### A. If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

_____

_____

_____

_____

### B. If you checked Diversity of Citizenship

#### 1. Citizenship of the parties

Of what State is each party a citizen?

The plaintiff, _____ , is a citizen of the State of
    (Plaintiff's name)

_____
(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

Page 2

If the defendant is an individual:

The defendant, _____ , is a citizen of the State of
    (Defendant's name)

_____

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____

If the defendant is a corporation:

The defendant, _____ , is incorporated under the laws of

the State of _____

and has its principal place of business in the State of _____

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in _____ .

If more than one defendant is named in the complaint, attach additional pages providing information for each additional defendant.

## II. PARTIES

### A. Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

| First Name | Middle Initial | Last Name | |
|---|---|---|---|

| Street Address | | | |
|---|---|---|---|

| County, City | | State | Zip Code |
|---|---|---|---|

| Telephone Number | | Email Address (if available) | |
|---|---|---|---|

Page 3

### B. Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:

| First Name | Last Name | |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

| County, City | State | Zip Code |
|---|---|---|

Defendant 2:

| First Name | Last Name | |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

| County, City | State | Zip Code |
|---|---|---|

Defendant 3:

| First Name | Last Name | |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

| County, City | State | Zip Code |
|---|---|---|

Page 4

Defendant 4:

| First Name | Last Name | |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

| County, City | State | Zip Code |
|---|---|---|

## III. STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Page 5

Case 3:24-cv-01417-DNH-MJK    Document 13    Filed 01/07/25    Page 42 of 103

**Harris v. Harris, Not Reported in Fed. Supp. (2020)**

2020 WL 1140745

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

**IV. RELIEF**

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

## V.  PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| Dated | | Plaintiff's Signature |
|---|---|---|
| First Name | Middle Initial | Last Name |
| Street Address | | |
| County, City | State | Zip Code |
| Telephone Number | | Email Address (if available) |

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☐ Yes   ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

Page 6

Page 7

## All Citations

Not Reported in Fed. Supp., 2020 WL 1140745

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:24-cv-01417-DNH-MJK    Document 13    Filed 01/07/25    Page 43 of 103

Joyner v. County of Cayuga, Not Reported in Fed. Supp. (2020)

2020 WL 1904088

KeyCite Yellow Flag - Negative Treatment

Declined to Extend by    Broadwater v. County of Onondaga,    N.D.N.Y.,
March 11, 2024

2020 WL 1904088
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Michael JOYNER, Plaintiff,

v.

COUNTY OF CAYUGA; Cayuga County Sheriff's
Department; City of Auburn; Shawn I. Butler, Chief of
Auburn Police Department, as an Individual and in his
official capacity; Cayuga County District Attorney's
Office; Jon E. Budelmann, as an Individual and in
his capacity as District Attorney for Cayuga County;
and Anthony Spinelli, as an Individual and in his
capacity as an Auburn City Police Officer, Defendants.

5:20-CV-60 (MAD/TWD)
|
Signed 04/17/2020

**Attorneys and Law Firms**

OF COUNSEL: JARROD W. SMITH, ESQ., OFFICE OF
JARROD W. SMITH, 11 South Main Street, P.O. Box 173,
Jordan, New York 13080, Attorneys for Plaintiff.

OF COUNSEL: JEFFREY R. PARRY, ESQ., OFFICE OF
JEFFREY R. PARRY, 7030 East Genesee Street, Fayetteville,
New York 13066, Attorneys for Plaintiff.

OF COUNSEL: FRANK W. MILLER, ESQ., GIANCARLO
FACCIPONTE, ESQ., OFFICE OF FRANK W. MILLER,
6575 Kirkville Road, East Syracuse, New York 13057,
Attorneys for Defendants.

**MEMORANDUM-DECISION AND ORDER**

Mae A. D'Agostino, U.S. District Judge:

**I. INTRODUCTION**

*1 On or about February 18, 2020, Plaintiff filed a complaint
against Defendants City of Auburn, Shawn L. Butler, County
of Cayuga, Cayuga County District Attorney's Office, Jon
E. Budelmann, and Anthony Spinelli, asserting eight claims

pursuant to 42 U.S.C. §§ 1983 and 1988, and state law.
See Dkt. No. 5. Specifically, Plaintiff's complaint alleges the
following causes of action: (1) false arrest under the Fourth
and Fourteenth Amendments; (2) malicious prosecution
under the Fourth and Fourteenth Amendments; (3) negligent
failure to train or supervise; (4) state law false arrest; (5)
state law false imprisonment; (6) intentional and negligent
infliction of emotional distress under New York State law;
(7) negligence; and (8) deliberate indifference to medical care
under the Eighth Amendment. See Dkt. No. 5 at ¶¶ 40-114.
Currently before the Court is Defendants' motion to dismiss
the complaint in its entirety. See Dkt. No. 9.

**II. BACKGROUND**

According to the complaint, on August 10, 2018, Plaintiff
was the passenger in a vehicle that was driven by 140 Wall
Street, allegedly in violation of an order of protection for
Linda Fitzsimmons and Lee Joyner, who both reside at that
address. See Dkt. No. 5 at ¶¶ 24-25. Plaintiff resides at 145
Wall Street, several houses down from 140 Wall Street, on the
opposite side of the street. See id. at ¶ 25. Plaintiff was not the
driver of the vehicle and had no control over how the driver
was delivering him to his home. See id.

On August 13, 2018, Plaintiff was arraigned on two felony
complaints charging him with two counts of Criminal
Contempt in the First Degree based on the alleged violation of
the order of protection. See id. at ¶ 22. At the conclusion of his
arraignment, Plaintiff was remanded to the Cayuga County
Jail. See id. Plaintiff claims that "Defendant police officer
lacked the requisite requirement of having probable cause to
arrest the Plaintiff; and did falsely arrest and imprison the
Plaintiff." Id. at ¶ 23.

On October 4, 2018, Defendant Jon E. Budelmann, in his
capacity as Cayuga County District Attorney, presented
Plaintiff's charges to a grand jury, which "No Billed" the case.
See id. at ¶ 26. At this point, Plaintiff was released from
custody. See id.

During the fifty-three days during which Plaintiff "was being
illegally imprisoned," he slipped and fell at the Cayuga
County Jail. See id. at ¶ 31. According to Plaintiff, on August
31, 2018, a water pipe burst at the Cayuga County Jail near
Plaintiff's cell while he was already locked in for the night
and sleeping. See id. at ¶ 32. Plaintiff was woken by a
bursting water pipe that was turned off by a Cayuga County

2020 WL 1904088

Correctional officer. *See id.* at ¶ 33. "The first burst of the water pipe [occurred] when the Cayuga County Correctional officer shut the water of" between "12:00 midnight and 2:00 a.m." *Id.* at ¶ 34. "Plaintiff was woken by a bursting water pipe; and observed and heard that the correctional officer was going to turn off the water and clean up the water spill. At that time, there was no water in Plaintiff's cell." *Id.*

**\*2** Unbeknownst to Plaintiff, water from the burst pipe went underneath his locked cell door "and flooded his room while he was in bed and asleep." *Id.* at ¶ 35. "At around 6:30 am-7:00 am, Plaintiff got out of his bed to use the toilet in his cell. Plaintiff slipped and fell on the wet floor of his cell. The water on the floor was all near the toilet in his cell. There was a huge puddle of water between Plaintiff's bunk and the toilet in his cell." *Id.* at ¶ 36. Plaintiff claims that he slipped and fell, hitting his head and neck on his bunk, and his lower back on the floor, causing severe injuries. *See id.* at ¶ 37. At the time that Plaintiff had fallen and injured himself, a second water leak had occurred in the pod in which he was being held. *See id.* at ¶ 38. Plaintiff claims that, as a result of the fall, he suffered a herniated disc in his neck and a lower lumbar strain. *See id.* at ¶ 39. Plaintiff also claims that he suffers from numbing of his toes and finger tips. *See id.*

## III. DISCUSSION

### A. Standard of Review
A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief." ' " *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

### B. Documents Considered in Deciding Motion to Dismiss
In their reply to the motion to dismiss, Defendants submitted several documents in further support of their motion. *See* Dkt. No. 16-1. These documents include (1) the August 10, 2018 criminal complaint charging Plaintiff with Criminal Contempt in the First Degree, (2) the order of protection that Plaintiff allegedly violated, (3) the affidavit of Linda Fitzsimmons that formed the basis for Defendant's underlying criminal charge, and (4) the incident narrative report of Defendant Spinelli dated August 15, 2018 relating to the criminal complaint filed against Plaintiff. *See id.* at 1-6.

**\*3** In deciding a motion to dismiss for failure to state a claim, the court considers the complaint, materials incorporated into the complaint by reference, materials integral to the complaint, and facts that are capable of judicial notice. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

In the present matter, the Court finds that these documents are not properly considered at the motion to dismiss stage. The Court acknowledges that there are cases in which courts have considered similar police records at the pleading stage. *See Betts v. Shearman*, No. 12-cv-3195, 2013 WL 311124, *3 (S.D.N.Y. Jan. 24, 2013) (considering incident report and accusatory instrument that "provide[d] crucial details" about the plaintiff's prosecution), aff'd *on qualified immunity*

Case 3:24-cv-01417-DNH-MJK   Document 13   Filed 01/07/25   Page 45 of 103

Joyner v. County of Cayuga, Not Reported in Fed. Supp. (2020)

2020 WL 1904088

*grounds*, 751 F.3d 78 (2d Cir. 2014); *cf. Obilo v. City Univ. of City of N.Y.*, No. 01-cv-5118, 2003 WL 1809471, *4 (E.D.N.Y. Apr. 7, 2003) (considering incident report and police complaint that the plaintiff had conceded were "implicitly" incorporated into his conspiracy allegations). The better view, however, adopted by a majority of courts in our Circuit, is that these kinds of police records are not "integral" to a false arrest complaint. *See Bejaoui v. City of New York*, No. 13-CV-5667, 2015 WL 1529633, *4–5 (E.D.N.Y. Mar. 31, 2015) (noting disagreement and declining to consider extrinsic police reports); *Alvarez v. Cty. of Orange*, 95 F. Supp. 3d 385, 394-95 (S.D.N.Y. 2015) (collecting cases). A document is not "integral" simply because its contents are highly relevant to a plaintiff's allegations, but only when it is clear that the plaintiff relied on the document in preparing his complaint. *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156-57 (2d Cir. 2006); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Most typically, "the incorporated document is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but for which some reason ... was not attached to the complaint." *Global Network Commc'ns*, 458 F.3d at 157. "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

Here, there is "no indication in the record that plaintiff relied on these documents in drafting the complaint." *Allyn v. Rockland Cty.*, No. 12-cv-5022, 2013 WL 4038602, *4 (S.D.N.Y. July 30, 2013), *affirmed*, 646 Fed. Appx. 60 (2d Cir. 2016). To the contrary, Plaintiff relies on his own perceptions and recollections, while only making passing reference to the criminal complaint and order of protection. Furthermore, it is not beyond dispute that the police report and narrative are a truthful description of the police officer's basis to arrest Plaintiff. To accept the truth of the documents offered by Defendants at this stage would amount to a premature determination that the arresting officers and the alleged victim are more credible than Plaintiff. To make such a determination at this stage would not be appropriate, and therefore the Court will not consider the facts adduced in these documents. The Court will, however, take judicial notice of the existence of the criminal complaint, supporting affidavit, and order of protection. *See Williams v. City of New York*, No. 14-cv-5123, 2015 WL 4461716, *1 (S.D.N.Y. July 21, 2015) (noting that the court "may take judicial notice of the procedural history of plaintiff's criminal case, but not of the truth of the arresting officers' version of events"); *see also Ribaudo v. Desimone*, No. 3:18-cv-1190, 2019 WL 1906269, *4 (M.D. Pa. Apr. 5, 2019) (holding that "even if judicial notice is taken of these documents, 'a court may take notice of such documents only to establish their existence and legal effect, or to determine what statements they contained ... not for the truth of the matters asserted'") (quoting *Fine v. ESPN, Inc.*, 11 F. Supp. 3d 209, 223 (N.D.N.Y. 2014)) (other citation omitted).

## C. *Monell* and Supervisory Liability

**\*4** "Under the standards of *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), a municipality can be held liable under [42 U.S.C. § 1983] if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012). Liability under Section 1983 "is imposed on the municipality [only] when it has promulgated a custom or policy that violates federal law and, pursuant to that policy, a municipal actor has tortiously injured the plaintiff." *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee." *Jones*, 691 F.3d at 80. Thus, for a municipality to be held liable under Section 1983 for the unconstitutional actions of its employees, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (internal quotation marks omitted).

"Supervisory liability is a concept distinct from municipal liability, and is 'imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates.'" *Kucera v. Tkac*, No. 5:12-cv-264, 2013 WL 1414441, *4 (D. Vt. Apr. 8, 2013) (quoting *Odom v. Matteo*, 772 F. Supp. 2d 377, 403 (D. Conn. 2011)). Prior to the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Second Circuit required a plaintiff to allege one of the following categories for supervisory liability under § 1983:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or

Case 3:24-cv-01417-DNH-MJK    Document 13    Filed 01/07/25    Page 46 of 103

Joyner v. County of Cayuga, Not Reported in Fed. Supp. (2020)

2020 WL 1904088

custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [persons] by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

In order to succeed on his *Monell* and supervisory liability claims, a plaintiff must first "identify obvious and severe deficiencies" in the policies of the municipal and supervisory defendants and "show a causal relationship" between those deficiencies and his alleged deprivations. *Reynolds v. Giuliani*, 506 F.3d 183, 193 (2d Cir. 2007). However, to the extent that a plaintiff premises his claims on a failure to train or supervise, such failure "may constitute an official policy or custom [only] if the failure amounts to 'deliberate indifference' to the rights of those with whom the city employees interact." *Wray*, 490 F.3d at 195. Similarly, a supervisory defendant is liable only for the creation or continuation of policy that leads to a pattern of unconstitutional conduct or if he demonstrated deliberate indifference in failing to act on information that a pattern of unconstitutional conduct was occurring. *See Colon*, 58 F.3d at 873.

"To establish deliberate indifference a plaintiff must show that a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights." *Jones*, 691 F.3d at 81.

A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train [or supervise because] [w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen

a training program that will cause violations of constitutional rights.

**\*5** *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)). "[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id.* at 61 (citation omitted). [1]

1       As discussed in more detail below, Plaintiff's complaint fails to set forth any facts sufficient to find either supervisory or municipal liability against any of the named Defendants for any of the listed causes of action.

### D. Cayuga County District Attorney's Office and Auburn Police Department

Plaintiff names the Cayuga County District Attorney's Office as a named Defendant in this case. The caselaw is clear, however, that a district attorney's office is not an entity subject to suit under 42 U.S.C. § 1983. *See Michels v. Greenwood Lake Police Dep't*, 387 F. Supp. 2d 361, 367 (S.D.N.Y. 2005) (citing cases); *Griffith v. Sadri*, No. 07-CV-4824, 2009 WL 2524961, *8 (E.D.N.Y. Aug. 14, 2009). Similarly, Plaintiff has listed the Auburn Police Department as an entity responsible for several of the alleged constitutional violations. *See* Dkt. No. 5 at ¶¶ 51-82. As with the District Attorney's Office, the Auburn Police Department (which is not listed as a Defendant in the caption of the complaint), the Court finds that it must be dismissed because a police department is not an independent, suable entity separate from the municipality in which the police department is located. *See Jenkins v. City of New York*, 478 F.3d 76, 93 (2d Cir. 2007) (citation omitted); *Krug v. City of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (citing cases); *Koulkina v. City of New York*, 559 F. Supp. 2d 300, 315 (S.D.N.Y. 2008) (citing cases).

Accordingly, the Court dismisses Plaintiff's claims against the Cayuga County District Attorney's Office and the Auburn Police Department.

### E. False Arrest

In their motion to dismiss, Defendants contend that, based on Plaintiff's own allegations, probable cause was present

2020 WL 1904088

to believe that he committed the offense for which he was arrested. *See* Dkt. No. 9-1 at 14-16. Defendants claim that Plaintiff "admits that he was charged with violating duly issued orders of protection issued for Linda Fitzsimmons and Lee Joyner, who reside at 140 Wall Street in the City of Auburn. *See id.* at 15 (citing Dkt. No. 5 at ¶ 24). Defendants further claim that Plaintiff "admits he was 'driven by' 140 Wall Street on August 10, 2018." *Id.* (citing Dkt. No. 5 at ¶ 25). Defendants contend that the fact that Plaintiff claims that he was not driving the vehicle "has no bearing on whether the order of protection was reasonably deemed violated by police authorities, and Plaintiff is careful not to deny that he was in fact at 140 Wall Street on the date in question, which is *a per se* violation of the order." *Id.* In response, Plaintiff argues that since he "was arrested for traveling on a public road in route to his own home and in violation of no Order, law or ordinance and, as it cannot be denied that he was 'no billed' by the Grand Jury, it would seem plausible to this writer that any court would agree to the plausibility of Plaintiff's claims." Dkt. No. 10 at 16.

**\*6** In assessing Fourth Amendment claims of false arrest brought under Section 1983, courts generally look to the law of the state in which the arrest is alleged to have occurred. *See Russo v. City of Bridgeport*, 479 F.3d 196, 203 (2d Cir. 2007) (citation omitted). To prevail on a false arrest claim under New York law, a plaintiff has to prove the following: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (alteration and internal quotation marks omitted) (quoting *Broughton v. State*, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975)); *see also Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (outlining the elements of false arrest claims). "The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest.' " *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)); *see also Ackerson*, 702 F.3d at 19-20 (citing *Weyant*, 101 F.3d at 852). "A police officer has probable cause for an arrest when he has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime[.]' " *Swartz v. Insogna*, 704 F.3d 105, 111 (2d Cir. 2013) (quoting *Weyant*, 101 F.3d at 852); *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (same). Such knowledge

or information can be based on information provided by an eyewitness, unless the circumstances would raise a doubt as to the eyewitness' veracity. *See Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (citing *Singer*, 63 F.3d at 119). The question is whether the facts known to the arresting officer, at the time of the arrest, objectively provided probable cause to support the arrest. *See Gonzalez*, 728 F.3d at 155.

In the present matter, the Court finds that Defendants' motion to dismiss Plaintiff's false arrest claim must be denied as to Defendant Spinelli. The complaint sufficiently alleges, albeit barely, that Defendant Spinelli lacked probable cause to arrest Plaintiff for the crime of Criminal in the First Degree. Indeed, it is unclear from the complaint whether Plaintiff's conduct was, in fact, in violation of the order of protection. [2]

[2]     Although the Court is permitting this claim against Defendant Spinelli to survive, the Court has serious doubts about whether the claim would survive a properly supported motion for summary judgment. If the Court were to consider the contents of the criminal complaint, supporting affidavit, and Defendant Spinelli's narrative, the claim would undoubtedly be dismissed. This, however, highlights why the Court believes that it is inappropriate to rely on the contents of these documents at this stage. Without the benefit of discovery, Plaintiff has been unable to question the veracity of the statements contained in those documents. That being said, the criminal complaint and affidavits paint a much less sympathetic picture than the one set out in Plaintiff's complaint.

However, to the extent that Plaintiff attempts to assert a false arrest claim against any other named Defendant, the claim must be dismissed. Plaintiff's complaint is devoid of any facts that would permit the Court to find that any other Defendant was personally involved in the alleged false arrest. Aside from conclusory allegations merely reciting the underlying law, Plaintiff fails to include any facts that plausibly allege the personal involvement of any municipal or supervisory Defendant. For example, Plaintiff alleges that "Defendant Butler, Defendant City and Defendant County have created and tolerated an atmosphere of lawlessness, and have developed and maintained long-standing, department-wide customs, law enforcement related policies, procedures, customs, practices, and/or failed to properly train and/or supervise its officers in a manner amounting to deliberate indifference to the constitutional rights of Plaintiff and of the

Case 3:24-cv-01417-DNH-MJK    Document 13    Filed 01/07/25    Page 48 of 103

Joyner v. County of Cayuga, Not Reported in Fed. Supp. (2020)

2020 WL 1904088

public." Dkt. No. 78 at ¶ 78. While this allegation accurately reflects what is required to hold municipal and supervisory officials personally liable for the acts of other, the simple recitation of the relevant law is insufficient to withstand a motion to dismiss. Rather, Plaintiff was required to allege facts, specific to his case, demonstrating how these municipal and supervisory Defendants were personally involved in the alleged unconstitutional conduct, which he has failed to do. Simply put, the legal conclusions in Plaintiff's complaint, devoid of any supporting facts, fail to plausibly allege supervisory or municipal liability as to this claim.

**\*7** Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's false arrest claim as to Defendant Spinelli.

### F. Malicious Prosecution

In their motion to dismiss, Defendants argue that Plaintiff's malicious prosecution must be dismissed because the complaint fails to set forth facts plausibly alleging that the prosecution was initiated without probable cause or that any named Defendant acted with the requisite malice. *See* Dkt. No. 9-1 at 16-17. In response, Plaintiff states as follows: "As the plaintiff was arrested for traveling on a public road in route to his own home and in violation of no Order, law or ordinance, as it cannot be denied that he was 'no billed' by the Grand Jury and as he spent 53 days in jail for no reason whatsoever, it would seem plausible to this writer that any court would agree to the plausibility of Plaintiff's claims." Dkt. No. 10 at 17 (citing *Swierkiezicz v. Sorema*, 534 U.S. 506 (2002)). Plaintiff brings his malicious prosecution claim against the City of Auburn, Auburn Police Department, Cayuga County, and Defendant Butler. *See* Dkt. No. 5 at ¶¶ 51-82. While Plaintiff may be confident in the viability of his claim, this Court finds that Plaintiff has failed to plausibly allege facts supporting a claim for malicious prosecution.[3]

[3]    Throughout his response, Plaintiff repeatedly states that "the Court is respectfully reminded that it may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *See, e.g.*, Dkt. No. 10 at 17, 18 (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73). Further, Plaintiff repeatedly contends that he "has no duty at this stage to prove his case." *Id.* These basic tenets are not in dispute. What Plaintiff fails to appreciate, however, is that a complaint must be supported by facts specific to his case,

not merely broad assertions of the relevant law poorly disguised as facts. For example, Plaintiff alleges that Defendants engaged in "extreme and outrageous conduct," but fails to explain how any of the conduct alleged could possibly be considered extreme and outrageous. Further, Plaintiff seems to be operating under the assumption that the Court is required to use its imagination to come up with a hypothetical set of facts that could have been pled that would render the claims plausible. *Iqbal* and *Twombly*, however, place no such burden on the Court. Rather, it is incumbent on the plaintiff to set forth the necessary facts specific to his or her case to render the asserted claims plausible.

To prevail on a Section 1983 claim for malicious prosecution, "a plaintiff must show a violation of his rights under the Fourth Amendment ... and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (citations omitted). Under New York law, a plaintiff must plausibly allege four elements to support a malicious prosecution claim: " '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.' " *Id.* (quotation and other citations omitted); *see also Dufort v. City of New York*, 874 F.3d 338, 350 (2d Cir. 2017) (quotation omitted). Initiating a criminal proceeding against a person without probable cause, coupled with a deprivation of liberty, is a Fourth Amendment violation. *See Murphy v. Lynn*, 118 F.3d 938, 944-45 (2d Cir. 1997) (citation omitted).

**\*8** The Second Circuit has held that although "police officers do not generally "commence or continue" criminal proceedings against defendants, a claim for malicious prosecution can still be maintained against a police officer if the officer is found to 'play[ ] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act.' " *Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015) (quotations omitted). "This element might be satisfied by, for example, showing that an officer generated witness statements or was regularly in touch with the prosecutor regarding the case." *Id.* (citation omitted).

Recently, the New York Court of Appeals acknowledged that it has " 'never elaborated on how a plaintiff in a malicious prosecution case demonstrates that the defendant commenced or continued the underlying criminal proceeding.' " *Torres*

Case 3:24-cv-01417-DNH-MJK  Document 13  Filed 01/07/25  Page 49 of 103

Joyner v. County of Cayuga, Not Reported in Fed. Supp. (2020)

2020 WL 1904088

*v. Jones*, 26 N.Y.3d 742, 760-61 (2016) (quotation omitted). "But, by suggesting that a defendant other than a public prosecutor may be liable for supplying false information to the prosecutor in substantial furtherance of a criminal action against the plaintiff, we have implicitly recognized that such conduct may, depending on the circumstances, constitute the commencement or continuation of the prosecution." *Id.* at 761 (citations omitted); *see also Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983) (noting that proof establishing "that the police witnesses" have falsified evidence may create liability for malicious prosecution); *Hopkinson v. Lehigh Val. R.R. Co.*, 249 N.Y. 296, 300-01 (1928) (noting that the falsification of evidence and presentation of that evidence to the prosecutor can constitute commencement of a prosecution).

### 1. Initiation of Criminal Prosecution

In the present matter, the Court finds that Plaintiff's malicious prosecution claim must be dismissed. Initially, the Court finds that Plaintiff has failed to adequately allege that any named Defendant initiated that the prosecution against him. While Defendant Spinelli filed the criminal complaint against him, nothing in the complaint suggests his participation in Plaintiff's prosecution beyond that. Nearly all cases in which law enforcement officers were found to have initiated or continued a prosecution for purposes of a malicious prosecution claim involve officers who provided knowingly false and/or fabricated evidence to unwitting prosecutors. *See, e.g.*, *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997); *Ramos v. City of New York*, 285 A.D.2d 284, 299 (1st Dep't 2001). There is a rebuttable presumption that criminal proceedings are initiated by prosecutors, not arresting officers. *See Mitchell v. Victoria Home*, 434 F. Supp. 2d 219, 228 (S.D.N.Y. 2006) (citation omitted). "[I]n the absence of evidence that the police officer misled or pressured the official who could be expected to exercise independent judgment," a claim of malicious prosecution against the officer must fail. *See Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999) (citations omitted).

Plaintiff's complaint is devoid of any allegations that Defendant Spinelli engaged in any of the conduct identified above that would permit the Court to find that Plaintiff plausibly alleged that any party other than the District Attorney initiated the prosecution against him. As such, the Court finds that Plaintiff's malicious prosecution claim is subject to dismissal.

### 2. Malice

Plaintiff's complaint is also devoid of any facts supporting an inference that the prosecution was instituted with malice. As Defendants correctly note, Plaintiff misconstrues the standard on a motion to dismiss. While Plaintiff is not required to "prove" that Defendants acted in a malicious manner to sustain his claim, he is certainly required to plead enough facts that would make such a conclusion plausible. Plaintiff's complaint fails to plead any facts that would support the inference that any named Defendant (or their employees) acted with the requisite malice to support a malicious prosecution claim. Rather, the complaint simply alleges that he was subjected to normal processes of law. The number of days that Plaintiff spent in jail is irrelevant to this consideration, as is the fact that he was "no billed" by the Grand Jury. Plaintiff does not allege that he had previous interactions with any of the named Defendants, or that his interactions with them during his arrest and subsequent prosecution would indicate a malicious intent. Finally, as to the supervisory and municipal Defendants, Plaintiff has failed to put forth any facts in support of this claim. Rather, the complaint contains nothing but legal conclusions without providing any basis for the Court to conclude that Plaintiff has plausibly alleged a malicious prosecution claim against these Defendants.

**\*9** Accordingly, the Court finds that Plaintiff's malicious prosecution claim is subject to dismissal on this alternative ground.

### 3. Prosecutorial Immunity

Prosecutors sued under 42 U.S.C. § 1983 enjoy absolute immunity " 'from claims for damages arising out of prosecutorial duties that are "intimately associated with the judicial phase of the criminal process." ' " *Okongwu v. County of Erie*, No. 14CV832, 2017 WL 2686454, \*3 (W.D.N.Y. June 22, 2017) (quoting *Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir. 1996) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976))). The prosecutor enjoys this absolute immunity because he or she is acting in a quasi-judicial capacity. *See Okongwu v. County of Erie*, No. 14CV832, 2018 WL 1383233, \*3 (W.D.N.Y. Mar. 19, 2018). The function performed by the prosecutor defines the scope of this immunity. *See Imbler*, 424 U.S. at 430; *Warney*, 587 F.3d at 121. Acts of advocacy before a court, or preparation to advocate, are absolutely immune, *Imbler*, 424 U.S. at 430-31; *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993), while administrative duties or investigatory functions are not so immune, *Imbler*, 424 U.S. at 431 n.33; *Buckley*, 509 U.S. at 273; *Warney*, 587 F.3d at 121. "This protection encompasses

'all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation.' " *Peters*, 848 F. Supp. 2d at 385 (quoting *Barrett v. United States*, 798 F.2d 565, 571-72 (2d Cir. 1986)). As noted by the Second Circuit, "thus, to establish [absolute] immunity, the 'ultimate question' is 'whether the prosecutors have carried their burden of establishing that they were functioning as "advocates" when they engaged in the challenged conduct.' " *Warney*, 587 F.3d at 121 (quoting *Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir. 1996)).

Absolute immunity extends from the initiation of a prosecution and presenting a case at trial, *Boria v. Hicks*, No. 5:17-CV-00486, 2017 WL 2983304, *4 (N.D.N.Y. June 14, 2017), through the decision to end it, *see Okongwu*, 2017 WL 2686454, at *4, as well as post-conviction defense of proceedings and the decision whether to vacate a conviction, *Warney*, 587 F.3d at 123; *Peters*, 848 F. Supp. 2d at 387. Absolute immunity applies in the preparation for the initiation of judicial proceedings, but not to the investigative or administrative duties of a prosecutor. *See Warney*, 587 F.3d at 122. In *Peters*, the court listed activities that are investigative or administrative that do not deserve absolute immunity, such as orchestrating a sting operation, authorizing wiretaps, coercing confidential informant to consent to a wire, releasing information to the media, assisting in the execution of a warrant, or supervising and interacting with law enforcement agents to acquire evidence. *See Peters*, 848 F. Supp. 2d at 386 (citing cases).

In the present matter, the Court finds that Defendant Budelmann, as Cayuga County District Attorney is entitled to absolute prosecutorial immunity. In the complaint, Plaintiff alleges that "[o]n October 4, 2018, Defendant district attorney presented Plaintiff's criminal charges to the Grand Jury of Cayuga County where the grand jury 'No Billed' the case; and Plaintiff was released from his illegal confinement at the Cayuga County Jail." Dkt. No. 5 at ¶¶ 26, 91. Further, Plaintiff claims that "Defendant district attorney knew at the time of Plaintiff's case being presented to the Grand Jury of Cayuga County that he would not prevail due to the lack of probable cause." *Id.* at ¶ 29. These allegations make clear that Defendant Budelmann has been sued relating to his role in presenting the case to the grand jury; conduct for which he is entitled to absolute prosecutorial immunity. *See Hill v. City of New York*, 45 F.3d 653, 661-62 (2d Cir. 1995) (holding that "that prosecutors are immune from § 1983 liability for their conduct before a grand jury") (citations omitted); *Bernard v. County of Suffolk*, 356 F.3d 495, 505 (2d

Cir. 2004) (citations omitted). Accordingly, Plaintiff's claim of malicious prosecution against Defendant Budelmann is subject to dismissal on this alternative ground.

**\*10** Finally, to the extent that Plaintiff seeks to impute the conduct of Defendant Budelmann to Cayuga County, the claim must necessarily be dismissed. The Second Circuit Court of Appeals has unequivocally held that "prosecutorial acts may not fairly be said to represent official policy of the County," because "[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county." *Baez v. Hennessy*, 853 F.2d 73 (2d Cir. 1988) (internal quotation omitted); *see also Doe v. Smith*, 704 F. Supp. 1177, 1184 (S.D.N.Y. 1988). Since Defendant Budelmann was acting on behalf of the State of New York, and not Cayuga County, any alleged misconduct on Defendant Budelmann's part cannot be imputed to Cayuga County.

### G. Negligent/Intentional Infliction of Emotional Distress

In his sixth cause of action, Plaintiff alleges claims of negligent and intentional infliction of emotional distress against Defendants Butler, Spinelli, and Budelmann. *See* Dkt. No. 5 at ¶¶ 96-98. Defendants contend these claims fail as a matter of law. *See* Dkt. No. 9-1 at 19-20.

As to the claim of negligent infliction of emotional distress, it is well settled that a " ' plaintiff seeking damages for an injury resulting from a wrongful arrest and detention may not recover under broad general principles of negligence ... but must proceed by way of the traditional remedies of false arrest and imprisonment.' " *Greenaway v. Cty. of Nassau*, 97 F. Supp. 3d 225, 239 (E.D.N.Y. 2015) (quoting *Secard v. Dep't of Soc. Servs. of Cnty. of Nassau*, 204 A.D.2d 445, 612 N.Y.S. 2d 167, 168 (2d Dep't 1994)). This is precisely what Plaintiff is attempting to do here. Tacking on a claim for negligent infliction of emotional distress without any other facts or assertions is insufficient under the relevant law. Moreover, even if this claim could be considered independent of Plaintiff's false arrest claim, it is still subject to dismissal because Plaintiff has not alleged any facts demonstrating that Defendants breached a duty owed to Plaintiff. As such, the Court grants Defendants' motion to dismiss as to Plaintiff's claim of negligent infliction of emotional distress.

As to the intentional infliction of emotional distress claim, it too must be dismissed. "Intentional infliction of emotional distress has four elements: '(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial

Case 3:24-cv-01417-DNH-MJK    Document 13    Filed 01/07/25    Page 51 of 103

Joyner v. County of Cayuga, Not Reported in Fed. Supp. (2020)

2020 WL 1904088

probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress.' " *Greenaway*, 97 F. Supp. 3d at 239-40 (quoting *Howell v. N.Y. Post Co., Inc.*, 81 N.Y.2d 115, 596 N.Y.S. 2d 350, 612 N.E. 2d 699, 702 (1993)). "The 'extreme and outrageous conduct' must 'go beyond all possible bounds of decency' and be 'atrocious, and utterly intolerable in a civilized community.' " *Id.* (quotation and other citation omitted).

Here, Plaintiff claims that Defendants Budelmann, Spinelli, and Butler engaged in "extreme and outrageous conduct, which intentionally and/or negligently caused severe emotional distress to Plaintiff." Dkt. No. 5 at ¶ 97. Notably absent from the complaint is any explanation what this "extreme and outrageous conduct" was. " 'Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 302 (1983) (quotation omitted). The threadbare facts alleged by Plaintiff, which include the fact that he was arrested and eventually released after the grand jury refused to indict, fall far short of this strict standard.

**\*11** Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's claims for negligent and intentional infliction of emotional distress.

## H. Negligence

In his seventh cause of action, Plaintiff asserts a claim for negligence. *See* Dkt. No. 5 at ¶¶ 100-04. In this claim, Plaintiff argues that his arrest, Defendants' failure to "follow the criminal law of the State of New York," and Plaintiff's fifty-three days of incarceration, were the product of Defendants' negligence. *See id.*

"To prevail on a claim for negligence under New York law, a plaintiff must establish '(1) the existence of a duty on the defendant's part as to the plaintiff; (2) a breach of that duty; and (3) resultant injury to the plaintiff.' " *Frederique v. County of Nassau*, 168 F. Supp. 3d 455, 485 (E.D.N.Y. 2016) (quotation omitted). "However, '[u]nder New York law, harm predicated on an intentional act may not give rise to a claim of negligence.' " *Id.* (quotation and other citation omitted). Moreover, it is well settled that, "[u]nder New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the

appropriate degree of care in effecting an arrest or initiating a prosecution." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (citing *Boose v. City of Rochester*, 71 A.D.2d 59, 421 N.Y.S.2d 740, 743 (4th Dept. 1979)) (other citation omitted).

In the present matter, the Court finds that Plaintiff's negligence claim must be dismissed as it is simply redundant of Plaintiff's claims of false arrest, false imprisonment, and malicious prosecution. Accordingly, the Court grants Defendants' motion to dismiss as to this claim.

## I. Deliberate Indifference to Serious Medical Needs

In his eighth cause of action, Plaintiff claims that "Defendant Medical Staff and Defendant Cayuga County Sheriff's Department" were deliberately indifferent to his medical care and treatment after he was injured when a water pipe broke outside his cell on August 31, 2018. *See* Dkt. No. 5 at ¶¶ 105-14.

A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (citations omitted). A pretrial detainee's claims are evaluated under the Due Process Clause because, " '[p]retrial detainees have not been convicted of a crime and thus 'may not be punished in any manner — neither cruelly and unusually nor otherwise.' " *Id.* (quotations omitted).

"A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions." *Darnell*, 849 F.3d at 29 (citation omitted). "This means that a pretrial detainee must satisfy two prongs to prove a claim, an 'objective prong' showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a 'subjective prong' — perhaps better classified as a *'mens rea'* prong' or 'mental element prong' — showing that the officer acted with at least deliberate indifference to the challenged conditions." *Id.* "The reason that the term 'subjective prong' might be a misleading description is that, as discussed below, the Supreme Court has instructed that 'deliberate indifference' roughly means 'recklessness,' but 'recklessness' can be defined subjectively (what a person actually knew, and disregarded), or objectively (what a reasonable person knew, or should have known)." *Id.* (citing

Case 3:24-cv-01417-DNH-MJK    Document 13    Filed 01/07/25    Page 52 of 103

Joyner v. County of Cayuga, Not Reported in Fed. Supp. (2020)

2020 WL 1904088

*Farmer v. Brennan*, 511 U.S. 825, 836-37, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)).

**\*12** Under both the Eighth and Fourteenth Amendments, to establish an objective deprivation, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health," which includes the risk of serious damage to "physical and mental soundness." *Id.* at 30 (citations omitted). "There is no 'static test' to determine whether a deprivation is sufficiently serious; instead, 'the conditions themselves must be evaluated in light of contemporary standards of decency.' " *Id.* (quoting *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981))). For example, the Second Circuit has " 'held that prisoners may not be deprived of their basic human needs — *e.g.*, food, clothing, shelter, medical care, and reasonable safety — and they may not be exposed to conditions that pose an unreasonable risk of serious damage to [their] future health.' " *Id.* (quoting *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012)).

" '[C]onditions of confinement may be aggregated to rise to the level of a constitutional violation, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise.' " *Darnell*, 849 F.3d at 30 (quotations omitted). "Unsanitary conditions, especially when coupled with other mutually enforcing conditions, such as poor ventilation and lack of hygienic items (in particular, toilet paper), can rise to the level of an objective deprivation." *Id.* (citations omitted).

The second element of a conditions of confinement claim brought under the Due Process Clause of the Fourteenth Amendment is the defendant's "deliberate indifference" to any objectively serious condition of confinement. *See Darnell*, 849 F.3d at 32. Courts have traditionally referred to this second element as the "subjective prong." "But 'deliberate indifference,' which is roughly synonymous with 'recklessness,' can be defined either 'subjectively' in a criminal sense, or 'objectively' in a civil sense." *Id.* As such, the "subjective prong" might better be described as the "*mens rea* prong" or "mental element prong." *Id.*

Under the second prong of the deliberate indifference analysis, the Court must consider whether the defendants "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even

though [they] knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. Under this standard, the plaintiff "must prove that [the defendants] acted intentionally or recklessly, and not merely negligently.' " *Id.* at 36.

In the present matter, the Court finds that Plaintiff has failed to plausibly allege a claim of deliberate indifference under the Fourteenth Amendment. Initially, the Court notes that the "medical staff" at the Cayuga County Jail were not named as defendants in this action. Rule 10(a) requires a plaintiff to "name all the parties" in the Complaint. *See* Fed. R. Civ. P. 10(a). Although the naming of pseudonymous defendants is permissible where a plaintiff requires discovery to learn the true identities of the defendants, the plaintiff subsequently must amend the complaint to reflect the discovered identities and effect service on the named parties within the 120-day time period set forth in Rule 4(m). *See Petty v. Cty. of Franklin*, 478 F.3d 341, 345–46 (6th Cir. 2007).

Here, Plaintiff has not brought suit against any pseudonymous defendants, and only makes reference to these unidentified individuals in the body of the complaint. If Plaintiff had intended to sue then-unknown members of the medical staff at the jail, he should have brought suit against "John and/or Jane Doe" defendants, who could be identified through discovery. Upon obtaining their identities, Plaintiff would then be required to amend his complaint to reflect the Doe defendants' identities. *See Simmons v. District of Columbia*, 750 F. Supp. 2d 43, 45 (D.D.C. 2011) (holding that a plaintiff "may bring an action against unknown John Doe defendants, but plaintiff must substitute named defendants for those unknown defendants after the completion of discovery") (citations omitted); *see also Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995) (holding that "[a]n action may proceed against a party whose name is unknown if the complaint makes allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery"). Here, Plaintiff has not brought suit against unknown members of the medical staff at the Cayuga County Jail or providing any facts that would permit Defendants to assist in obtaining their identities. As such, the only potential deliberate indifference claim asserted in the complaint is a municipal liability claim against Defendant Cayuga County.

**\*13** In his complaint, Plaintiff has alleged that a water pipe burst outside his cell during the night, the water was turned off, and at some point during the night it pooled near his cell's

Case 3:24-cv-01417-DNH-MJK    Document 13    Filed 01/07/25    Page 53 of 103
Joyner v. County of Cayuga, Not Reported in Fed. Supp. (2020)
2020 WL 1904088

toilet. *See* Dkt. No. 5 at ¶¶ 109-13. At sometime between 6:30 a.m. and 7:00 a.m., Plaintiff claims that he got out of bed to use the toilet in his cell and slipped and fell on the wet floor. *See id.* at ¶ 110. Plaintiff alleges that, when he fell, he hit his head and neck on his bunk and his lower back on the floor, causing severe injuries, including a herniated disc in his neck and lower lumbar strain. *See id.* at ¶¶ 111-13. Plaintiff claims that, "[a]fter the injury up and until Plaintiff was released on October 4, 2018[,] Plaintiff was denied medical treatment for his injuries that he suffered inclusive of medication and treatment from a physician." *Id.* at ¶ 114.

Initially, the Court notes that nothing in the complaint indicates that Plaintiff's alleged injury was caused by a municipal custom, policy, or usage, as is required to find a plausible claim against Defendant Cayuga County. Rather, Plaintiff claims that a water pipe leaked outside his cell during the night and that a "correctional officer ... turn[ed] off the water and clean[ed] up the water spill. At that time, there was no water in Plaintiff's cell." Dkt. No. 5 at ¶ 108. When the second pipe leaked, some water entered Plaintiff's cell, which caused Plaintiff to fall. *See id.* at ¶ 109. This isolated incident, involving a bursting water pipe, is woefully insufficient to plausibly allege municipal liability for Plaintiff's alleged injury. *See* Connick, 131 S. Ct. at 1360; *see also Plair v. City of New York*, 789 F. Supp. 2d 459, 470 (S.D.N.Y. 2011) ("[I]t is well established that a single incident does not give rise to an unlawful practice by subordinate officials so permanent and well-settled as to constitute custom or usage") (internal quotation marks omitted); Giaccio v. City of New York, 308 Fed. Appx. 470, 472 (2d Cir. 2009) (finding that allegations of, at most, four prior incidents of misconduct "falls far short of establishing a practice that is 'so persistent or widespread' as to justify the imposition of municipal liability") (internal quotation marks omitted).

Even assuming that Plaintiff had asserted this claim against an individually named Defendant, the claim would still be dismissed. To satisfy the second prong of a deliberate indifference claim, Plaintiff must plausibly allege facts suggesting that a defendant "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though [they] knew, or should have known, that the condition posed an excessive risk to health or safety." Darnell, 849 F.3d at 35. At best, the facts set forth in the complaint describe negligence on the part of the correctional staff, which is insufficient to support a claim of deliberate indifference. *See id.* at 36.

Finally, to the extent that Plaintiff is basing his claim on the alleged deprivation of medical care after his accident, Plaintiff has failed to provide any factual basis in support of his conclusory assertion that he "was denied medical treatment for his injuries that he suffered inclusive of medication and treatment from a physician." Dkt. No. 5 at ¶ 114. The complaint fails to allege that he brought his alleged injuries to the attention of the correctional or medical staff at the Cayuga County jail (or even identify any such individual).

Based on the foregoing, the Court grants Defendants' motion to dismiss as to Plaintiff's deliberate indifference claim.

## IV. CONCLUSION

After carefully the entire record in this matter, parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**\*14** **ORDERS** that Defendants' motion to dismiss (Dkt. No. 9) is **GRANTED in part** and **DENIED in part**; [4] and the Court further

[4]     As a result of this Memorandum-Decision and Order, the only remaining claim is Plaintiff's false arrest claim against Defendant Spinelli.

**ORDERS** that Defendants City of Auburn, Butler, Cayuga County, Cayuga County District Attorney's Office, and Budelmann are **TERMINATED** as Defendants in this action; and the Court further

**ORDERS** that Defendants' letter motion a portion of the argument raised in their motion to dismiss (Dkt. No. 15) is **DENIED as moot**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2020 WL 1904088

**Joyner v. County of Cayuga, Not Reported in Fed. Supp. (2020)**

2020 WL 1904088

---

**End of Document**                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

2012 WL 2569085
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Ronald MOYE, Plaintiff,
v.
The CITY OF NEW YORK; Sgt. Nelson Caban,
P.O. Paul Jeselon, P.O. Samuel Fontanez, P.O.
Edward Simonetti, P.O. Matthew Boorman, P.O.
Frank Papa, P.O. Tawaina O'Neal, P.O. Brennan;
P.O. John; and A.D.A. Dustin Chao, Defendants.

No. 11 Civ. 316(PGG).
|
July 3, 2012.

### MEMORANDUM OPINION & ORDER

PAUL G. GARDEPHE, District Judge.

**\*1** Plaintiff Ronald Moye has brought claims against the
City of New York, former New York County Assistant
District Attorney Dustin Chao, and eight members of the New
York City Police Department ("NYPD") under 42 U.S.C.
§ 1983 and state law. Moye claims that Chao is liable for
damages under Section 1983 and state law for malicious
prosecution, abuse of process, denial of a fair trial, fabrication
of evidence, conspiracy "to inflict an unconstitutional injury,"
and intentional and negligent infliction of emotional distress.
(Am. Cmplt., Second, Third, Fourth, Fifth, Sixth, Seventh,
and Ninth Claims) Chao has moved to dismiss the Amended
Complaint on grounds of absolute immunity. For the reasons
stated below, Chao's motion to dismiss will be granted.

### BACKGROUND

For purposes of deciding Defendant Chao's motion to dismiss,
the Court has assumed that the following facts presented in
the Amended Complaint are true.

### I. MOYE'S ARREST
On or about March 12, 2002, at approximately 8:00
p.m., NYPD officers Paul Jeselson and Tawaina O'Neal
were stationed on the rooftop of an apartment building
on the south side of West 118th Street near the corner
of Morningside Avenue conducting nighttime narcotics
surveillance. (Am.Cmplt.¶¶ 19, 22) Plaintiff's car was located
on the north side of West 118th Street, near Manhattan
Avenue. (*Id.* ¶ 21) Officer Jeselson claimed that he observed
Plaintiff "extend his hand from the driver's side window and
hand a small glassine" to another individual—later arrested
—who, in turn, handed it to an unapprehended customer. (*Id.*
¶ 20) The Defendant officers moved in and arrested Moye in
the vicinity of 352 West 118th Street. (Am.Cmplt.¶¶ 12, 25)

At the time of the arrest, and later at the 28th Precinct, the
officers searched Moye and his car and found United States
currency, both in Moye's possession and inside the vehicle.
(*Id.* ¶ 27) The Defendant officers unnecessarily grabbed
Moye, pushed him, and placed excessively tight handcuffs on
him (*id.* ¶ 30), causing him to suffer bruises to and numbness
in his wrists. (*Id.* ¶ 32)

Moye was indicted on March 22, 2002, for Criminal
Possession of a Controlled Substance in the Third Degree.
(Am. Cmplt. ¶ 35; Schwartz Decl., Ex. A) Plaintiff alleges that
the police officer defendants "conspired [to give] and gave
false testimony and intentionally placed false evidence before
the grand jury." [1] (Am.Cmplt.¶ 35)

1    The Amended Complaint does not disclose what
     false testimony or other false evidence was laid
     before the grand jury. Moreover, there is no
     suggestion that Chao was involved in presenting
     false testimony or false evidence to the grand jury.

### II. MOYE'S FIRST TRIAL
Moye's first trial began on January 14, 2003. (Schwartz Decl.,
Ex. B) A.D.A. Chao introduced photographs at trial which
he claimed showed the position of Plaintiff s car as it was
parked on West 118th Street. (Am.Cmplt.¶ 38) Chao, Officer
Jeselson, and Officer Papa were present when a District
Attorney's office photographer took these photos in June 2002
from the March 12, 2002 observation point. (*Id.* ¶¶ 41–42,
44) Although the photographs were intended to convey the
vantage point of the officers on the night of the arrest, they did
not replicate the "nighttime conditions." (*Id.* ¶ 45) According
to Moye, these photographs nonetheless showed that the
officers could not have seen Plaintiff extend his hand from
the driver's side window and pass a small glassine to another
individual, because the driver's side could not be seen from
the vantage point of the rooftop observation post, even with
binoculars. (*Id.* ¶¶ 46, 48) At trial, Officer Jeselson admitted

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

that "he was not able to see the driver's side of the vehicles in the photographs." (*Id.* ¶ 47) Jeselson nonetheless claimed that he had been able to see Moye's hand "during the nighttime observation." (*Id.* ¶ 39) The first trial ended in a mistrial, with the jury unable to reach a verdict. (*Id.* ¶ 49)

## III. *MOYE'S SECOND TRIAL*
**\*2** In February 2003, A.D.A. Chao, Officers Brennan and Jeselson, and D.A's Office photographer Nancy Badger returned to West 118th Street to take more photographs. (*Id.* ¶ 53) They repositioned the car on an angle in order to make it appear that the officers would have been able to see Moye's hand outside the driver's side window on the night of his arrest. (*Id.* ¶¶ 55–60) With the car positioned in this fashion, Jeselson and Chao instructed Badger to take photographs of Officer Brennan's hand outside the driver's side window in an effort to simulate what the officers would have seen that night. (*Id.* ¶¶ 60–61) Jeselson and Chao then had Brennan move the car back to a curbside position "where additional photographs [were] taken at a wide angle to falsely give the impression that the close-ups were merely enlargements of the vehicle parked along the curb." (*Id.* ¶ 63)

At Moye's second trial, Chao introduced these new photographs and elicited testimony from Jeselson in which he used the photographs to support his claim that he was able to see Moye's hand from the rooftop observation post. (*Id.* ¶¶ 66, 74) However, Badger testified that, in taking the new photographs, "the defendants moved the vehicle to an angle where the hand could be visible." Defendants then returned the vehicle to its curbside position and took additional photographs that "falsely give the impression that the close-ups were merely enlargements of the vehicle parked along the curb." (*Id.* ¶¶ 81–84)

In summation, Moye's lawyer argued that Jeselson had lied about his observations from the roof and the positioning of the car in the photographs introduced by the prosecution.

(*Id.* ¶ 85) In response, A.D.A. Chao argued that Officer Jeselson had no opportunity to frame the defendant, because Chao had been present at the observation post:

"[Defense counsel] spoke about people on that roof. It's in evidence. Officer Jeselson was on that roof, the photographer Laura Badger was on the roof, and I was on that roof. Now, if he is directing something improperly, that is Officer Jeselson, well, it's in front of me.

"And if he knew he was going to get away with it when I say that's the opportunity, you know [defense counsel] talked about a lot of people losing their jobs about perjuring themselves, about the integrity of Robert Morgenthau's office. Well, if Officer Jeselson thought he was going to get away with it—

"[DEFENSE counsel]: Mr. Chao is vouching for his witness.

"THE COURT: Overruled.

"[ADA] CHAO: If Officer Jeselson thought he was going to get away with it with me present, all that talk about firing, that should be me because I'm prosecuting this case, not Officer Jeselson.

"[DEFENSE counsel]: That's objectionable vouching for his witness.

"THE COURT: Overruled.

"[DEFENSE counsel]: Your Honor, he is making himself an unsworn witness for the credibility of his police officer.

**\*3** "THE COURT: Overruled.

"[ADA] CHAO: Ladies and gentlemen, Mr. Morgenthau should fire me if Officer Jeselson thinks he is going to be able to say that in court, lie to you, when the person who is standing right next to him on that roof is me. Well, that lies with me.

"So what's the explanation? If there's no motive, no opportunity for why Ms. Badger remembers it differently. Well, there's evidence that you heard the officer was on the roof. Evidence that you heard I was on the roof also. I have no other answer other than the fact that she is mistaken....

"[DEFENSE counsel]: He is vouching for his witness using the pronoun I.

"THE COURT: Members of the jury, you can accept his argument as to what happened on the roof. It's his argument based upon the evidence as he recalls it."

*People v. Move,* 52 A.D.3d 1, 5 (1st Dep't 2008); *see also* (Am. Cmplt. ¶¶ 87–92.

Moye was convicted at his second trial and sentenced to four-and-a-half to nine years' imprisonment. (Am.Cmplt.¶¶ 13–14)

Moye v. City of New York, Not Reported in F.Supp.2d (2012)

2012 WL 2569085

---

**IV. *THE CHARGES AGAINST MOYE ARE DISMISSED***

On appeal, the First Department vacated the conviction in a 3–2 decision. *People v. Move,* 52 A.D.3d 1. The First Department found that "the prosecutor improperly vouched for his witness and interjected his personal integrity and the veracity of the District Attorney's office into his summation to support the credibility of Police Office Jeselson." *Id.* at 6. The New York Court of Appeals agreed that Chao had engaged in impermissible vouching for his witness, affirmed the reversal of the conviction, and remanded the case to Supreme Court. *People v. Move,* 12 N.Y.3d 743, 744 (2009). After remand, the New York County District Attorney's Office dismissed the case on October 21, 2009. (Am.Cmplt.¶¶ 16, 37)


*DISCUSSION*

**I. *IMMUNITY***

Chao argues that the claims against him must be dismissed because his actions are protected by absolute immunity.[2]

[2]  Because Moye sues Defendant Chao in his individual capacity (Am .Cmplt.¶ 9), his claims are not barred by the Eleventh Amendment. *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993) ("To the extent that ... a [Section 1983] claim is asserted against a [state official] in his individual capacity, he may assert privileges of absolute or qualified immunity but may not assert immunity under the Eleventh Amendment.").

Section 1983 "purports to create a damages remedy against every state official for the violation of any person's federal constitutional or statutory rights." *Kalina v. Fletcher,* 522 U .S. 118, 123 (1997). In order to state a claim under Section 1983, a plaintiff must show that the conduct complained of was committed by a person or entity acting under color of state law, and that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution. *Newton v. City of New York,* 566 F.Supp.2d 256, 269–70 (S.D.N.Y.2008) (citing *Palmieri v. Lynch,* 392 F.3d 73, 78 (2d Cir.2004)).

"Although section 1983 imposes liability upon every person who deprives another of a constitutional right under color of state law, the doctrines of absolute and qualified immunity shield prosecutors and law enforcement officers from liability related to their official acts." *Day v. Morgenthau,* 909 F.2d 75, 77 (2d Cir.1990). While Section 1983 does not explicitly provide for such immunity, the Supreme Court and Second Circuit have ruled that "Congress did not intend § 1983 to abrogate immunities 'well grounded in history and reason.' " *Pinaud v. Cnty. of Suffolk,* 52 F.3d 1139, 1147 (2d Cir.1995) (quoting *Buckley v. Fitzsimmons,* 509 U.S. 259, 268 (1993)).

**\*4** As the Second Circuit has explained:

Such immunities are of two types: absolute and qualified. *Buckley v. Fitzsimmons,* 509 U.S. 259, 268, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). Absolute immunity is reserved for officials who perform "special functions" and deserve absolute protection from damages liability. Among these are prosecutors, and persons working under their direction, when they function as advocates for the state in circumstances "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman,* 424 U.S. at 430–31. *See also Hill v. City of New York,* 45 F.3d at 660 (extending absolute prosecutorial immunity to persons acting under the direction of prosecutors in performing functions closely tied to the judicial process).

By contrast, only qualified immunity applies to law enforcement officials, including prosecutors, when they perform investigative functions. *Buckley v. Fitzsimmons,* 509 U.S. at 273. ("When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.") (internal quotation marks and citations omitted); *accord Zahrey v. Coffey,* 221 F.3d 342, 349 (2d Cir.2000).

*Bernard v. Cnty. of Suffolk,* 356 F.3d 495, 502–03 (2d Cir.2004).

Absolute immunity extends only so far as necessary to protect the judicial process. *Hill v. City of New York,* 45 F.3d 653, 660 (2d Cir.1995). Nonetheless,

[t]he doctrine of absolute prosecutorial immunity creates a formidable obstacle for a plaintiff seeking to maintain a civil rights action against a district attorney, as it provides that "prosecutors are absolutely immune from liability under § 1983 for their conduct in 'initiating a prosecution and in presenting the State's case,' insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.' " *Burns v. Reed,* 500 U.S. 478, 486, 111

---

S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991) (quoting *Imbler,* 424 U.S. at 430–31, 96 S.Ct. at 995).

*Pinaud,* 52 F.3d at 1147. The Court addresses the parameters of absolute prosecutorial immunity below.

**A. *Legal Standard for Absolute Prosecutorial Immunity***
A prosecutor who, as here, is sued in his or her individual capacity, may assert absolute or qualified immunity as a defense. Courts may grant a Rule 12(b)(6) motion to dismiss on grounds of absolute immunity where the facts establishing the defense appear in the complaint. *Deronette v. City of New York,* No. 05 CV 5275(SJ), 2007 WL 951925, at *4 (E.D.N.Y. Mar. 27, 2007) (citing *Hill,* 45 F.3d at 663) (absolute immunity may be decided on a Rule 12(b)(6) motion where facts establishing the defense may be "gleaned from the complaint")). Moreover, district courts are encouraged to determine the applicability of an absolute immunity defense at the earliest appropriate stage, and preferably before discovery.[3] *Id.* (citing *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)); *United States v. Colbert,* No. 87 Civ. 4789, 1991 WL 183376 at *4 (S.D.N.Y. Sept. 11, 1991). This approach is appropriate given that "absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." *Imbler,* 424 U.S. at 419 n. 13. "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Buckley,* 509 U.S. at 270 (1993) (citing *Burns,* 500 U.S. at 486).

[3]    District courts likewise evaluate the applicability of absolute immunity before assessing whether a plaintiff has sufficiently alleged a constitutional violation. *Pinaud,* 52 F.3d at 1148 n. 4 (citing *Buckley,* 509 U.S. at 261).

**\*5** Prosecutorial immunity to Section 1983 claims is grounded in the immunity to tort liability that prosecutors enjoy under the common law. *Flagler v. Trainor,* 663 F.3d 543, 546 (2d Cir.2011) That immunity arises from the "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Id.* (citing *Imbler,* 424 U.S. at 423). Immunity protects the proper functioning of the prosecutor's office by insulating the exercise of prosecutorial discretion. *Kalina,* 522 U.S. at 125. Prosecutors are therefore "absolutely immune from suit only when acting as advocates and when

their conduct involves the exercise of discretion." *Flagler,* 663 F.3d at 546 (citing *Kalina,* 522 U.S. at 127).

The Supreme Court addressed the question of absolute immunity for prosecutors in *Imbler,* where it held that prosecutors are entitled to absolute immunity for damage suits under Section 1983 for all acts "intimately associated with the judicial phase of the criminal process," including "initiating a prosecution and ... presenting the State's case [at trial]." *Imbler,* 424 U.S. at 430.

Later, in *Buckley,* 509 U.S. at 273, the Supreme Court considered whether the prosecutor defendants were entitled to absolute immunity for "investigative" work they performed well before seeking an indictment, involving an effort to connect the plaintiff to a bootprint left at a murder scene. Although the Court rejected the prosecutors' claim for absolute immunity, the Court cautioned that it had

> not retreated ... from the principle that acts undertaken by a prosecutor preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity. Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made.

*Buckley,* 509 U.S. at 273 (internal citations and quotations omitted).

Whether a prosecutor has absolute immunity for a particular act thus "depends principally on the nature of the function performed, not on the office itself." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 530 (2d Cir.1993). "Such functions include the decision to bring charges against a defendant, presenting evidence to a grand jury, and the evaluation of evidence prior to trial." *Johnson v. City of New York,* No. 00 CIV 3626(SHS), 2000 WL 1335865, at *2 (S.D.N.Y. Sept. 15, 2000) (citing *Kalina,* 522 U.S. at 126). Furthermore, this "application of immunity is not limited to the duties a

prosecutor performs in the courtroom." *Dory v. Ryan,* 25 F.3d 81, 83 (2d Cir.1994) (citing *Buckley,* 509 U.S. at 272).

**\*6** "[A] district attorney is [not only] absolutely immune from civil liability for initiating a prosecution and presenting the case at trial," but also "immune for conduct in preparing for those functions; for example, evaluating and organizing evidence for presentation at trial or to a grand jury, or determining which offenses are to be charged." *Hill,* 45 F.3d at 661 (citations omitted). Prosecutorial immunity from Section 1983 damages liability is broadly defined, covering "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Dory,* 25 F.3d at 83. The Second Circuit has been "mindful of the Supreme Court's admonition that 'the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom.... Preparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence.' " *Barbera v. Smith,* 836 F.2d 96, 100 (2d Cir.1987) (quoting *Imbler,* 424 U.S. at 431 n. 33); *see also Barrett v. United States,* 798 F.2d 565, 571 (2d Cir.1986) ("The absolute immunity accorded to government prosecutors encompasses not only their conduct of trials but all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation....")

Because absolute immunity extends broadly to all acts committed by a prosecutor in his or her role as an advocate, it protects prosecutors against claims that they conspired to, or actually presented, fabricated evidence at trial:

> absolute immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate. This would even include ... allegedly conspiring to present false evidence at a criminal trial. The fact that such a conspiracy is certainly not something that is properly within the role of a prosecutor is immaterial, because "[t]he immunity attaches to his function, not to the manner in which he performed it." *Barrett v. United States,* 798 F.2d 565, 573 (2d Cir.1986); *see also Daloia v. Rose,* 849 F.2d 74, 75 (2d Cir.1988) (*per curiam* ) (holding ... that prosecutor was immune from § 1983 liability for knowingly presenting false testimony). As much as the idea of a prosecutor conspiring to falsify evidence [is disturbing] ... there is a greater societal goal in protecting the judicial process by preventing perpetual suits against prosecutors for the

performance of their duties. *See Imbler,* 424 U.S. at 426–428.

*Dory,* 25 F.3d at 83.[4]

[4]    By contrast, discretionary prosecutorial actions that are not "intimately associated with the judicial phase of the criminal process" are entitled only to qualified immunity. *See Buckley,* 509 U.S. at 270–75; *Burns,* 500 U.S. at 491–95. A prosecutor is "absolutely immune from liability under section 1983 [only] for acts 'within the scope of [their] duties in initiating and pursuing a criminal prosecution.' " *Day,* 909 F.2d at 77 (quoting *Imbler,* 424 U.S. at 410). Thus, when a prosecutor acts in an investigative or administrative capacity, absolute immunity is not available. *Hill,* 45 F.3d at 661. For example, immunity is not available when a prosecutor releases information or evidence to the media, *Buckley,* 509 U.S. at 276–78; authorizes or directs the use of wiretaps, *Powers v. Coe,* 728 F.2d 97, 103 (2d Cir.1984); or performs the functions normally performed by the police, such as assisting in the execution of a search or seizure. *See Buckley,* 509 U.S. at 273. The Supreme Court has also withheld absolute immunity for conduct unrelated to advocacy, such as giving legal advice, *Burns,* 500 U.S. at 492–96, or acting as a complaining witness. *Kalina,* 522 U.S. 118, 129–31; *see also Ying Jing Gan,* 996 F.2d at 533 (finding that prosecutor was not entitled to absolute immunity where he allegedly exposed a witness to retaliation and failed to provide adequate protection for the witness).

Although courts have declined to establish a bright-line test based on the stage of a criminal proceeding, "absolute prosecutorial immunity has generally been found in cases where some type of formal proceeding had been commenced or was being commenced by the conduct at issue." *Tabor v. New York City,* No. 11 CV 0195 FB, 2012 WL 603561, at \*4 (E.D.N.Y.2012) (citing *Barbera v. Smith,* 836 F.2d at 99. In contrast, where formal proceedings have not begun and the prosecutor is acting in an investigative capacity—such as by providing the police with legal advice on investigative techniques—qualified immunity generally applies. *Id.* While the Supreme Court has noted that a prosecutor is not absolutely immune for every action taken after probable cause has been established, *see Buckley,* 509 U.S. at 274 n. 5, "the Court's treatment of the issue demonstrates that

the existence of probable cause with respect to a particular suspect is a significant factor to be used in evaluating the advocatory nature of prosecutorial conduct." *Cousin v. Small,* 325 F.3d 627, 633 (5th Cir.2003); *accord Barbera,* 836 F.2d at 99 (noting "that in each of the cases we have reviewed where absolute immunity was upheld, some type of formal proceeding had been commenced or was being commenced by the challenged acts"); *see also DiBlasio v. Novello,* 344 F.3d 292, 300–01 (2d Cir.2003) ( "In assessing whether absolute immunity should attach to a prosecutor ... we have focused on the timing of the conduct at issue....") Thus, in interpreting *Buckley,* the Second Circuit has distinguished between "preparing for the presentation of an existing case," on the one hand, and attempting to "furnish evidence on which a prosecution could be based," on the other hand, with only the former entitling a prosecutor to absolute immunity. *Smith v. Garretto,* 147 F.3d 91, 94 (2d Cir.1998).

**\*7**  In assessing a prosecutor's claim of absolute immunity, the court employs a "functional approach," *see, e.g., Burns,* 500 U.S. at 486, which looks to "the nature of the function performed, not the identity of the actor who performed it." *Forrester v. White,* 484 U.S. 219, 229 (1988); *see also Van de Kamp v. Goldstein,* 555 U.S. 335, 335–336 (2009) ("To decide whether absolute immunity attaches to a particular kind of prosecutorial activity, one must take account of ... 'functional' considerations"). The court must inquire whether the actions in question are part of a prosecutor's traditional function and whether they are closely associated with the judicial process. *Blouin v. Spitzer,* 356 F.3d 348, 357 (2d Cir.2004) (a court must examine the "nature of the function performed" in assessing whether absolute immunity will attach.); *Doe v. Phillips,* 81 F.3d 1204, 1209 (2d Cir.1996).

### B. *Analysis*

### 1. *Malicious Prosecution, Abuse of Process*

To the extent that the Amended Complaint seeks to hold Chao liable for initiating the prosecution of Moye, absolute immunity is clearly applicable. *Shmueli v. City of New York,* 424 F.3d 231, 237 (2d Cir.2005) ("[T]he prosecutor is shielded from liability for damages for commencing and pursuing the prosecution, regardless of any allegations that his actions were undertaken with an improper state of mind or improper motive."); *see also Hill,* 45 F.3d at 660–61 (holding that prosecutors and those working under their direction are absolutely immune for claims relating to the initiation of a prosecution and for conduct before a grand jury). Plaintiff s

federal and state law claims alleging malicious prosecution and abuse of process will therefore be dismissed. [5]

[5]  Absolute immunity is a defense not only to Section 1983 claims but to related state law claims. *See Shmueli,* 424 F.3d at 238 (dismissing Section 1983 and related state law malicious prosecution claims); *Arum v. Miller,* 331 F.Supp.2d 99, 112 (E.D.N.Y.2004) (dismissing abuse of process and civil conspiracy claims on grounds of absolute prosecutorial immunity); *Imbler,* 424 U.S. at 424 (same principles require conferral of absolute immunity for damage claims against prosecutors under Section 1983 and state law).

### 2. *Creation of Misleading Photographs, Conspiracy to Present False Evidence at Trial*

Moye alleges that Chao, in preparation for Moye's second trial, returned to West 118th Street and instructed Nancy Badger—the District Attorney's office photographer—to take photographs that inaccurately represented the position of Moye's car on the night of his arrest. Chao then presented these photographs at the second trial. (Am.Cmplt.¶¶ 38, 40, 50, 50–54, 66–67) Moye alleges that these photographs gave the false impression that the police in the observation post would have been able to see Moye's hand outside the driver's side window. (*Id.* ¶ 60) Moye further argues that absolute immunity does not extend to Chao's role in obtaining these allegedly misleading photographs, because obtaining such evidence is "not a traditional prosecutorial function" and was "done for the purpose of misleading the second jury." (Pltf. Opp. Br. at 10–11)

Prosecutors' absolute immunity applies "not just for presentation of testimony," however, but also to preparatory conduct "relating to their advocacy." *Dory,* 24 F.3d at 83. The Supreme Court and the Second Circuit have emphasized that ' "the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom.... Preparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence.' " *Barbera,* 836 F.2d at 100 (quoting *Imbler,* 424 U.S. at 431 n. 33); *see also Barrett,* 798 F.2d at 571 ("The absolute immunity accorded to government prosecutors encompasses not only their conduct of trials but all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation....").

**\*8** Chao obtained the photographs at issue after Moye's first trial and in preparation for Moye's second trial. Accordingly, his involvement in obtaining these photographs took place long after formal criminal proceedings had been commenced. *See Deskovic v. City of Peekskill,* Nos. 07–CV–8150 (KMK), 07–CV–9488 (KMK), 2009 WL 2475001, at \*10 (S.D.N.Y. Aug. 13, 2009) ("[i]n assessing how closely connected a prosecutor's conduct is to the judicial phase of the criminal process, the timing of the conduct is relevant") (citing *DiBlasio,* 344 F.3d at 300–01).

Furthermore, in directing that these new photographs be taken, Chao was performing in his role as a prosecutor preparing for trial: he sought to obtain these visual depictions of the crime scene in order to strengthen his case. (Am. Cmplt. ¶ 64 (purpose of second set of photographs was "to show that P.O. Jeselson could see a hand coming out of the car window on the date of plaintiff s arrest")). Although Chao was working with the police, he was acting within his role "as [an] advocate for the State." *Burns,* 500 U.S at 491. Courts have consistently found absolute immunity applicable where, as here, a Section 1983 plaintiff is relying on post-indictment misconduct by a prosecutor aimed at obtaining additional evidence to support pending charges at trial. *See, e.g., Deskovic,* 2009 WL 2475001, at \*5, \*11, \*13 (plaintiff contended that A.D.A. had, post-indictment, conspired to procure false scientific evidence that he later introduced at trial; granting A.D.A.'s motion to dismiss Section 1983 claims on absolute immunity grounds, because the A.D.A.'s alleged misconduct took place after indictment during the "judicial phase of the criminal process"); *Bertuglia v. City of New York,* No. 11 Civ. 2141(JGK), 2012 WL 906958, at \*21 (S.D.N.Y. Mar. 19, 2012) (granting motion to dismiss state law claims against A.D.A. defendant based on post-indictment evidence-gathering activities; absolute immunity applicable because "the Complaint does not allege facts that create a plausible inference that [the prosecutor] was not acting as an advocate seeking to strengthen her case against an indicted defendant"); *Zahrey v. City of New York,* No. 98–4546, 2009 WL 54495, at \*30–\*31 (S.D.N.Y. Jan. 7, 2009) (granting absolute immunity to A.D.A. alleged to have engaged in post-indictment effort to fabricate evidence); *KRL v. Moore,* 384 F.3d 1105 (9th Cir.2004) (granting A.D.A. absolute immunity for alleged misconduct related to his role in obtaining a post-indictment search warrant seeking evidence to corroborate pending charges); *Cousin v. Small,* 325 F.3d 627, 635 (5th Cir.2003) (granting absolute immunity to A.D.A. accused of fabricating evidence post-indictment; "at the time of [A.D.A.] Jordan's ...

conversations with Rowell, in which Jordan allegedly told Rowell to implicate Cousin falsely in the murder and coached him on how to testify, Jordan was acting as an advocate rather than as an investigator. The interview was intended to secure evidence that would be used in the presentation of the state's case at the pending trial of an already identified suspect, not to identify a suspect or establish probable cause. Jordan therefore is entitled to absolute immunity with respect to this claim."); *see also Peay v. Ajello,* 470 F.3d 65, 68 (2d Cir.2006) (affirming dismissal on absolute immunity grounds of Section 1983 claim brought against Assistant State's Attorney based on alleged conspiracy to present false evidence at trial); *Dory,* 25 F.3d at 83 ("absolute immunity protects a prosecutor from § 1983 liability for ... allegedly conspiring to present false evidence at a criminal trial").

**\*9** Because Chao is alleged to have obtained the misleading photographs post-indictment, in preparation for Moye's second trial, and in an effort to strengthen his case as the State's advocate, he is entitled to absolute immunity for this alleged misconduct.

### 3. *Misconduct at Trial*

Moye alleges that Chao elicited false testimony from Officer Jeselson at trial, that he buttressed Jeselson's false testimony through introduction of the misleading photographs, and that he then vouched for the truth of Jeselson's testimony in his summation.

A prosecutor's presentation of false evidence, or subornation of perjury at trial, is protected by absolute immunity. *Jones v. King,* No. 10 Civ. 0897(PKC), 2011 WL 4484360, at \*4 (S.D.N.Y. Sept. 28, 2011) ("The claim that [the prosecutor] 'conspir[ed] to present false evidence at a criminal trial' is barred.... The prosecutor enjoys absolute immunity 'despite allegations of his "knowing use of perjured testimony...." '") (citations omitted); *Bertuglia,* 2012 WL 906958, at \*23 (prosecutors are entitled to absolute immunity for allegations that they "coerced and harassed various witnesses into giving false testimony"); *Urrego v. United States,* No. 00 CV 1203(CBA), 2005 WL 1263291, at \*2 (E.D.N.Y.2005) ("It is settled law that when a prosecutor presents evidence to a grand jury and at trial he is acting as an advocate and entitled to absolute immunity on claims that the evidence presented was false."); *Johnson v. Scott,* No. CV–91–1467(CPS), 1993 WL 36131, at \*2 (E.D.N.Y. Feb. 5, 1993) (A.D.A. entitled to absolute immunity related to witness perjury, because this "concern[ed] ... the presentation of the State's case against the plaintiff"); *see Imbler,* 424 U.S. at

430–31 (granting prosecutors absolute immunity for their conduct "in presenting the State's case," including permitting a fingerprint expert to give false testimony, suppressing important evidence, and introducing a misleading artist's sketch into evidence.).

The analysis does not change because Plaintiff alleges a conspiracy to commit these acts. *Shmueli,* 424 F.3d at 237–38 ("principles [of absolute immunity] are not affected by allegations that improperly motivated prosecutions were commenced or continued pursuant to a conspiracy") (citing *Dory,* 25 F.3d at 83); *Bernard,* 356 F.3d at 503; *Hill,* 45 F.3d at 659 n. 2 (when the underlying activity at issue is covered by absolute immunity, the "plaintiff derives no benefit from alleging a conspiracy").

Plaintiff also argues that Chao acted outside his prosecutorial role when he vouched for Jeselson's testimony during summation. Because a prosecutor's summation is part of presenting the State's case, courts agree that a prosecutor's conduct during summation is protected by absolute immunity. *See Robinson v. Rome,* No. 11–CV–1411(NGG)(LB), 2011 WL 1541044, at *3 (E.D.N.Y.2011) (finding A.D.A.s immune from suit for claims related to, *inter alia,* an improper summation); *Johnson,* 1993 WL 36131, at *2 (granting absolute immunity to prosecutor where plaintiff alleged that A.D.A. "express [ed] to the jury her opinion as to the truth of the testimony of her witnesses during her summation").

**\*10** In sum, to the extent that Moye's claims against Chao are based on his conduct at trial, those claims are covered by absolute immunity.

\* \* \* \*

The Court concludes that Chao has absolute immunity for all of Moye's claims, whether based on federal or state law, and whether founded on theories of malicious prosecution, abuse of process, denial of a fair trial, fabricated evidence, conspiracy, or intentional or negligent infliction of emotional distress.

### CONCLUSION

Chao's motion to dismiss is GRANTED. The Clerk of the Court is directed to terminate the motion (Dkt. No. 23).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 2569085

---

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2000 WL 1335865
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Martin JOHNSON, Plaintiff,

v.

THE CITY OF NEW YORK, Assistant District
Attorney Robert Henoch, Captain of Corrections Martin,
Corrections Officer Schmidt, Corrections Officer Brown
and Unidentified Correction Officers, Defendants.

No. 00CIV.3626(SHS).
|
Sept. 15, 2000.

OPINION AND ORDER

STEIN, D.J.

**\*1** Martin Johnson has brought this action pursuant to 42 U.S.C. § 1983 seeking monetary damages on the grounds that the defendants—the City of New York, an Assistant District Attorney, and certain Corrections Officers—violated his constitutional rights under the Fourth, Eighth and Fourteenth Amendments to the U.S. Constitution by failing to protect him from an attack by fellow inmates against whom he had arranged to testify. Johnson also asserts two tort claims. The Assistant District Attorney moves to dismiss the complaint as it pertains to him pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted and pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. For the following reasons, the motion is granted and the complaint is dismissed as to ADA Henoch.

BACKGROUND

The facts are taken from plaintiff's complaint and are assumed to be true for purpose of this motion. In May of 1998 Johnson was arrested for allegedly selling crack cocaine. Complaint at 4. Shortly after his arrest, he entered into a cooperation agreement with ADA Henoch to testify against several of his co-defendants. [1] *Id.* ADA Henoch allegedly "assured" plaintiff at that time that he "would protect him[ ]" from possible retaliation by his co-defendants. *Id.* Johnson claims that he was being held in Beacon, a housing area on Rikers Island, which was in "the same general area" as where the

people against whom he was to testify were held and that he alerted ADA Henoch of this fact. *Id.* ADA Henoch "explicitly assured [him] that he would be safe" and that "he would be placed in protective custody." *Id.* at 4–5. Plaintiff also alerted defendant Corrections Officers Martin, Schmidt, Brown and "Unidentified Correction Officers" to his danger. *Id.* at 5.

[1]    The complaint states that plaintiff entered into the cooperation agreement with ADA Henoch on June 18, 1999. Complaint at 4. Plaintiff's opposition, however, states the cooperation agreement was entered into in "June of 1998". Opposition at 2. In addition, plaintiff has recently sought—successfully—to amend the complaint to allege that the agreement was made in June of 1998. Accordingly, this Court will assume that plaintiff entered into the cooperation agreement with defendant in June, 1998.

On February 24, 1999, plaintiff was attacked by fellow inmates "who called him a snitch as they beat and kicked him." *Id.* As a result of the beating, Johnson suffered a fractured ankle, injuries to his head, neck and legs, and damage to his retina that required surgery. *Id.* ADA Henoch, after learning of the attack on plaintiff, "acknowledged [his] prior request for protection." *Id.*

As noted above, Johnson has filed this action against the City of New York, Correction Officers Martin, Schmidt, Brown, and ADA Henoch and the ADA has moved to dismiss the complaint on the grounds that it fails to state a constitutional claim for which relief may be granted and that he is entitled to either absolute or qualified prosecutorial immunity.

DISCUSSION

When reviewing a motion to dismiss, a court must accept as true the factual allegations of the complaint and must view the pleadings in the light most favorable to and draw all reasonable inferences in favor of the non-moving party. *See Jamison v. Dee,* 2000 WL 502871 (S.D.N.Y. April 27, 2000) (citing *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993)). Dismissal of the complaint is only proper when "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957).

I. *Absolute Immunity*

**\*2** It is well-established that prosecutors are absolutely immune from suits for damages arising from actions which are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 994–95, 47 L.Ed.2d 128 (1976); *see Buckley v. Fitzsimmons,* 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). Whether a prosecutor has absolute immunity "depends principally on the nature of the function performed, not on the office itself." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 530 (2d Cir.1993). Such functions include the decision to bring charges against a defendant, *see Gan,* 996 F.2d at 530, presenting evidence to a grand jury, *see Barret v. United States,* 789 F.2d 565, 571–72 (2d Cir.1986), and the evaluation of evidence prior to trial. *See Kalina v. Fletcher,* 522 U.S. 118, 126, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997). Absolute immunity is not available, however, when a prosecutor "undertakes conduct that is beyond the scope of his litigation-related duties." *Barbera v. Smith,* 836 F.2d 96, 99 (2d Cir.1987).

*Barbera v. Smith,* 836 F.2d 96, 100, is closely analogous to this action. In *Barbera,* the Second Circuit held that a prosecutor was not entitled to absolute immunity where he twice refused to provide a cooperating witness with police protection. *Id.* at 98. The witness had agreed to testify in return for a more lenient sentence and was murdered by a contract killer hired by the target of the prosecutor's investigation. *Id.* The Court found that "the government was still seeking evidence, including testimony from [the victim], that would enable it to prosecute ..." and that "this task [providing protection] was [not] so intimately associated with the judicial phase of the criminal process ..." as to entitle the prosecutor to absolute immunity. *Id.*

Here, as in *Barbera,* defendant's activities were not "so intimately associated with the judicial phase of the criminal process" as to entitle him to absolute immunity from suit. *See Gan,* 996 F.2d at 531 ("the claim that [the prosecutor] failed to protect [plaintiff] asserts conduct that plainly is not integral either to a decision of whether or not to institute a prosecution or to the conduct of judicial proceedings. Accordingly, if [defendant] is to be accorded immunity ... it can only be qualified immunity ."). Therefore absolute immunity is not available to the district attorney in this action.

## II. *Qualified Immunity*

In general, "the defense of qualified immunity cannot support the grant of a ... 12(b)(6) motion for failure to state a claim upon which relief can be granted." *Green v. Maraio,* 722 F.2d 1013, 1018 (2d Cir.1983). Qualified immunity is an affirmative defense that must be pleaded by the official claiming it. *See Satchell v. Dilworth,* 745 F.2d 781, 784 (2d Cir.1984) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 72 L.Ed .2d 396 (1982)). Dismissal for failure to state a claim is thus appropriate where the complaint itself presents the qualified immunity defense. *See, e.g., Green,* 722 F.2d at 1019. The United States Supreme Court has also held that "unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *See also Robison v. Via,* 821 F.2d 913, 920 (2d Cir.1987) (citing *Procunier v. Navarette,* 434 U.S. 555, 565 (1978) (prison officials entitled to dismissal of claims of violating prisoner's First and Fourteenth Amendment rights by interfering with mail where such rights had not been clearly established)). Even when viewed in the light most favorable to plaintiff and drawing all reasonable inferences in his favor, *Mills,* 12 F.3d at 1174, Johnson's allegations regarding the District Attorney do not state a violation of a clearly established constitutional right. Thus, dismissal pursuant to Fed.R.Civ.P. 12(b)(6) is appropriate. *See, e.g., Molinelli v. Tucker,* 901 F.2d 13, 16 (2d Cir.1990).

**\*3** Qualified immunity shields government actors performing discretionary functions from " 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." ' *Lennon v. Miller,* 66 F.3d 416, 420 (2nd Cir.1995) (quoting *Harlow,* 457 U.S. at 818.) To determine whether a right was clearly established at the time defendant acted, the Court must consider: "(1) whether the right in question was defined 'with reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Gan,* 996 F.2d at 532 (quoting *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1992)).

The District Attorney claims that he is entitled to qualified immunity because, even if he had a constitutional duty to protect Johnson, it was not a clearly established duty. The Due Process Clause itself does not require the State to protect "the life, liberty, [or] property of its citizens against invasion by private actors." *Deshaney v. Winnebago County Dep't of Soc. Serves,* 489 U.S. 189, 195, 109 S.Ct. 998, 1002, 103 L.Ed.2d

249 (1989). Therefore, as a general rule, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197, 109 S.Ct. at 1004. The only judicially recognized exceptions to this rule are custodial relationships where "the State takes a person into its custody and holds him there against his will," *Id.* at 199–200, 109 S.Ct. at 1005 (the "special relationship" exception), or when the government affirmatively creates or increases the danger an individual is placed in. *See Dwares v. City of N.Y.,* 985 F.2d 94, 98–99 (2d Cir.1993) (the "state-created danger" exception).

Special relationships that have given rise to a governmental duty to protect against third-person attacks include "custodial relationships such as a prison and inmate or a mental institution and involuntarily committed patient, and the relationship between a social service agency and foster child." *Gan,* 996 F.2d at 532 (citing cases).

The Second Circuit has also recognized the state-created danger exception to *DeShaney's* general rule. *See Dwares,* 985 F.2d at 99 (police officers agreed in advance with members of a group to allow the group to assault the plaintiff, did not interfere during the beating and did not arrest those who assaulted the plaintiff); *Hemphill v. Schott,* 141 F.3d 412, 418 (2d Cir.1998) (arresting officers returned gun to robbery victim and drove him to the scene of suspect's arrest, where the victim shot the suspect); *see also Freeman v. Ferguson,* 911 F.2d 52, 54 (8th Cir.1990) (reversing dismissal on qualified immunity grounds against police chief who instructed subordinates to ignore victim's request for protection from her husband, who was the chief's friend).

**\*4** Johnson contends that the District Attorney's proffer of the cooperation agreement and assurance that he would protect plaintiff conferred upon the District Attorney a constitutional duty to protect Johnson. [2] Plaintiff claims that the prosecutor's duty to protect him was clearly established by *DeShaney* and by *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (prison officials may be held liable under Eighth Amendment for denying humane conditions of confinement only if they know that inmates face substantial risk of serious harm and disregard that risk by failing to take reasonable measures to abate it). However, neither *DeShaney* nor *Farmer* clearly establish the law regarding plaintiff's allegations. While the very action in question need not have been previously held unlawful for a constitutional right to be clearly established, *Duncan v. Kean,* 1995 WL 649931, \*3 (S.D.N.Y. Nov. 6, 1995)

(citing *Aveni v. Mottola,* 35 F.3d 680, 686 (2d Cir.1994)), it must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 639 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

[2]     Johnson does not specify whether he is claiming defendant Henoch owed a duty to protect him based on the special relationship or state-created danger exception to the *DeShaney* rule. For the purpose of this motion, both arguments will be addressed.

The Second Circuit has twice considered and rejected claims against prosecutors for failure to protect a witness from attack by a third party. *See Barbera,* 836 F.2d at 100–01; *Gan,* 996 F.2d at 533–34. In *Gan,* a panel of the Second Circuit wrote that

> "[p]laintiffs have not called to our attention any case before or since [*Barbera* ] ... in which the lodging of a complaint with law enforcement officials, or the complainant's compliance with a request to identify suspects, either singly or in combination, has been held (a) to create a relationship that gives the complaining witness a constitutional right to protection, or (b) to impose a corresponding duty on a prosecutor."

*Id.* at 533–34.

Here, as in *Gan,* plaintiff points to no case, and the Court is aware of none, where it has been held that a prosecutor's alleged promise to protect an inmate who agrees to testify creates a special relationship that gives rise to a constitutional right to protection from a third party. Nor is the Court aware of any decision which has held that the mere proffer of a cooperation agreement by a prosecutor so increases the danger to an inmate that it creates a constitutional duty for the prosecutor to protect the inmate from potential attacks by third persons. A *prison official's* willful failure to protect an inmate from another inmate's violent actions violates the Constitution if the officer was "deliberate[ly] indifferen[t] to the consequences of his conduct for those under his control

and dependent upon him," *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988). However, no corresponding duty has been found to exist between an inmate and prosecutor.

Based on the limited caselaw in existence at the time of the alleged attack, and particularly because of the absence of any caselaw which holds that any state actor other than a prison official owes a duty to protect an inmate from another inmate's violent actions, it cannot be said that it was clearly established that defendant ADA Henoch had created or assumed a special relationship with Johnson imbuing him with a constitutional duty to protect him. Therefore, this Court "need not decide whether [it] would hold that these circumstances create such a right and corresponding duty, for in the absence of any such holdings and in the face of the general rule articulated in *DeShaney,* it could not have been clear to a reasonable prosecutor that his failure to provide protection ... would have violated [plaintiff's] rights under the Constitution." *Gan,* 996 F.2d at 534. Defendant Henoch is therefore entitled to qualified immunity.

III. *The Pendent State Claims*

**\*5** The ADA's motion to dismiss plaintiff's pendent state law claims is likewise granted. The Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3). Accordingly, the state law claims against ADA Henoch are dismissed without prejudice. *See United Mine Workers of America v. Gibbs,* 338 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350 n. 7, 98 L.Ed.2d 720 (1988); *Mayer v. Oil Field Systems Corp.,* 803 F.2d 749, 757 (2d Cir.1986).

IV. *CONCLUSION*

For the reasons set forth above, the prosecutor's motion to dismiss is granted and the complaint is dismissed as against the assistant district attorney.

SO ORDERED:

**All Citations**

Not Reported in F.Supp.2d, 2000 WL 1335865

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 4948681
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Katron CHAVIS, Plaintiff,
v.
SYRACUSE POLICE DEPARTMENT, Fred Lamberton,
Mackenzie Glynn, Abraham, and DeJoseph, Defendants.

8:24-CV-889 (MAD/MJK)
|
Signed December 3, 2024

**Attorneys and Law Firms**

KATRON CHAVIS, 24-B-2054, Auburn Correctional
Facility, P.O. Box 618, Auburn, New York 13021, Plaintiff,
Pro Se.

**MEMORANDUM-DECISION AND ORDER**

Mae A. D'Agostino, United States District Judge:

 *1 On July 18, 2024, Plaintiff Katron Chavis commenced
this action, *pro se*, against Defendants Syracuse Police
Department, Detective Fred Lamberton, Officer Mackenzie
Glynn, Detective Abraham, and Detective DeJoseph. *See*
Dkt. No. 1. Plaintiff alleges that Defendants violated
his constitutional rights, pursuant to 42 U.S.C. § 1983,
by choking and beating him during an arrest. *See id.*
Plaintiff claims that he suffered a seizure, which left him
with emotional damage, widespread nerve damage, chronic
headaches, and injuries to his shoulder, right hand, neck, and
back. *See* id. at 4-5. Plaintiff also submitted an application to
proceed *in forma pauperis* ("IFP"). *See* Dkt. No. 6.

On September 6, 2024, Magistrate Judge Mitchell J. Katz
issued an Order and Report-Recommendation granting
Plaintiff's IFP application and recommending that his
complaint be dismissed with leave to amend. *See* Dkt. No. 9.
Specifically, Magistrate Judge Katz found that the Syracuse
Police Department is not a proper defendant, Plaintiff failed
to specify which Defendant(s) engaged in what conduct, and
intentional infliction of emotional distress is not a recognized
claim under § 1983. *See* Dkt. No 9 at 4, 6, 7.

On September 23, 2024, Plaintiff filed objections to the Order
and Report-Recommendation. *See* Dkt. No. 11. Therein,

Plaintiff clarifies that Defendant Glynn "was the officer
punching [him]," and that the conduct of all four individual
Defendants led to his injuries. *Id.* at 1. Plaintiff also offers to
provide his medical records and a video of the alleged assault
to the Court. *See* id. at 2.

When a party files specific objections to a magistrate
judge's recommendations, the district court "makes a de
novo determination" on the contested portions of the Report
and Recommendation. 28 U.S.C. § 636(b)(1)(C). When
objections are "[g]eneral[,] ... conclusory[,] ... or ... which
merely recite the same arguments presented to the magistrate
judge," the district court reviews the contested portions for
clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL
933846, *1 (N.D.N.Y. Mar. 16, 2011). This Court "may
accept, reject, or modify, in whole or in part, the findings or
recommendations made by the magistrate judge." 28 U.S.C.
§ 636(b)(1)(C).

Federal courts must assess *pro se* litigants' pleadings under a
more lenient standard. *See Haines v. Kerner*, 404 U.S. 519,
520 (1972). *Pro se* litigants' filings should be " 'liberally
construed,' ... and 'a *pro se* complaint, however inartfully
pleaded, must be held to less stringent standards than formal
pleadings drafted by lawyers.' " *Erickson v. Pardus*, 551 U.S.
89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106
(1976)). Therefore, courts read *pro se* filings "to raise the
strongest arguments that they suggest." *Id.* at 474.

Having reviewed Magistrate Judge Katz's Order and Report-
Recommendation, Plaintiff's complaint, and the applicable
law, the Court adopts in part and rejects in part Magistrate
Judge Katz's recommendations.

First, Magistrate Judge Katz correctly recommended
dismissal of Plaintiff's claim against the Syracuse Police
Department because the Department is not a proper
defendant. It is well settled that municipalities can be held
civilly liable under § 1983. *See Monell v. Dep't of Soc. Servs.*,
436 U.S. 658, 690 (1978). However, "a municipal police
department does not have the capacity to be sued as an
entity separate from the municipality in which it is located."
*White v. Syracuse Police Dep't*, 5:18-CV-1471, 2019 WL
981850, *3 (N.D.N.Y. Jan. 7, 2019) (citing *Krug v. Cnty.
of Rensselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008);
*Turczyn ex rel. McGregor v. City of Utica*, 6:13-CV-1357,
2014 WL 6685476, *2 (N.D.N.Y. Nov. 26, 2014); *Hoisington
v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999)).
Therefore, the Court agrees with Magistrate Judge Katz that
the allegations against the Syracuse Police Department should

be dismissed, and the Court adopts this portion of the Order and Report and Recommendation.

**\*2** Second, Magistrate Judge Katz determined that Plaintiff's complaint fails to meet the pleading standards set forth in the Federal Rules of Civil Procedure 8 because Plaintiff's complaint "fails to delineate which [D]efendant engaged in which specific conduct." Dkt. No. 9 at 6; *see also* FED. R. CIV. P. 8(a). The Court respectfully disagrees with Magistrate Judge Katz's conclusion on this issue.

Federal pleading standards "require[ ], at a minimum, that a complaint give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.' " *Atuahene v. City of Hartford*, 10 Fed. Appx. 33, 34 (2d Cir. 2001). Generally, a plaintiff fails to satisfy that standard if they "lump[ ] all the defendants together ... and provid[e] no factual basis to distinguish their conduct ...." *Id.* However, under certain circumstances context, this rule has been relaxed. *See O'Brien v. City of Syracuse*, No. 5:22-CV-948, 2023 WL 6066016, \*7 (N.D.N.Y. Sept. 18, 2023). " 'For example, in situation involving alleged assault by a group of police officers or corrections officers, courts do not insist that the complaint set forth in detail the actions of each officer where it would be unreasonable to expect the plaintiff to be able to do so.' " *Id.* (quoting *Bryant v. Monroe Cnty.*, No. 19-CV-6474, 2022 WL 119184, \*10 (W.D.N.Y. Jan. 12, 2022)); *see also Messina v. Mazzeo*, 854 F. Supp. 116, 126 (E.D.N.Y. 1994) ("It would be asking too much for an arrestee to remember and plead the role each of several police officers played in an alleged instance of police brutality").

In *O'Brien*, this Court denied the police officer defendants' motion to dismiss when the defendants argued that the plaintiff alleged unconstitutional acts under "the group pleading doctrine" and did not "distinguish among them or attribute any specific actionable conduct to any specific [d]efendant." *O'Brien*, 2023 WL 6066016, at \*7. The Court concluded that the "[p]laintiff has sufficiently alleged the acts of each named [d]efendant, such that they have fair notice of the claim presented against them." *Id.* (citing, *inter alia, New York Am. Water Co., Inc. v. Dow Chemical Co.*, No. 19-CV-2150, 2020 WL 9427226, \*4 (E.D.N.Y. Dec. 11, 2020) (noting that the pleading did group the defendants together, but allowing it to proceed because "plaintiffs make clear that identical claims are [being] asserted against each defendant")). Specifically, as to the plaintiff's Fourth Amendment excessive force claim, she alleged that "four of the defendant officers, Lieutenant David Hart, Sergeant

Matthew Liadka, Officer Kenneth Sheehan, and Officer Nicolas Saralegui-Martin, then shot [the plaintiff] multiple times." *Id.* at \*4 (quotation and quotation marks omitted). The plaintiff did not allege which defendant fired their weapons, at what specific moment, and where she was hit. Nevertheless, the Court permitted the plaintiff's excessive force claims to proceed past the motion to dismiss stage. *See id.* at \*26 n.13. Likewise, District Judge David N. Hurd has permitted Eighth Amendment excessive force claims to proceed past initial review where the plaintiff alleged that "defendants Corrections Officer John Doe #1, Corrections Officer John Doe #2, Corrections Officer John Doe #3, Corrections Officer John Doe #4, and Corrections Officer John Doe #5 'assaulted [plaintiff] by punching [him] [and] kicking [him] in [his] face while [he] was on medical watch' inside 'the medical building' of Mid-State Correctional Facility." *Oudekerk v. Doe*, No. 9:24-CV-113 (N.D.N.Y.), Dkt. No. 7 at 5 (alterations in original) (quotation omitted); *see also Burroughs v. Mitchell*, 325 F. Supp. 3d 249, 270 (N.D.N.Y. 2018) (permitting excessive force claims to proceed past initial review where the plaintiff "claims that Doe # 5 subjected him to excessive force on June 17 when he 'slammed' plaintiff's face into a metal gate and repeatedly threatened him.... Plaintiff has identified the time, location, amount of force used, the injuries sustained, and individual involved in the alleged assault"). By contrast, Judge Hurd has granted a motion to dismiss where the plaintiff alleged that five named defendants and John or Jane Doe 1-10 falsely arrested the plaintiff. *See Wilson v. Cnty. of Ulster*, No. 1:20-CV-00104, 2022 WL 813958, \*8 (N.D.N.Y. Mar. 17, 2022). Judge Hurd noted that "[w]hile [the p]laintiff indicates in another part of the [complaint] that 'Defendant Faulkner was plaintiff's arresting officer,' ... that allegation does not clarify the roles the other fourteen individual defendants played in [the p]laintiff's arrest." *Id.* Judge Hurd therefore dismissed the false arrest claim against the fourteen defendants. *See id.*

**\*3** Here, Plaintiff identifies the four Defendants as Syracuse Police Officers and/or Detectives Lamberton Fred, Mackenzie Glynn, Abraham, and DeJoseph. *See* Dkt. No. 1 at 2-3. Plaintiff alleges that on September 14, 2023, "at the state market," two of the officers grabbed him and started to hit him, one holding him in a choke hold, when the other two officers "join[ed] them" and punched Plaintiff. *Id.* at 4. Plaintiff has alleged the who, what, when, and where underlying his complaint such that the named Defendants are apprised of the Fourth Amendment excessive force claim against them. Allowing the required special solicitude for Plaintiff's *pro se* status, the Court concludes that Plaintiff's

allegations are sufficient at this early stage to state an excessive force claim. *See Powell v. City of Jamestown*, No. 1:21-CV-721, 2022 WL 1913581, *5 (W.D.N.Y. June 3, 2022); *Moore v. City of New York*, No. 22-CV-10957, 2024 WL 3361193, at *5 (S.D.N.Y. July 10, 2024). For this reason, the Court rejects this portion of the Order and Report and Recommendation. However, Plaintiff is informed that at later stages of this case, among other requirements, he will have to prove the personal involvement of every named Defendant to be successful on his constitutional claim. *See Hami v. Chenango Cnty.*, No. 9:21-CV-1224, 2022 WL 1001530, at *4 (N.D.N.Y. Apr. 4, 2022); *Case v. City of New York*, 233 F. Supp. 3d 372, 397-98 (S.D.N.Y. 2017).

"Excessive force claims related to an arrest or seizure are evaluated under the Fourth Amendment using an 'objective unreasonableness' standard." *Bogart v. City of New York*, No. 13-CV-1017, 2016 WL 4939075, *7 (S.D.N.Y. Sept. 6, 2016) (quoting *Graham v. Connor*, 490 U.S. 386, 388 (1989)). "The 'proper application' of this standard 'requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.' " *Outlaw v. City of Hartford*, 884 F.3d 351, 366 (2d Cir. 2018) (quotation omitted).

To support an excessive force claim, the plaintiff must establish that the defendant used more than *de minimis* force. *See Feliciano v. Thomann*, 747 Fed. Appx. 885, 887 (2d Cir. 2019). "Even conduct that caused some physical pain and resulted in side effects need not be compensated if a jury finds that such injuries were *de minimis*." *Ali v. Kipp*, No. 11-CV-5297, 2016 WL 7235719, *7 (E.D.N.Y. Dec. 13, 2016), *aff'd*, 891 F.3d 59 (2d Cir. 2018). Nevertheless, while "not every push or shove constitutes excessive force," *Lennon v. Miller*, 66 F.3d 416, 426 (2d Cir. 1995) (citing *Graham*, 490 U.S. at 396), a show of force by an officer that is overly disproportionate to the risk of harm may support a claim for excessive force. *See Gersbacher v. City of New York*, No. 1:14-CV-7600, 2017 WL 4402538, *11 (S.D.N.Y. Oct. 2, 2017)

Plaintiff has sufficiently alleged a Fourth Amendment excessive force claim insofar as he alleged that "when [he] was arrested," Defendants physically assaulted plaintiff which resulted in a seizure, headaches, and neck and back pain. Dkt. No. 1 at 2, 4. The Court makes no finding as to

the sufficiency of Plaintiff's allegations in ultimately proving a Fourth Amendment claim.

Third, Magistrate Judge Katz recommended dismissing what he construed to be an intentional infliction of emotional distress claim brought under § 1983. *See* Dkt. No. 9 at 7 (citing Dkt. No. 1 at 5). In Plaintiff's check box complaint, he did not indicate the legal basis for his complaint. *See* Dkt. No. 1 at 1. Under his first claim, Plaintiff writes, "excessive force physical beating which caused me significant physical and emotional damage." *Id.* at 5. For his second claim, Plaintiff states, "mentally, emotionally, desterbed [sic] assault [sic]." *Id.*

This Court has recognized that, "[a]s a preliminary matter, 'intentional infliction of emotional distress "is not a cognizable claim" under Section 1983.' " *York v. City of Johnstown*, No. 1:20-CV-01616, 2022 WL 2209441 (N.D.N.Y. June 21, 2022) (quoting *Scott v. City of Rochester*, No. 17-CV-6311, 2019 WL 4016165 (W.D.N.Y. Aug. 26, 2019)); *see also Anderson v. City of New York*, No. 13 Civ. 1745, 2013 WL 6182675, *3 (S.D.N.Y. Nov. 19, 2013) ("[F]ederal courts ... have dismissed § 1983 claims for intentional infliction of emotional distress because it is not a cognizable constitutional claim"); *Manson v. Narus*, No. 3:08-CV-1, 2008 WL 4911152, *4 (D. Conn. Nov. 11, 2008) ("[I]n contrast to claims for false arrest and malicious prosecution, which are cognizable as both state law claims and as section 1983 claims, claims for intentional infliction of emotional distress are ordinarily brought under state law"). Thus, to the extent that Plaintiff's complaint can be construed as raising an intentional infliction of emotional distress claim under § 1983, the claim must be dismissed, and the Court adopts this portion of the Order and Report and Recommendation.

**\*4** Finally, Magistrate Judge Katz recommended that Plaintiff be granted leave to amend with respect to his excessive force claim against the individual Defendants, but not with respect to his claim against the Syracuse Police Department or his intentional infliction of emotional distress claim. *See* Dkt. No. 9 at 9. Generally, courts must allow *pro se* plaintiffs at least one opportunity to amend their complaint "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also* FED. R. CIV. P. 15(a)(2) (calling on courts to "freely give leave when justice so requires"). A court may deny permission to amend "[w]here

it appears that granting leave to amend is unlikely to be productive ....” *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Because Plaintiff cannot bring a claim against the Police Department and courts do not recognize an intentional infliction of emotional distress claim under § 1983, amendment of such claims would be futile. *See Cimino v. Glaze*, 228 F.R.D. 169, 172 (W.D.N.Y. 2005); *Johnson v. N.Y.C. Police Dep't*, 651 Fed. Appx. 58, 61 (2d Cir. 2016). As such, leave to amend is appropriately denied. As to the claims against the individual Defendants, leave to amend is unnecessary as the Court is permitting the Fourth Amendment excessive force claim against them to proceed.

Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Katz's Order and Report-Recommendation (Dkt. No. 9) is **ADOPTED in part and REJECTED in part**; and the Court further

**ORDERS** that Plaintiff's complaint against the Syracuse Police Department is **DISMISSED with prejudice and without leave to amend**; and the Court further

**ORDERS** that the Clerk of the Court terminate Syracuse Police Department as a Defendants; and the Court further

**ORDERS** that Plaintiff's claims against the individual Defendants Lamberton Fred, Mackenzie Glynn, Abraham, and DeJospeh survive initial review pursuant to 28 U.S.C. §§ 1915A and 1915(e) and are **PERMITTED TO PROCEED**; and the Court further

**ORDERS** that upon receipt from Plaintiff of the documents required for service of process, the Clerk shall issue summonses and forward them, along with copies of the Complaint, to the United States Marshal for service upon Fred Lamberton, Mackenzie Glynn, Abraham, and DeJospeh, and the Court further

**ORDERS** that a response to the Complaint be filed by the individual Defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure; and the Court further

**ORDERS** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, James T. Foley U.S. Courthouse, Suite 509, 445 Broadway Albany, New York 12207; and the Court further

**ORDERS** that any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel; and the Court further

**ORDERS** that any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket; and the Court further

**ORDERS** that Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action; and the Court further

**ORDERS** that all parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; and the Court further

**ORDERS** that Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; the failure to do so will result in the dismissal of his action; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 4948681

---

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:24-cv-01417-DNH-MJK    Document 13    Filed 01/07/25    Page 71 of 103
York v. City of Johnstown, Not Reported in Fed. Supp. (2022)
2022 WL 2209441

2022 WL 2209441
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Mazell YORK and Michael McDonald, Plaintiffs,
v.
CITY OF JOHNSTOWN, City of Johnstown Police
Department, Blaine Walker, and Jase Kollar, Defendants.

1:20-cv-01616 (MAD/ML)
|
Signed 06/21/2022

**Attorneys and Law Firms**

DANIEL ROMEO SMALLS, ESQ., LAW OFFICE OF
DANIEL R., SMALLS, PLLC, 251 State Street, Suite 202,
Schenectady, New York 12305, Attorneys for Plaintiffs.

THOMAS K. MURPHY, ESQ., MURPHY BURNS LLP,
407 Albany Shaker Road, Loudonville, New York 12211,
Attorneys for Defendants.

**MEMORANDUM-DECISION AND ORDER**

Mae A. D'Agostino, United States District Judge:

**I. INTRODUCTION**

*1 On December 29, 2020, Plaintiffs Mazell York ("Plaintiff
York") and Michael McDonald ("Plaintiff McDonald")
commenced this action pursuant to 42 U.S.C. § 1983
("Section 1983") against Defendants City of Johnstown
(the "City"), City of Johnstown Police Department (the
"Johnstown Police Department"), Police Officer Blaine
Walker ("Officer Walker"), and Police Officer Jase Kollar
("Officer Kollar"). *See* Dkt. No. 1. Plaintiffs' amended
complaint asserts five causes of action under Section 1983:
(1) the unlawful seizure of Plaintiffs in violation of the
Fourth and Fourteenth Amendments against Officer Walker;
(2) intentional infliction of emotional distress against Officer
Walker and Officer Kollar; [1] (3) failure to intervene against
Officer Kollar; (4) malicious prosecution against the City,
Officer Walker, and Officer Kollar; and (5) municipal liability
against the City and the Johnstown Police Department. *See*
Dkt. No. 24 at ¶¶ 44-85.

[1]    Plaintiffs make repeated reference to a Defendant
"Doe" throughout the amended complaint. *See
generally* Dkt. No. 24. The Court believes that
these references are accidental remnants of the
original complaint, which asserted claims against a
"City of Johnstown Police Officer John Doe." *See*
Dkt. No. 1 at ¶ 4. That officer was later identified as
Officer Kollar. *See* Dkt. No. 24 at ¶ 4. Accordingly,
the Court treats all references to Defendant Doe
in the amended complaint as references to Officer
Kollar.

Presently before the Court is Defendants' motion for
summary judgment. *See* Dkt. No. 46. For the following
reasons, Defendants' motion is granted in part and denied in
part.

**II. BACKGROUND**

On December 30, 2019, at approximately 4:13 p.m., Plaintiff
York was sitting in the driver's seat of his car, parked in front
of a residence on Byard Street in the City of Johnstown. *See*
Dkt. No. 46-9 at ¶ 1. Plaintiff York's vehicle had an object—a
"replica water buoy"—hanging from his rearview mirror. *See
id.* at ¶ 14. As Plaintiff York was sitting in his car, Plaintiff
McDonald exited the front door of the Byard Street residence
and began walking towards Plaintiff York's vehicle. *See id.* at
¶ 2. Officer Walker, who was driving down Byard Street in
a marked vehicle, observed Plaintiff McDonald approaching
the vehicle from the Byard Street residence and parked his
police vehicle in a nearby parking lot where he could observe
Plaintiffs. *See id.* at ¶¶ 3, 8. Officer Walker was familiar with
Plaintiff McDonald through his work as a police officer, and
knew that he had prior arrests and convictions for narcotic-
related crimes. *See id.* at ¶ 4. [2]

[2]    Plaintiff McDonald had been convicted of criminal
possession of a controlled substance in 2014 and
criminal possession of marihuana in 2018. *See* Dkt.
No. 46-9 at ¶ 5. Two months after the events of this
action, Plaintiff McDonald was convicted again of
criminal possession of a controlled substance. *See
id.* at ¶ 6.

Plaintiff McDonald returned to the Byard Street residence for
a short period of time, and then reemerged and entered the
front passenger seat of Plaintiff York's vehicle. *See id.* at ¶ 10.
Plaintiff York, with Plaintiff McDonald as a passenger, then

Case 3:24-cv-01417-DNH-MJK    Document 13    Filed 01/07/25    Page 72 of 103

York v. City of Johnstown, Not Reported in Fed. Supp. (2022)

2022 WL 2209441

pulled away from the curb and began traveling westbound on Byard Street. *See id.* at ¶ 11. When Plaintiff York turned onto North Perry Street, Officer Walker initiated a traffic stop and pulled Plaintiffs over. *See* Dkt. No. 47 at 4. During the traffic stop, Officer Walker ordered Plaintiff York out of the vehicle and questioned both Plaintiffs. *See id.* at 5. At some point during the traffic stop, Officer Kollar arrived on the scene to assist Officer Walker. *See* Dkt. No. 46-9 at ¶ 19. Ultimately, Officer Walker issued Plaintiff York a traffic ticket for violating New York Vehicle and Traffic Law ("VTL") § 375(30), and concluded the stop without arresting either Plaintiff. *See* Dkt. No. 46-9 at ¶ 20.

**\*2** VTL § 375(30) makes it

> unlawful for any person to operate a motor vehicle with any object placed or hung in or upon the vehicle ... in such a manner as to obstruct or interfere with the view of the operator through the windshield, or to prevent him from having a clear and full view of the road and condition of traffic behind such vehicle.

The traffic ticket was subsequently dismissed by Johnstown City Court. *See* Dkt. No. 46-10 at 14 n.2.

Defendants now move for summary judgment, arguing that (1) Officer Walker had probable cause for the traffic stop; (2) Plaintiffs fail to allege a claim for malicious prosecution, intentional infliction of emotional distress, and municipal liability; (3) Officer Kollar had no obligation to intervene; and (4) both Officer Walker and Officer Kollar are entitled to qualified immunity. *See* Dkt. No. 46-10. In opposition, Plaintiffs argue that (1) there is a question of fact concerning whether Officer Walker had probable cause for the traffic stop; (2) Plaintiffs have stated a claim for municipal liability; and (3) Officer Walker and Officer Kollar are not entitled to qualified immunity. *See* Dkt. No. 47-2.

### III. DISCUSSION

#### A. Standard of Review

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material

fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court " 'cannot try issues of fact; it can only determine whether there are issues to be tried.' " *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

" 'Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.' " *Jeffreys v. City of New York*, 426 F.3d 549, 553-54 (2d Cir. 2005) (quotation omitted). "However, '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.' " *Id.* (quoting *Anderson*, 477 U.S. at 252). "To defeat summary judgment, therefore, nonmoving parties 'must do more than simply show that there is some metaphysical doubt as to the material facts,' ... and they 'may not rely on conclusory allegations or unsubstantiated speculation.' " *Id.* (quotations omitted).

#### B. Unlawful Seizure / False Arrest

**\*3** "To prevail on a claim of false arrest under New York law, the plaintiff must show that: (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise

Case 3:24-cv-01417-DNH-MJK   Document 13   Filed 01/07/25   Page 73 of 103

York v. City of Johnstown, Not Reported in Fed. Supp. (2022)

2022 WL 2209441

privileged." *Wright v. Musanti*, 887 F.3d 577, 587 (2d Cir. 2018) (citing *Broughton v. New York*, 37 N.Y.2d 451, 456 (1975)). Defendants concede the first three elements of the claim. As to the fourth element, "[a]n arrest of a criminal suspect by a law enforcement officer with probable cause is a 'privileged' confinement even if it is non-consensual." *McKay v. City of New York*, 32 F. Supp. 3d 499, 505 (S.D.N.Y. 2014). Thus, " '[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983.' " *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). "The burden of establishing the absence of probable cause rests on the plaintiff." *Nelson v. Hernandez*, 524 F. Supp. 2d 212, 220 (E.D.N.Y. 2007) (citing *Brown v. City of New York*, 306 F. Supp. 2d 473, 479 (S.D.N.Y. 2004)).

"The Fourth Amendment permits brief investigative stops, including traffic stops, when 'a law enforcement officer has a particularized and objective basis'—also known as a 'reasonable suspicion'—to 'suspect[ ] the particular person stopped of criminal activity.' " *United States v. Churchill*, 792 Fed. Appx. 39, 41 (2d Cir. 2019) (quoting *Navarette v. California*, 572 U.S. 393, 396–97 (2014)). "[R]easonable suspicion of a traffic violation provides a sufficient basis under the Fourth Amendment for law enforcement officers to make a traffic stop." *United States v. Stewart*, 551 F.3d 187, 193 (2d Cir. 2009). "While the reasonable suspicion standard requires 'considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause,' ... it does entail 'some minimal level of objective justification.' " *United States v. Diaz*, 802 F.3d 234, 238-39 (2d Cir. 2015) (quotations omitted); *see also United States v. Patterson*, 25 F.4th 123, 135-36 (2d Cir. 2022).

Here, the Court cannot conclude that Officer Walker had reasonable suspicion to suspect Plaintiff York of violating VTL § 375(30) because there is conflicting testimony on Officer Walker's ability to see the object hanging from the vehicle's rearview mirror prior to the traffic stop. Officer Walker testified that, "[a]s the vehicle approached [his] position" in the Johnstown Area Volunteer Ambulance Corps parking lot, he "observed an orange or red spherical object hanging from the rearview mirror of the vehicle ... which obstructed [Plaintiff York's] view of the roadway." Dkt. No. 46-4 at ¶ 25. Plaintiff York, on the other hand, testified that the distance between the two cars and the light from the vehicles' headlights would have made it impossible for Officer Walker

to see an object hanging from the rearview mirror prior to the traffic stop. Dkt. No. 47-3 at ¶ 13. The Court cannot make a credibility determination or choose between conflicting versions of events on summary judgment. *See Jeffreys*, 426 F.3d at 553-54.

Defendants argue that, in any event, Officer Walker is shielded from liability by the doctrine of qualified immunity. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Tracy v. Freshwater*, 623 F.3d 90, 95-96 (2d Cir. 2010) (quoting *Kelsey v. County of Schoharie*, 567 F.3d 54, 60-61 (2d Cir. 2009)). "Where, as here, qualified immunity is asserted at the summary judgment stage, a court may grant judgment if it is clear—after viewing the facts in the light most favorable to plaintiff—that reasonable law enforcement officers could have disagreed about whether defendants' conduct violated the law." *Ozga v. Elliot*, 150 F. Supp. 3d 178, 189 (D. Conn. 2015) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Rogoz v. City of Hartford*, 796 F.3d 236, 247 (2d Cir. 2015)); *see also Cox v. Village of Pleasantville*, 271 F. Supp. 3d 591, 614 (S.D.N.Y. 2017) ("When analyzing an officer's claim for qualified immunity in the context of an investigatory stop, the Court must examine whether '(a) it was objectively reasonable for the officer[s] to believe reasonable suspicion existed or (b) officers of reasonable competence could disagree on whether the reasonable suspicion test was met' ") (quotation omitted). "For a right to be clearly established, it is not necessary to identify a case directly on point. But precedent must have spoken with sufficient clarity to have placed the constitutional question 'beyond debate' in the particular factual context at issue." *Kerr v. Morrison*, 664 Fed. Appx. 48, 51 (2d Cir. 2016) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

**\*4** Here, the Court holds that Officer Walker is not shielded from liability under the doctrine of qualified immunity. Crediting Plaintiffs' testimony that Officer Walker was unable to see the object hanging from the vehicle's rearview mirror before he pulled Plaintiffs over, the only remaining grounds for suspecting Plaintiffs of criminal activity available to Officer Walker was that he had (1) "personally interacted with [Plaintiff] McDonald on several occasions" and "was aware that he had a history of arrests and convictions for the possession of illegal narcotics"; (2) "observed [Plaintiff] McDonald look up and show a surprised expression upon

Case 3:24-cv-01417-DNH-MJK   Document 13   Filed 01/07/25   Page 74 of 103

York v. City of Johnstown, Not Reported in Fed. Supp. (2022)

2022 WL 2209441

seeing [the] marked police vehicle" which Officer Walker characterized "as his 'jaw dropping' "; and (3) observed Plaintiff McDonald return to the residence before entering and departing in the vehicle. Dkt. No. 46-4 at ¶¶ 20-21, 24. The Court finds that no officer of reasonable competence could disagree about whether the knowledge of a criminal history and observing a "surprised expression" provided objectively reasonable grounds for a suspicion of illegal activity. *See Vasquez v. Maloney*, 990 F.3d 232, 239 (2d Cir. 2021) ("Although it is well settled that police officers may reasonably consider a person's criminal history as part of the total mix of information guiding their reasonable suspicion analysis, it has been equally well settled since at least 1977 that seeing a person with a criminal record in a public place, with nothing more, does not give rise to reasonable suspicion that the person has engaged or is engaging in further criminal activity"); *United States v. Swindle*, 407 F.3d 562, 569 (2d Cir. 2005) ("[T]he officers had merely observed an unidentified black man drive up to the drug house in a Bonneville (a model the police associated with [a wanted drug dealer]), enter the house, leave a short while later and then drive away. This is not enough information on which to reasonably order a person to stop").

Accordingly, Defendants' motion for summary judgment on Plaintiffs' first cause of action for unlawful seizure is denied.

**C. Failure to Intervene**

"It is widely recognized that law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)). To establish a claim of failure to intervene a plaintiff must prove:

> "(1) that a constitutional violation was being committed against the plaintiff; (2) that the officer knew, or deliberately ignored, the fact that the constitutional violation was going to be, or was being, committed; (3) that the defendant had a reasonable opportunity to intervene and prevent the harm; and (4) that the defendant did not take reasonable steps to intervene."

*Butchino v. City of Plattsburg*, No. 8:20-CV-796, 2022 WL 137721, *6 (N.D.N.Y. Jan. 14, 2022) (quotation omitted).

Even assuming that Officer Walker committed a constitutional violation against Plaintiffs and that Officer Kollar had a reasonable opportunity to intervene, no reasonable jury could find under the uncontroverted facts of this case that Officer Kollar knew of, or deliberately ignored, Officer Walker's alleged constitutional violation. Officer Kollar's involvement with the traffic stop underlying this action began *after* Officer Walker pulled over Plaintiffs' vehicle, when he heard over the police radio that Officer Walker had conducted a traffic stop of a vehicle on North Perry Street. *See* Dkt. No. 46-8 at ¶ 8. When Officer Kollar arrived, Officer Walker informed him that he had conducted the traffic stop due to a violation of VTL § 375(30), whereupon Officer Kollar looked into Plaintiffs' vehicle and observed that there was, in fact, an object hanging from the vehicle's rearview mirror. *See id.* at ¶¶ 11-12. Officer Kollar testifies that the hanging object appeared to obstruct a driver's view of the roadway. *See id.* at ¶ 12.[3] In sum, there is no evidence in the record that Officer Kollar had any reason to know or suspect that Officer Walker may have used the object hanging from the mirror as an after-the-fact pretext to justify his traffic stop.

[3]   Although Plaintiffs flatly deny these facts in their response to Defendants statement of material facts, *see* Dkt. No. 47 at 3, they offer no grounds for doing so. *See* Local Rule 56.1(b) ("Each denial shall set forth a specific citation to the record where the factual issue arises"). Nor do Plaintiffs offer any alternative view of Officer Kollar's involvement in the traffic stop in their testimony, *see generally* Dkt. Nos. 46-2, 46-3, 47-3, 47-4; and fail to even address this claim in their memorandum of law, *see generally* Dkt. No. 47-2.

Accordingly, Defendants' motion for summary judgment on Plaintiffs' third cause of action for failure to intervene is granted.

**D. Intentional Infliction of Emotional Distress**

**\*5** As a preliminary matter, "intentional infliction of emotional distress 'is not a cognizable constitutional claim' " under Section 1983. *Scott v. City of Rochester*, No. 17-CV-6311, 2019 WL 4016165, \*4 (W.D.N.Y. Aug. 26, 2019); *see also Slater v. Mackey*, No. 12-CV-04325, 2015 WL 6971379, \*9 (E.D.N.Y. Nov. 10, 2015); *Anderson v. City of New York*, No. 13-CV-1745, 2013 WL 6182675, \*3 (S.D.N.Y. Nov. 19, 2013). Thus, to the extent that Plaintiffs intend to assert this claim under Section 1983[4] against Officers Walker and Kollar, the claim must be dismissed.

Case 3:24-cv-01417-DNH-MJK   Document 13   Filed 01/07/25   Page 75 of 103

York v. City of Johnstown, Not Reported in Fed. Supp. (2022)

2022 WL 2209441

4      The amended complaint places "42 U.S.C. § 1983" immediately before Plaintiffs' cause of action for intentional infliction of emotional distress, but does not otherwise state the intended grounds for this claim. *See* Dkt. No. 24 at ¶¶ 48-55. Plaintiffs' opposition to this motion does not directly address this claim. *See generally* Dkt. No. 47-2.

It is possible that Plaintiffs intend to assert this claim under state law. "[U]nder New York law, an intentional infliction tort may 'be invoked only as a last resort,' ... 'to provide relief in those circumstances where traditional theories of recovery do not.' " *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) (quotations omitted). Thus, "[c]laims for intentional infliction of emotional distress must be dismissed where ... the conduct underlying the claim may be redressed by way of traditional tort remedies such as battery, false arrest, and malicious prosecution." *Kirk v. Metro. Transp. Auth.*, No. 99-CIV-3787, 2001 WL 258605, *8 (S.D.N.Y. Mar. 14, 2001) (citations omitted); *see also Salmon*, 802 F.3d at 256 ("[T]he New York Court of Appeals has questioned whether an intentional infliction claim can ever be brought where the challenged conduct 'falls well within the ambit of other traditional tort liability.' All four Appellate Division courts have answered the question and held that it cannot") (quotation omitted); *Dayes v. Watertown City Sch. Dist.*, No. 5:20-CV-964, 2021 WL 4407385, *10 (N.D.N.Y. Sept. 27, 2021). Because the allegations underlying Plaintiffs' intentional infliction of emotional distress claim are the same as those supporting their false arrest claim, this cause of action must be dismissed under state law.

Accordingly, Defendants' motion for summary judgment on Plaintiffs' second cause of action for intentional infliction of emotional distress is granted.

**E. Malicious Prosecution**

"To prevail on a § 1983 claim for malicious prosecution, 'a plaintiff must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law.' " *Azeez v. City of New York*, 790 Fed. Appx. 270, 274 (2d Cir. 2019) (quoting *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010)). To establish a malicious prosecution claim under New York law, a plaintiff must prove " '(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of

probable cause for the criminal proceeding and (4) actual malice.' " *Kee v. City of New York*, 12 F.4th 150, 161-62 (2d Cir. 2021) (quoting *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 195 (2000)). "For a malicious prosecution claim under Section 1983, a plaintiff also must demonstrate a 'sufficient post-arraignment liberty restraint.' " *Id.* at 162 (quotation omitted).

**\*6**  Plaintiffs have, at a minimum, failed to satisfy the first and third elements of their claim. Initially, Plaintiff York [5] cannot show that a criminal prosecution was commenced against him because "traffic infractions are not a crime." *Azeez*, 790 Fed. Appx. at 274 (citing VTL § 155 ("A traffic infraction is not a crime")). Even assuming that traffic infractions could constitute a criminal prosecution against Plaintiff York, Officer Walker had probable cause to issue Plaintiff York a traffic ticket for violating VTL § 375(30). [6] " 'Probable cause exists when 'the facts and circumstances within ... the [police] officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a [person] of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.' " *Meyers v. City of New York*, 812 Fed. Appx. 11, 14 (2d Cir. 2020) (quotation omitted). Plaintiff York acknowledges that he had an object hanging from his rearview mirror at the time of the traffic stop and that Officer Walker observed it before he issued the traffic ticket. *See* Dkt. No. 47 at 5. Officer Walker's contemporaneous belief that this object obstructed Plaintiff York's view is sufficient for the purposes of probable cause; an officer need not conclusively prove a violation of VTL § 375(30) before he issues a traffic ticket.

5      To the extent that Plaintiffs seek to allege a malicious prosecution claim on behalf of Plaintiff McDonald, that claim must be dismissed. The traffic ticket forming the basis of the malicious prosecution claim was only issued against Plaintiff York.

6      The Court notes that whether Officer Walker had probable cause to issue Plaintiff York a traffic ticket is a separate issue from whether Officer Walker had probable cause to believe a criminal activity had occurred when he pulled over Plaintiffs' vehicle.

Accordingly, Defendants' motion for summary judgment on Plaintiffs' fourth cause of action for malicious prosecution is granted.

Case 3:24-cv-01417-DNH-MJK   Document 13   Filed 01/07/25   Page 76 of 103

York v. City of Johnstown, Not Reported in Fed. Supp. (2022)

2022 WL 2209441

## F. Municipal Liability

"[A] municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see also Matusick v. Erie County Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a respondeat superior basis for the tort of its employee." *Jones*, 691 F.3d at 80; *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011) (holding that under Section 1983 governmental bodies are not vicariously liable for their employees' actions); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Thus, "to demonstrate *Monell* liability, a plaintiff must allege a violation of constitutional rights by employees of the municipality and '(1) the existence of a municipal policy or custom ... that caused his injuries beyond merely employing the misbehaving officer[s]; and (2) a causal connection—an affirmative link—between the policy and the deprivation of his constitutional rights.' " *Lapoint v. Vasiloff*, No. 1:15-CV-185, 2016 WL 951566, *6 (N.D.N.Y. Mar. 9, 2016) (quoting *Harper v. City of New York*, 424 Fed. Appx. 36, 38 (2d Cir. 2011)). "Municipal liability can be established in a case such as this in several different ways, including through proof of an officially adopted rule or widespread, informal custom demonstrating 'a deliberate government policy or failing to train or supervise its officers.' " *Bruker v. City of New York*, 337 F. Supp. 2d 539, 556 (S.D.N.Y. 2004) (quoting *Anthony v. City of New York*, 339 F.3d 129, 140 (2d Cir. 2003)).

To state a claim for municipal liability under Section 1983, a plaintiff must allege more than that a municipal policy or custom exists. *See Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (" '[T]he mere assertion ... that a municipality has such a custom or policy is insufficient [to withstand dismissal] in the absence of allegations of fact tending to support, at least circumstantially, such an inference' ") (quotation omitted); *see also Zherka v. City of New York*, 459 Fed. Appx. 10, 12 (2d Cir. 2012). "Rather, a plaintiff must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) (citation omitted); *see also Triano v. Town of Harrison, N.Y.*, 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012).

**\*7** The Court holds that Plaintiffs have not stated a claim for municipal liability under Section 1983. Plaintiffs' claim

appears to be premised on two theories: First, that the Defendant Officers were acting pursuant to an expressly adopted official policy of the Johnstown Police Department, *see* Dkt. No. 24 at ¶ 75; and second, that the Johnstown Police Department has a longstanding and widespread practice or custom of, among other things, utilizing pretextual traffic stops on minorities. *See id.* at ¶ 76. However, Plaintiffs have not identified or provided any official policy of the Johnstown Police Department, let alone one that permits or encourages officers to conduct pretextual traffic stops on minorities. [7] Furthermore, Plaintiffs do not identify any examples of unconstitutional traffic stops by Johnstown Police Department other than (1) the traffic stop that underlies their claim, and (2) a single prior traffic stop between Plaintiff McDonald and Officer Walker. *See* Dkt. No. 46-3 at 34-36. "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (plurality opinion); *see also Floyd v. Rosen*, No. 21-CV-1668, 2022 WL 1451405, *9 (S.D.N.Y. May 9, 2022) ("Normally, 'a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]' ") (quotation omitted); *Murphy v. City of Elmira*, No. 6:18-CV-06572, 2020 WL 709610, *3 (W.D.N.Y. Feb. 12, 2020) (holding that a plaintiff's allegations that focused "solely on his own experiences" were "plainly insufficient under *Monell*").

[7]    It appears that Plaintiffs' counsel has "serve[d] no discovery demands and conducted no depositions." Dkt. No. 46-10 at 20.

Accordingly, Defendants' motion for summary judgment on Plaintiffs' fifth cause of action for municipal liability is granted.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment (Dkt. No. 46) is **GRANTED in part** and **DENIED in part**; [8] and the Court further

York v. City of Johnstown, Not Reported in Fed. Supp. (2022)

2022 WL 2209441

Case 3:24-cv-01417-DNH-MJK    Document 13    Filed 01/07/25    Page 77 of 103

8      As a result of this Memorandum-Decision and Order, Plaintiffs' only remaining claim is their first cause of action for unlawful seizure against Officer Walker.

**ORDERS** that Defendants **City of Johnstown, City of Johnstown Police Department**, and **Police Officer Jase Kollar** are **DISMISSED** from this action; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2022 WL 2209441

---

**End of Document**                          © 2025 Thomson Reuters. No claim to original U.S. Government Works.



**User Name:** Chaim Jaffe
**Date and Time:** Tuesday, January 7, 2025 10:04:00□AM EST
**Job Number:** 242132951

## Documents (2)

1. _Forbes v. Chakravorty, 2015 U.S. Dist. LEXIS 114967_
   **Client/Matter:** -None-
   **Search Terms:**
   **Search Type:**
2. _McNair v. Ponte, 2018 U.S. Dist. LEXIS 29792_
   **Client/Matter:** -None-
   **Search Terms:**
   **Search Type:**



Cited
As of: January 7, 2025 3:04 PM Z

## *Forbes v. Chakravorty*

United States District Court for the Southern District of New York

August 18, 2015, Decided; August 19, 2015, Filed

13 Civ. 8776 (LAP)

**Reporter**

2015 U.S. Dist. LEXIS 114967 *

ROGER FORBES, Plaintiff, -against- DR. HAROLD CHAKRAVORTY, et al., Defendants.

## LexisNexis® Headnotes

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

### *HN1*[⬇] **Motions to Dismiss, Failure to State Claim**

*Fed. R. Civ. P. 12(b)(6)* permits courts to dismiss a complaint for failure to state a claim upon which relief can be granted upon a motion by the defendant. *Fed. R. Civ. P. 12 (b)(6)*. In considering such a motion, courts must accept all non-conclusory factual allegations as true and draw all reasonable inferences in the plaintiff's favor. A complaint will only survive a motion to dismiss, however, if it contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. This plausibility standard asks for more than a sheer possibility that a defendant has acted unlawfully and requires a context-specific consideration of the complaint's factual allegations based upon the court's judicial experience and common sense. In this analysis, complaints that merely offer labels and conclusions, naked assertions devoid of further factual enhancement, or a formulaic recitation of the elements of a cause of action will not survive.

Civil Procedure > Parties > Pro Se Litigants > Pleading Standards

### *HN2*[⬇] **Pro Se Litigants, Pleading Standards**

Where a plaintiff is proceeding pro se, the court must construe his submissions liberally, to raise the strongest arguments that they suggest.

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

### *HN3*[⬇] **Motions to Dismiss, Failure to State Claim**

When deciding a motion to dismiss for failure to state a claim, courts may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit.

Civil Rights Law > ... > Prisoner Rights > Prison Litigation Reform Act > Exhaustion of Administrative Remedies

### *HN4*[⬇] **Prison Litigation Reform Act, Exhaustion of Administrative Remedies**

See *42 U.S.C.S. § 1997e(a)*.

Civil Rights Law > ... > Prisoner
Rights > Prison Litigation Reform
Act > Exhaustion of Administrative Remedies

*HN5*[⬇]    **Prison Litigation Reform Act,
Exhaustion of Administrative Remedies**

As a result of *42 U.S.C.S. § 1997e(a)*, prisoners
must exhaust administrative remedies even where
the relief sought — monetary damages — cannot
be granted by the administrative process. Moreover,
for a prisoner to exhaust his remedies under the
statute, he must do so properly. Proper exhaustion
in this context requires compliance with an
agency's deadlines and other critical procedural
rules.

Civil Rights Law > Protection of
Rights > Prisoner Rights > Medical Treatment

Constitutional Law > Bill of
Rights > Fundamental Rights > Cruel &
Unusual Punishment

*HN6*[⬇]  **Prisoner Rights, Medical Treatment**

Once a plaintiff has met the Prison Litigation
Reform Act exhaustion requirement, his complaint
must plausibly allege both that he was deprived of a
right secured by the U.S. Constitution and its laws
and that each defendant was personally involved in
the constitutional deprivations alleged. Because a
plaintiff's claim alleging denial of adequate medical
treatment while incarcerated is governed by the
*Eighth Amendment*, he must plausibly allege that
the defendants acted with deliberate indifference to
his serious medical needs.

Civil Rights Law > Protection of
Rights > Prisoner Rights > Medical Treatment

Constitutional Law > Bill of
Rights > Fundamental Rights > Cruel &
Unusual Punishment

*HN7*[⬇]  **Prisoner Rights, Medical Treatment**

An objective component requires a court to
contemplate both: (1) whether the prisoner was
actually deprived of adequate medical care; and (2)
whether the prisoner's medical condition was
sufficiently serious. Thus, prison officials who act
reasonably in response to an inmate-health risk
cannot be found liable under the *Cruel and Unusual
Punishment Clause*, and conversely, failing to take
reasonable measures in response to a medical
condition can lead to liability. As to the latter, only
deprivations denying the minimal civilized measure
of life's necessities are sufficiently grave to form
the basis of an *Eighth Amendment* violation. In
determining objective seriousness, courts have
looked to certain factors including whether a
reasonable doctor or patient would find it important
and worthy of comment, whether the condition
significantly affects an individual's daily activities,
and whether it causes chronic and substantial pain.

Civil Rights Law > Protection of
Rights > Prisoner Rights > Medical Treatment

Constitutional Law > Bill of
Rights > Fundamental Rights > Cruel &
Unusual Punishment

*HN8*[⬇]  **Prisoner Rights, Medical Treatment**

A requirement for an *Eighth Amendment* violation
of a prisoner's right to medical treatment is
subjective and contemplates whether the defendants
acted with a sufficiently culpable state of mind.
Akin to the subjective standard of recklessness as
used in the criminal law, the requisite mental state
is more blameworthy than negligence but less than
acts or omissions for the very purpose of causing
harm or with knowledge that harm will result. The
correct balance thus turns on whether a prison
official acted or failed to act with knowledge of a
substantial risk of serious harm.

Civil Rights Law > Protection of
Rights > Prisoner Rights

Constitutional Law > Bill of
Rights > Fundamental Rights > Cruel &
Unusual Punishment

Civil Rights Law > Protection of
Rights > Immunity From
Liability > Respondeat Superior Distinguished

*HN9*[🔻]  **Protection of Rights, Prisoner Rights**

Even if a plaintiff plausibly alleges the requisite
elements of an Eight Amendment claim, he must
further allege that each defendant was personally
involved in the constitutional violation. A plaintiff
may demonstrate a defendant's personal
involvement by alleging sufficient facts to raise the
inference that: (1) the defendant participated
directly in the constitutional violation; (2) the
defendant, after being informed of the violation
through a report or appeal, failed to remedy the
wrong; (3) the defendant created a policy or custom
under which unconstitutional practices occurred, or
allowed the continuance of such a policy of custom;
(4) the defendant was grossly negligent in
supervising subordinates who committed the
wrongful acts; or (5) the defendant exhibited
deliberate indifference to the rights of inmates by
failing to act on information indicating that
unconstitutional acts were occurring. A blanket
assertion of supervisory liability under a theory of
respondeat superior, however, will not suffice.

Civil Rights Law > Protection of
Rights > Prisoner Rights > Medical Treatment

Constitutional Law > Bill of
Rights > Fundamental Rights > Cruel &
Unusual Punishment

*HN10*[🔻]  **Prisoner Rights, Medical Treatment**

Physicians who treat prison are given broad
discretion to determine what method of care and
treatment to provide their patients, and a
disagreement between physician and patient as to
the appropriate course of treatment does not rise to
the level of cruel and unusual punishment.

Civil Rights Law > Protection of
Rights > Prisoner Rights > Medical Treatment

Constitutional Law > Bill of
Rights > Fundamental Rights > Cruel &
Unusual Punishment

*HN11*[🔻]  **Prisoner Rights, Medical Treatment**

The mere fact that physicians may have made a
different medical decision with respect to a prison
inmate's treatment than that purportedly
recommend by hospital staff does not indicate that
they acted for culpable reasons. The *Eighth
Amendment* does not require the defendants to
follow the recommendation of another physician;
so long as the defendants did not know of and
disregard an excessive risk to inmate health or
safety, they are not sufficiently culpable to
transform even negligent treatment into cruel and
unusual punishment.

Civil Rights Law > Protection of
Rights > Prisoner Rights

Governments > State & Territorial
Governments > Claims By & Against

*HN12*[🔻]  **Protection of Rights, Prisoner Rights**

New York law prohibits prisoners from filing civil
actions against any officer or employee of the
Department of Correctional Services, in his
personal capacity, for damages arising out of any
act done or the failure to perform any act within the
scope of employment and in the discharge of the
duties by such officer or employee. *N.Y. Correct.*

*Law § 24(1)* Rather, any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of the Department of Correctional Services shall be brought and maintained in the court of claims as a claim against the state. *§ 24(2).*

**Counsel:** **[*1]** For Roger Forbes, Plaintiff: Neil Shevlin, New York State Office of the Attorney General, New York, NY.

For Harold Chakravorty, P.C.P., Medical Director Frederick Bernstein, Aaron Roth, Defendants: Neil Shevlin, LEAD ATTORNEY, New York State Office of the Attorney General, New York, NY.

**Judges:** LORETTA A. PRESKA, Chief United States District Judge.

**Opinion by:** LORETTA A. PRESKA

# Opinion

MEMORANDUM & ORDER

LORETTA A. PRESKA, U.S.D.J.:

Plaintiff has filed a pro se complaint alleging *Eighth Amendment* violations pursuant to *42 U.S.C. § 1983*, violation of a federal consent decree, and certain state law claims against Defendants Dr. Harold Chakravorty, Dr. Federick Bernstein, and Dr. Aaron Roth for their allegedly deficient treatment of and deliberate indifference to Plaintiff's medical condition while he was incarcerated. Defendants subsequently filed a motion to dismiss pursuant to *Rule 12(b)(6) of the Federal Rules of Civil Procedure*. For the reasons below, Defendants' motion is granted in its entirety.

I. BACKGROUND

The Complaint [dkt. no. 2] raises the following well-pleaded factual allegations, which the Court takes as true for purposes of the present motion. See *Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir.*

*2008).* Plaintiff is currently and at all relevant times has been an inmate in the custody of New York State at the Green Haven Correctional Facility **[*2]** ("Green Haven") In March 2011, Dr. Chakravorty, Plaintiff's primary care provider at the Green Haven clinic, and Dr. Bernstein, medical director at the clinic, referred Plaintiff to Dr. Roth at Mount Vernon Hospital for hemorrhoid surgery. (Compl. dated Dec. 10, 2013 [ dkt. no. 2] at 2. ) Following the surgery, Dr. Roth informed Plaintiff that it would take "about six month[s]" for him to fully recover. (Id. at 3.) That same day, Plaintiff returned to the Green Haven infirmary where he stayed for about a month following surgery. (Id.) While there, Plaintiff experienced extreme discomfort from an inability to urinate and stomach pain. (Id.) For the urinary problem, Green Haven medical staff treated Plaintiff by inserting a catheter to relieve his bladder. (Id.) For the stomach pain, Plaintiff was given hemorrhoidal ointment and a laxative. (Id.) When Plaintiff's complaints of stomach pain continued, he was sent back to Mount Vernon Hospital for a CT-Scan and H-Pylori test. (Id.) Both tests yielded negative results, but Plaintiff continued to experience severe pain. (Id.) Plaintiff attributes these stomach pains to an infection allegedly caused by Dr. Roth and Dr. Chakravorty, neither of whom prescribed **[*3]** antibiotics following his 2011 surgery. (Id. at 7.)

Plaintiff alleges that he continued to complain of stomach and rectal pain for more than a year - though the Complaint does not indicate to whom or how frequently these grievances were made - until he was sent back to Dr. Roth in January of 2013. (See id. at 3, 7.) After evaluating Plaintiff's rectum, Dr. Roth concluded that a second "minor procedure" was needed to "fix something" from the first surgery. (Id. at 7.) On February 27, 2013, Dr. Roth performed this second operation on Plaintiff, who again was discharged on the same day and returned to the Green Haven facility to recover. (Id.) While in the infirmary, Plaintiff asked Dr. Chakravorty "if he [would] prescribe [an] antibiotic to help with the healing." (Id.) Dr. Chakravorty replied by telling Plaintiff that an antibiotic was

unnecessary at that time. (Id.)

Nearly four months later on June 17, 2013, Plaintiff developed a "nasty internal infection." (Id.) In response, he went to the Green Haven clinic on each of the next three days and was given hemorrhoidal ointment by the staff there. (Id.) By July 1, however, Plaintiff "could hardly walk because of agonizing pain" caused by the infection and a "fistula" **[\*4]** that had developed next to his rectum. (Id. at 8.) Again, Plaintiff visited the Green Haven clinic, where he was seen by a physician named Dr. Golden, who examined Plaintiff before stating that he could not see a fistula and declining to provide any additional treatment. (Id. at 12.) On July 5, a physician's assistant at the clinic evaluated Plaintiff and sent him to the Emergency Room at Putnam County Hospital. (Id. at 8.) The Hospital staff, however, refused to treat Plaintiff and instead sent a recommendation to the Green Haven clinic to drain the fistula and prescribe an antibiotic. (Id.) That same day, the clinic gave Plaintiff an antibiotic but did not drain the fistula. (Id.) On July 8, Plaintiff was given a seven day course of antibiotics, and he subsequently saw physicians on July 9, July 12, July 15, and July 26 for consultations regarding his infection. On September 20, Plaintiff received another seven-day course of antibiotics, and on October 25, 2013, Plaintiff received additional surgery. (Id.)

On July 5, 2013, Plaintiff filed his first grievance complaining about the foregoing events with the Inmate Grievance Resolution Committee ("IGRC"), which he subsequently amended on September 5, 2013, in **[\*5]** accordance with a three-tiered Inmate Grievance Program ("IGP"). (Id. at 4.) He later effectively exhausted the appeals process of this Program. (Id.; Decl. of Neil Shevlin, dated Oct. 1, 2014, [dkt. no. 19] ("Shevlin Decl."), Ex. A.)

On December 10, 2013, Plaintiff filed the instant action raising claims against Defendants under *§ 1983* for violating his *Eighth Amendment* right to be free from cruel and unusual punishment. In addition, the Complaint may be read to raise claims

for violation of the Consent Decree in Milburn v. Coughlin, No. 79 Civ. 5077 (LAP), as well as state law claims for negligence and medical malpractice. Defendants subsequently filed a motion to dismiss for failure to state a claim pursuant to *Federal Rule of Civil Procedure 12(b)(6)*.

## II. STANDARD OF REVIEW

*HN1*[⬆] *Rule 12(b)(6)* permits courts to dismiss a complaint for "failure to state a claim upon which relief can be granted" upon a motion by the defendant. *Fed. R. Civ. P. 12 (b)(6)* In considering such a motion, courts must accept all non-conclusory factual allegations as true and draw "all reasonable inferences in the plaintiff's favor." *Goldstein, 516 F.3d at 56* (quoting *Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002))* (internal quotation mark omitted); *Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009)*. A complaint will only survive a motion to dismiss, however, if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim **[\*6]** to relief that is plausible on its face.'" *Id. at 1949* (quoting *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))*. This "plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully" and requires a "context-specific" consideration of the complaint's factual allegations based upon the court's "judicial experience and common sense." *Id. at 1949-50*. In this analysis, complaints that merely offer "labels and conclusions," "naked assertion[s]" devoid of "further factual enhancement," or "a formulaic recitation of the elements of a cause of action will not" survive. *Twombly, 550 U.S. at 555, 557*. *HN2*[⬆] Additionally, because Plaintiff is proceeding pro se, the Court must construe his submissions "liberally, 'to raise the strongest arguments that they suggest.'" *Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009)* (quoting *Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001))*.

*HN3*[⬆] When deciding a motion to dismiss, courts "may consider any written instrument

attached to the complaint, statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Comms., Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007)*. Here, Plaintiff attached excerpts from his grievance to the IRGC to his Complaint and referenced the outcome of that grievance in his pleading. (See Compl. at 3-5, 12-15.) Defendants subsequently provided a complete **[*7]** copy of Plaintiff's grievance record with their motion to dismiss (see Shevlin Decl., Ex. A), and the Court shall consider this submission as both "incorporated into the complaint by reference" and a document "possessed by or known to the plaintiff" and relied upon in pleading the exhaustion requirements of his federal claims. *ATSI Comms., Inc., 493 F.3d at 98*. With this standard of review in mind, the Court turns to evaluate each of Plaintiff's claims.

## III. DISCUSSION

### A. Eight Amendment Claims

### 1. Applicable Law

As a threshold matter, in order to survive Defendants' motion, Plaintiff's *§ 1983* claim must satisfy the exhaustion requirements set out by Congress in the Prison Litigation Reform Act ("PLRA"). In particular, the PLRA mandates that *HN4*[⬆] "[n]o action shall be brought with respect to prison conditions under *section 1983* of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *42 U.S.C. § 1997e(a)*. *HN5*[⬆] As a result of this legislation, "prisoners must now exhaust administrative remedies even where the relief sought — monetary damages — cannot be granted by the administrative process." *Woodford v. Ngo, 548 U.S. 81, 86, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006)* (citing *Booth v. Churner, 532 U.S. 731, 739, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001))*. Moreover, for a prisoner to exhaust his remedies under the statute, **[*8]** he must do so

"properly." *Id. at 101*. "[P]roper exhaustion" in this context requires "compliance with an agency's deadlines and other critical procedural rules." *Id. at 90*. Accordingly, if Plaintiff has failed to comply with New York's deadlines and procedural rules for administrative remedies with respect to his *Eighth Amendment* claims, those claims must be dismissed for failure to satisfy the PLRA.

*HN6*[⬆] Once Plaintiff has met the PLRA exhaustion requirement, his Complaint must plausibly allege both that he was "depriv[ed] of a right secured by the Constitution and its laws" and that each defendant was "personally involved" in the constitutional deprivations alleged. *Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986)* (quoting *Rizzo v. Goode, 423 U.S. 362, 370-71, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976))* (internal quotation mark omitted). Because Plaintiff's claim alleging denial of adequate medical treatment while incarcerated is governed by the *Eighth Amendment*, he must plausibly allege that Defendants acted with "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)*. Such a showing is two-fold and consists of both objective and subjective elements.

*HN7*[⬆] The objective component requires the Court to contemplate both (1) "whether the prisoner was actually deprived of adequate medical care"; and (2) whether the prisoner's medical condition was "sufficiently serious." *Salahuddin v. Goord, 467 F.3d 263, 279-280 (2d Cir. 2006)*. With respect **[*9]** to the former, a "prison official's duty is only to provide reasonable care. *Id. at 280*. "Thus, 'prison officials who act reasonably [in response to an inmate-health risk] cannot be found liable under the *Cruel and Unusual Punishment Clause*,' and conversely, failing 'to take reasonable measures' in response to a medical condition can lead to liability." Id. (alterations in original) (citations omitted) (quoting *Farmer v. Brennan, 511 U.S. 825, 845, 847, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994))*. As to the latter, only "deprivations denying 'the minimal civilized measure of life's

necessities' are sufficiently grave to form the basis of an *Eighth Amendment* violation." *Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)* (citation omitted) (quoting *Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981)).* In determining objective seriousness, courts have looked to certain factors including "whether a 'reasonable doctor or patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'" *Salahuddin, 467 F.3d at 280* (alteration in original) (quoting *Chance v. Armstrong, 143 F.3d. 698, 702 (2d Cir. 1998)).*

*HN8*[↑] The second requirement for an *Eighth Amendment* violation is subjective and contemplates whether Defendants acted with a "'sufficiently culpable state of mind.'" *Farmer, 511 U.S. at 834* (quoting *Wilson, 501 U.S. at 297*). Akin to the "subjective" standard of "recklessness as used in the criminal law," the requisite mental state is "more blameworthy **[\*10]** than negligence" but "less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id. at 835, 839.* The correct balance thus turns on whether a prison official acted or failed to act with "knowledge of a substantial risk of serious harm *Id. at 842*.

*HN9*[↑] Finally, even if Plaintiff plausibly alleges the requisite elements of an *Eight Amendment* claim, he must further allege that each defendant was personally involved in the constitutional violation. A plaintiff may demonstrate a defendant's personal involvement by alleging sufficient facts to raise the inference that: "(1) the defendant participated directly in the constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy of custom, (4) the defendant was grossly negligent in supervising subordinates who

committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. *Colon v. Coughlin, 58 F.3d 865, 873 (2d. Cir. 1995).*[1] A blanket assertion **[\*11]** of supervisory liability under a theory of respondeat superior, however, will not suffice. See *Lloyd v. City of New York, 43 F. Supp. 3d 254, 266 (S.D.N.Y. 2014)*

2. PLRA Exhaustion

The Complaint sets out three separate instances in which Defendants allegedly provided unconstitutionally inadequate medical care. The first occurred in 2011 when neither Dr. Roth nor Dr. Chakravorty prescribed an antibiotic after Plaintiff's first surgery. (Compl. at 7.) The second occurred in February 2013 when again neither **[\*12]** doctor prescribed an antibiotic after Plaintiff's second surgery. (Id.) The third occurred in summer 2013 when Defendants allegedly delayed in providing Plaintiff with antibiotics and a third surgical procedure. (Id. at 7-8.) Although the Complaint makes vague references to continued reports of severe pain between 2011 and February 2013, Plaintiff makes no allegations of continued pain or inadequate medical treatment between February 2013 and June 2013. (See id. at 3, 4, 7.) Accordingly, even if the period between 2011 and February 2013 were interpreted as a single continuous course of conduct — which itself is a stretch even when drawing all inferences in

_____

[1] Without ruling specifically on the matter, the Court of Appeals has acknowledged that the Supreme Court in *Iqbal, 129 S. Ct. 1957*, "may have heightened the requirements for [pleading] a supervisor's personal involvement with respect to certain constitutional violations," thus superseding the *Colon* categories. See *Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013).* District Courts in this Circuit remain divided on whether some of the Colon factors may no longer give (cont'd on next page) (cont'd from previous page) rise to liability in light of Iqbal. See *Hollins v. City of New York, 10 Civ. 1650, 2014 U.S. Dist. LEXIS 183076, 2014 WL 836950, at \*13 (S.D.N.Y. Mar. 3, 2014)* (collecting cases). As noted below, however, even if the *Colon* factors all remain in effect, Plaintiff has failed to allege that Drs. Bernstein and Roth had sufficient personal involvement with respect to his exhausted claims to satisfy even that more forgiving standard.

2015 U.S. Dist. LEXIS 114967, *12

Plaintiff's favor - that conduct ceased in February 2013 and constitutes a distinct occurrence from Plaintiff's complaints regarding his treatment in the summer of 2013.

Because New York's IGP requires an inmate to file a grievance within twenty-one days of an "alleged occurrence," in order to exhaust his first two categories of claims properly under the PLRA, Plaintiff was required at the very least to file a grievance within twenty-one days of Dr. Chakravorty's refusal to prescribe antibiotics in February 2013. 7 N.Y.C.R.R. § 701.5(a). As Plaintiff did not file his first grievance [*13] until July 5, 2013, he missed this deadline by a wide margin and evidently failed to exhaust any of his claims that arose prior to the onset of his most recent infection in June 2013. (See Compl. at 3.) This conclusion is consistent with the Green Haven Grievance Committee's own findings, which determined that Plaintiff's grievances concerning events in 2011 and February 2013 were untimely and accordingly declined to consider them. (See Shevlin Decl., Ex. A at FORBES GRV. 1.) Thus, Plaintiff has only properly exhausted his claim concerning his June 2013 infection. To the extent Plaintiff's Eighth Amendment claims arise from conduct prior to June 2013, they must be dismissed for failure to exhaust properly pursuant to the PLRA. See Woodford, 548 U.S. at 93.

3. Remaining Eighth Amendment Claim

Although Plaintiff properly exhausted his claim concerning his June 2013 infection under the PLRA, the Court nevertheless concludes that this remaining claim must be dismissed because the allegations in the Complaint - even taken as true and drawing all inferences in Plaintiff's favor - fail to state a plausible Eighth Amendment cause of action. In first examining whether the Complaint plausibly alleges facts that satisfy the objective prong of an Eighth Amendment claim, it is immediately [*14] apparent that Plaintiff suffered a "sufficiently serious" medical condition. Salahuddin, 467 F.3d at 280. The Complaint

alleges that Plaintiff experienced a severe infection, (see Compl. at 7-8.), which certainly disrupted his "daily activities," caused him "chronic and substantial pain," and motivated medical professionals to send him to the emergency room and prescribe medication. Salahuddin, 467 F.3d at 280 (quoting Chance, 143 F.3d. at 702) (internal quotation marks omitted).

However, Plaintiff has not plausibly alleged that he "was actually deprived of adequate medical care." Id. at 279. According to the Complaint, following the onset of his infection on July 17, Plaintiff received hemorrhoid cream, then received multiple courses of antibiotics, and was seen repeatedly by physicians throughout the summer. (Compl. at 7-8.) The grievance record also reflects additional dates when Plaintiff met with physicians that summer and fall for treatment. (See Shevlin Decl., Ex. A at FORBES GRV. 10-20, 40, 43.) When those earlier approaches did not fully heal Plaintiff, he received a third surgical procedure in October. (Compl. at 8.) This degree of attention and medical care is a far cry from the deprivation of adequate care necessary to sustain a claim for cruel and unusual [*15] punishment. See Salahuddin, 467 F.3d at 279-80. Although Plaintiff's submissions could be interpreted to argue that antibiotics alone were inadequate without simultaneously draining his fistula through a surgical procedure, it is a stretch to conclude that the only constitutionally adequate treatment for an infection must involve both antibiotics and immediate surgery. See id. at 279 ("As the Supreme Court has noted, the prison official's duty is only to provide reasonable care." (citing Farmer, 511 U.S. at 844-47)).

Even if Plaintiff satisfied the objective prong of an Eighth Amendment claim, however, the Complaint nevertheless fails to allege plausibly that any of the defendants had a "'sufficiently culpable state of mind'" to satisfy the subjective prong. Farmer, 511 U.S. at 834 (quoting Wilson, 501 U.S. at 297) Given the hemorrhoid cream, multiple courses of antibiotics, and repeated follow-up examinations that Plaintiff received between June 17, 2013 and

2015 U.S. Dist. LEXIS 114967, *15

his third surgery in October 2013, the Court cannot conclude - even viewing the Complaint and Plaintiff's submissions in the requisite charitable light - that any of the defendants acted or failed to act with "knowledge of a substantial risk of serious harm." *Id. at 842*. Rather, the Complaint reflects essentially a disagreement between Plaintiff and Dr. Chakravorty **[*16]** concerning how long Plaintiff's infection should be treated with antibiotics alone before resorting to a third surgical procedure. Nothing in the Complaint suggests that any defendant was or should have been aware "of a substantial risk" that antibiotics alone would harm Plaintiff. *Salahuddin, 467 F.3d at 280*. At most, the decision to keep Plaintiff on antibiotics for an extended period before attempting surgery would constitute negligence or medical malpractice, neither of which reaches the deliberate indifference required to state an *Eighth Amendment* claim. *Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996)*; *Estelle, 429 U.S. at 106-107*.

*HN10*[↑] Physicians who treat inmates are given "broad discretion to determine what method of care and treatment to provide their patients," and a disagreement between physician and patient as to the appropriate course of treatment does not rise to the level of cruel and unusual punishment. *Revenell v. Van Der Steeg, No. 05 Civ. 4042, 2007 U.S. Dist. LEXIS 17868, 2007 WL 765716, at *6 (S.D.N.Y. Mar. 14, 2007)*; see also *Harris v. Westchester County Med. Ctr., No. 08 Civ. 1128, 2011 U.S. Dist. LEXIS 72566, 2011 WL 2637429, at *3 (S.D.N.Y. July 6, 2011)* ("[T]he case law is clear that plaintiff's mere disagreement with the medical judgment of the prison's medical staff, even if it amounts to negligence on the staff's part, does not amount to a constitutional violation."); *Martinez v. Sundaram Ravikumar, 616 F. Supp. 2d 455, 459 (S.D.N.Y. 2009)* ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment is **[*17]** adequate, the fact that a prisoner might prefer a different treatment does not give rise to an *Eighth Amendment* violation." (quoting *Chance, 143 F.3d at 703*) (internal quotation marks

omitted)). As such, the decision not to drain Plaintiff's fistula earlier than October 2013, even if negligent, falls within the discretion of prison medical staff, and Plaintiff's disagreement with that choice cannot transform it into cruel and unusual punishment.

The decision to disregard the July 5, 2013 recommendation from emergency room staff that Plaintiff simultaneously receive antibiotics and have his fistula drained does not disturb this conclusion. *HN11*[↑] "The mere fact that the defendant physicians may have made a different medical decision with respect to Plaintiff's treatment than that purportedly recommend by [Putnam County Hospital staff] does not indicate that they acted for culpable reasons." *McKenna v. Wright, No. 01 Civ. 6571, 2002 U.S. Dist. LEXIS 3489, 2002 WL 338375, at *8 (S.D.N.Y. Mar. 4, 2002)*; see also *Revenell, 2007 U.S. Dist. LEXIS 17868, 2007 WL 765716, at *5-6*. The *Eighth Amendment* does not require Defendants to follow the recommendation of another physician; so long as Defendants did not "know[] of and disregard[] an excessive risk to inmate health or safety," they are not sufficiently culpable to transform even negligent treatment into cruel and unusual punishment. *Martinez, 616 F. Supp. 2d at 458-59* (quoting *Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998))*.

Plaintiff undoubtedly experienced **[*18]** severe pain, and it is unfortunate that the antibiotics he was prescribed did not completely rid him of his malady, but the allegations in the Complaint demonstrate that Plaintiff received repeated attention and care throughout the summer of 2013. The extent of Plaintiff's medical treatment undermines the plausibility of any claim that his medical providers acted with deliberate indifference sufficient to support an *Eighth Amendment* claim, and accordingly this cause of action must be dismissed.[2]

_____

[2] Even if Plaintiff satisfied the pleading standards for his *Eighth Amendment* claim concerning summer 2013, this claim would only

## B. Consent Decree Claim

Although not addressed at length by either party, the Complaint includes a specific prayer for relief based on Defendants' alleged violation of the Consent Decree in <u>Milburn v. Coughlin</u>, No. 79 Civ. 5077 (LAP). As of March 2015, however, that Decree was terminated, rendering Plaintiff's claim moot. (See Clerk's Judgment, dated Mar. 9, 2015, No. 79 Civ. 5077 [dkt. no. 462].) Additionally, even if the Decree were still in effect, Plaintiff failed to comply with its administrative procedures for challenging alleged non-compliance with its terms. Specifically, under the Decree, parties were required to negotiate in good faith, and class

---

survive against Dr. Chakravorty, as the Complaint fails to allege that either Dr. Bernstein or Dr. Roth had any personal involvement in his treatment prior to Plaintiff's surgery in October 2013. See _Grullon, 720 F.3d at 138-39_. With respect to Dr. Roth, the Complaint alleges only that he was at the Green Haven clinic but did not see Plaintiff on July 19, 2013, and that he performed the surgery Plaintiff requested on October 25, 2013. (See Compl. at 8.) Nothing in the Complaint suggests that Dr. Roth was aware of Plaintiff's infection and requests for surgery prior to October 2013, or that he had any personal involvement in **[*19]** the decision to keep Plaintiff on antibiotics throughout the summer. Accordingly, Plaintiff has failed to satisfy (cont'd on next page) (cont'd from previous page) any of the <u>Colon</u> factors with respect to Dr. Roth in summer 2013. See _Colon, 58 F.3d at 873_. As for Dr. Bernstein, Plaintiff only alleges that he wrote two letters, dated June 20, 2013 and August 5, 2013, alerting Dr. Bernstein to the allegedly deficient treatment he was receiving. (See Compl. at 5, 15.) Although this nominally invokes the second <u>Colon</u> factor, nothing in the Complaint suggests that Dr. Bernstein took any action in response. See _Colon, 58 F.3d at 873_. "[A] supervisory official's mere receipt of a letter complaining about unconstitutional conduct is not enough to give rise to personal involvement on the part of the official." _Grullon, 720 F.3d at 137_ (quoting _Grullon v. City of New Haven, 10 Civ. 776, 2011 U.S. Dist. LEXIS 73561, 2011 WL 2680843, at *4 (D. Conn. July 8, 2011)); see also Davis v. City of New York, No. 00 Civ. 4309, 2000 U.S. Dist. LEXIS 18520, 2000 WL 1877045, at *9 (S.D.N.Y. Dec. 27, 2000)_. Though Plaintiff's brief references the third, fourth, and fifth <u>Colon</u> factors as well, his conclusory suggestions that Dr. Bernstein was grossly negligent in managing Dr. Chakravorty, created a policy or custom under which unconstitutional practices occurred, and was deliberately indifferent to Dr. Chakravorty's allegedly unconstitutional practices find no basis **[*20]** in the Complaint. (See Mem. of Law in Support of Pl. Reply, dated Oct. 16, 2014, at 2-3.) Because Plaintiff has failed to allege plausibly that Dr. Bernstein had any personal involvement with Plaintiff's medical treatment, his claims against this defendant also fail to satisfy any of the <u>Colon</u> factors. See _Colon, 58 F.3d at 873_.

---

counsel was required to bring facts supporting any allegation of noncompliance to the attention of defense counsel before filing a contempt motion. (Consent Decree, dated Sept. 27, 1991, No. 79 Civ. 5077), ¶ XXIX(A) - (C).)

Although **[*21]** Plaintiff may have complied with the first procedural requirement under the Decree (see Shevlin Decl., Ex. A at FORBES GRV. 5), there is nothing in the Complaint indicating that he contacted class counsel prior to the filing of this action. This noncompliance is substantial given the purpose of the Consent Decree procedures - namely "to afford the maximum legal aid to a potential petitioner, provide Defendants with an opportunity to resolve the situation adequately without resorting to the Court, and to crystallize any remaining legal issues arising under the Consent Decree that are therefore ripe for judicial review." _In re Koehl, No. 79 Civ. 5077, 2012 U.S. Dist. LEXIS 6426, 2012 WL 163242, at *1 (S.D.N.Y. Jan. 18, 2012)_. Accordingly, Plaintiff's claims under the Consent Decree must be dismissed as moot or, in the alternative, for failure to comply with the Decree's procedural requirements.

## C. State Law Claims

Plaintiff's only remaining discernable causes of action are state law negligence and medical malpractice claims. _HN12_[⬆] New York law, however, prohibits prisoners from filing civil actions "against any officer or employee of the [Department of Correctional Services], in his personal capacity, for damages arising out of any act done or the failure to perform **[*22]** any act within the scope of employment and in the discharge of the duties by such officer or employee." _N.Y. Corr. Law § 24(1)_ Rather, "[a]ny claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of the [Department of Correctional Services] shall be brought and maintained in the court of claims as a claim against the state." _N.Y. Corr. Law § 24(2)_. As such, all state

2015 U.S. Dist. LEXIS 114967, *22

law claims against DOCCS employees lie exclusively against the state and must be brought in the New York Court of Claims. See *Baker v. Coughlin, 77 F.3d 12, 15 (2d Cir. 1996)*.

Because Defendants are all DOCCS employees being sued in their individual capacities (see Compl. at 1-2), Plaintiff's state law claims against them are not cognizable under New York law and must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss [dkt. no. 17] is hereby GRANTED. The Complaint is dismissed with prejudice, as the Court concludes based on the record of care that Plaintiff received in summer 2013 reflected in the grievance file, (Shevlin Decl., Ex. A), and the procedural defects of Plaintiff's other claims that any attempt to amend would prove futile. See *McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007)*. Accordingly, the Clerk of **[\*23]** the Court shall mark this action CLOSED and all pending motions DENIED as moot.

SO ORDERED.

Dated: New York, New York

August 18, 2015

/s/ Loretta A. Preska

LORETTA A. PRESKA

Chief United States District Judge

 Positive
As of: January 7, 2025 3:04 PM Z

## *McNair v. Ponte*

United States District Court for the Southern District of New York

February 22, 2018, Decided; February 22, 2018, Filed

16-CV-4646 (PGG) (BCM)

**Reporter**

2018 U.S. Dist. LEXIS 29792 *

LARRY MCNAIR, et al., Plaintiffs, -against-
N.Y.C. D.O.C. COMMISSIONER JOSEPH
PONTE, et al., Defendants.

**Subsequent History:** Adopted by, Dismissed by
*McNair v. Ponte, 2018 U.S. Dist. LEXIS 44122
(S.D.N.Y., Mar. 19, 2018)*

Adopted by, Objection overruled by, Dismissed by,
Without prejudice, in part, Dismissed by, in part
*McNair v. Ponte, 2020 U.S. Dist. LEXIS 135045
(S.D.N.Y., July 30, 2020)*

**Counsel:**  [*1] Larry McNair, Plaintiff, Pro se,
Fishkill, NY.

Eric Keaton, Plaintiff, Pro se, New York, NY.

Malik Rainey, Plaintiff, Pro se, East Elmhurst, NY.

Antoine Garcia, Plaintiff, Pro se, East Elmhurst,
NY.

Rakeem Douglas, Plaintiff, Pro se, East Elmhurst,
NY.

For C.O. Decicco, Badge #13723, Deputy Warden
of Security Rene, Deputy Warden of Security
Caputo, Defendants: Neil Anthony Giovanatti, New
York City Law Department, New York, NY.

For Joseph Ponte, N.Y.C.D.O.C.S. Commissioner,
Monica Windley, G.R.V.C. Warden, Defendants:
Neil Anthony Giovanatti, LEAD ATTORNEY,
New York City Law Department, New York, NY.

**Judges:** BARBARA MOSES, United States
Magistrate Judge.

**Opinion by:** BARBARA MOSES

# Opinion

### REPORT AND RECOMMENDATION TO
### THE HON. PAUL G. GARDEPHE

**BARBARA MOSES, United States Magistrate
Judge**.

Before me for report and recommendation is
defendants' motion (Dkt. No. 53), made pursuant to
*Fed. R. Civ. P. 12(b)(6)*, to dismiss the six amended
complaints filed separately in this action by
plaintiffs Larry McNair (Dkt. No. 37), Eric Keaton
(Dkt. No. 44), Malik Rainey (Dkt. No. 34), Antoine
Garcia (Dkt. No. 31), Rakeem Douglas (Dkt. No.
32), and David Vaughn (Dkt. No. 33), all of whom
are present or former pretrial detainees at the
George R. Vierno Center (GRVC) [*2] on Rikers
Island. Defendants contend that plaintiffs fail to
state any cognizable claims and fail to allege the
personal involvement of any of the named
defendants. In addition, defendants argue that
plaintiffs McNair and Keaton cannot seek
injunctive relief because they are no longer
confined at Rikers Island. For the reasons that
follow, I respectfully recommend that the motion
be GRANTED but that plaintiffs be given leave to
amend, limited to (a) their claims alleging that they
are exposed to toxic mold in the GRVC showers,
and (b) plaintiff McNair's claim that he was forced
to sleep on a "yoga mat," thus causing or
exacerbating injuries to his back.

## BACKGROUND

The initial complaint in this action was filed on June 20, 2016, by Dushawn King, a pretrial detainee at GRVC, alleging three "conditions of confinement" claims pursuant to *42 U.S.C. § 1983*. The King Complaint (Dkt. No. 2) included, on an attachment, the names and signatures of 21 additional pretrial detainees. King Compl. at ECF pages 3-4. It named as defendants the then-Commissioner of New York City Department of Correction (DOC), Joseph Ponte, GRVC Warden Monica Windley, and three other DOC officers. *Id.* at ECF pages 1, 5. King alleged, **[*3]** "on behalf of all plaintiffs named herein," that from "March 2016 to the present," at the GRVC:

1) Plaintiffs were exposed to toxic mold from the showers "that was and could cause long term cancerous and lung infection during the daily showers where the steam from the hot water vaporizes, and is being inhaled by all plaintiffs," despite "pre existing work orders to remove [the mold]";

2) Plaintiffs were forced to sit on hard, metal, backless stools, causing them to walk with "hunchback syndrome," to "need the assistance of a cane" and to develop hemorrhoids; and

3) On an otherwise unspecified date in June 2016, plaintiffs were not permitted to leave their cells after an eight hour period and were denied a breakfast meal.

King Compl. at ECF pages 6-7.

The King Complaint did not particularize its allegations as to any of the individual plaintiffs. Nor, for the most part, did it specify the conduct of any of the individual defendants. Rather, King alleged generally that "defendants" had a duty "to ensure the safety of all plaintiffs under their exclusive care, custody, and control," and that Commissioner Ponte, Warden Windley, and Deputy Warden Jean Rene (never listed in the caption of the **[*4]** King Complaint but referenced in the narrative) were liable in that they "did not use their broad discretion in forming directives and policies that let their subordinates operate its facility within the confines of the United States Constitution and New York State and City Laws." King Compl. at ECF pages 6, 7-8. The King Complaint alleged a long list of injuries — again, without particularizing as to any individual plaintiff — including stress, mental anguish, chest pains, back pains, hemorrhoids, hunchback syndrome, breathing problems, runny nose, scratchy throat, teary eyes, claustrophobia, anxiety, nightmares, headaches, paranoia, visual and auditory hallucinations, cramps, and ambulation problems. *Id.* at ECF page 9.

On July 19, 2016, the Honorable Colleen McMahon, Chief United States District Judge, directed each plaintiff (except for King, who had already done so) to pay the court filing fee or file an *in forma pauperis* (IFP) application and authorization form. *See* Order dated July 19, 2016 (Dkt. No. 5) at 1-2. In addition, the Chief Judge directed each plaintiff (except for King, who had already done so) to certify the complaint, on pain of dismissal from the action. *Id.*

Eight **[*5]** plaintiffs complied with the July 19, 2016 Order. On November 9, 2016, the Chief Judge dismissed the claims of the other signatories to the original King Complaint and directed the remaining plaintiffs — now numbering nine in total — to file an amended complaint within 60 days, "to detail their claims." *See* Order to Amend, dated November 9, 2016 (Dkt. No. 28) at 1, 4. The Chief Judge specifically noted the deficiencies in the King Complaint and explained that the amended pleading would be required to "address these deficiencies." *Id.* at 3-4.

With respect to the toxic mold claims, the Chief Judge observed that the King Complaint failed to assert "(1) how each [plaintiff] . . . suffered from exposure to the mold, (2) whether Defendants [were] aware the Plaintiffs [had] become sick from the mold, or (3) how Defendants . . . ignored the risk of Plaintiffs' being exposed to the mold." Order to Amend, at 3. With respect to the backless stool

2018 U.S. Dist. LEXIS 29792, *5

claim, the Chief Judge explained that that the King Complaint did not "state any facts detailing why Defendants are requiring them to sit on a stool for prolonged periods of time and whether Defendants are aware that this prolonged sitting has caused Plaintiffs [*6] to suffer serious harm." *Id.* at 4. Finally, with respect to the missed meal claim, the Chief Judge noted that the King Complaint failed to "assert whether Defendants have refused to let [plaintiffs] leave their cells for prolonged periods without cause, on how many occasions, and how often Plaintiffs have gone without a meal" as a result. *Id.*

The Chief Judge also cautioned plaintiffs that they would be required to state the relevant facts supporting "each claim against each defendant named in the amended complaint." Order to Amend, at 5. Thus, she explained, they should:

> a) give the names and titles of all relevant persons;
> b) describe all relevant events, stating the facts that support Plaintiffs' case including what each defendant did or failed to do;
> c) give the dates and times of each relevant event or, if not known, the approximate date and time of each relevant event;
> d) give the location where each relevant event occurred;
> e) describe how each defendant's acts or omissions violated Plaintiffs' rights and describe the injuries Plaintiffs suffered; and
> f) state what relief Plaintiffs seek from the Court, such as money damages, injunctive relief, or declaratory relief.

*Id.* "Essentially," the Chief [*7] Judge instructed, "the body of Plaintiffs' amended complaint must tell the Court: who violated their federally protected rights; what facts show that their federally protected rights were violated; when such violation occurred; where such violation occurred; and why Plaintiffs are entitled to relief." *Id.*

On January 10, 2017, plaintiffs Garcia, Douglas, Vaughn, Rainey, and Keaton filed separate amended complaints. (*See* Dkt. Nos. 31, 32, 33, 34, 36.) Although their pleadings were individually signed, the substance of each appears to have been copied in substantial part from the King Complaint.[1] On February 14, 2017, plaintiff McNair, by then incarcerated at Sing Sing Correctional Facility, filed his own amended complaint, articulating a somewhat different set of claims. (Dkt. No. 37.) Three other original plaintiffs, including King, failed to file any amended pleading; as a result, their claims were dismissed by Chief Judge McMahon (*see* Dkt. No. 38) or, after this action was reassigned, by the Honorable Paul G. Gardephe, United States District Judge (*see* Dkt. No. 40, at 2).

## PLAINTIFFS' CLAIMS

The following claims are at now at issue:

**<u>Mold in the Showers</u>**. Five of the six remaining plaintiffs [*8] — Garcia, Douglas, Vaughn, Rainey and Keaton — allege that they were exposed to toxic mold in the showers at GRVC, putting them at risk of respiratory and other illnesses. These plaintiffs allege generally that, although there were work orders in place to remove the mold, the work orders were never completed and the maintenance department did not attempt to remove the mold, constituting "deliberate indifferen[ce]" and "cruel and unusual punishment." Garcia Compl. at ECF page 4; Douglas Compl. at ECF page 4; Vaughn Compl. at ECF page 4; Rainey Compl. at ECF page 4; Keaton Compl. at ECF page 5. Plaintiff Vaughn alleges that he "got a rash on [his] foot from the mold." Vaughn Compl. at ECF page 5. None of the other plaintiffs alleges any specific injury that he personally suffered as a result of the mold. None of

---

[1] There were some minor variations among the amended complaints. For example, plaintiff Keaton's amended complaint (Dkt. No. 36) listed the United States and the Treasury Department as the only defendants. Keaton was given leave to file a second amended complaint, which he did on May 1, 2017 (Dkt. No. 44), this time naming Ponte, Windley, Rene, and several other DOC officials as defendants. *Id.* at 1, 3.

the plaintiffs complied with the Chief Judge's direction to state "whether Defendants [were] aware the Plaintiffs [had] become sick from the mold" and "how Defendants . . . ignored the risk of Plaintiffs' being exposed to the mold." Order to Amend, at 3.

Plaintiff McNair does not allege any mold-related claims.

**Backless Stools**. All six plaintiffs allege that they are or were required [*9] to sit on backless stools for the 12 to 14 hours that they spent each day in the day room at GRVC. *See* Garcia Compl. at ECF page 5; Douglas Compl. at ECF page 5; Vaughn Compl. at ECF page 6; Rainey Compl. at ECF page 4; Keaton Compl. at ECF page 8; McNair Compl. at ECF page 3. Garcia, Douglas, Rainey, and Keaton allege that the stools "extend[ed]" their spines, causing them to walk with "hunchback syndrome" and to develop hemorrhoids. Garcia Compl. at ECF page 5; Douglas Compl. at ECF page 5; Rainey Compl. at ECF page 5; Keaton Compl. at ECF page 8. These plaintiffs also allege they will "need the assistance of a cane after long term use of these stools." *See, e.g.*, Garcia Compl. at ECF page 5. Douglas alleges that in "due time, after much use of such stools, the assistance of a cane to walk will be necessary." Douglas Compl. at ECF page 5. Vaughn alleges that he is "starting physical therapy for my back pain," Vaughn Compl. at ECF page 5, but does not clearly allege that his back pain was caused by the stools. None of the plaintiffs states any "facts detailing why Defendants are requiring them to sit on a stool for prolonged periods of time or whether Defendants are aware that this [*10] prolonged sitting has caused Plaintiffs to suffer serious harm," as directed by the Chief Judge. *See* Order to Amend, at 4.

**Yoga Mat**. Plaintiff McNair alleges that he was forced to sleep on a "yoga mat[ ] that [was] not manufactured for sleep purposes for months," and that this, in addition to the backless stools, caused unspecified "plaintiffs" to "suffer from 'the

hunchback syndrom'," as well as "back problems like sciatica, slipped discs, etc." McNair Compl. at ECF page 3. McNair's amended complaint does not allege which of these conditions, if any, affect him.

**Missed Breakfast**. Plaintiffs Garcia, Douglas, Rainey, and Keaton allege that sometime in June, 2016, were not let out of their cells after an eight-hour period, causing them to miss breakfast. Garcia Compl. at ECF page 5-6; Douglas Compl. at ECF page 5-6; Rainey Compl. at ECF page 5; Keaton Compl. at ECF page 8. Plaintiff McNair, however, alleges that the missed meal incident occurred on April 15, 2016. McNair Compl. at ECF page 3. Plaintiff Vaughn does not make any allegations related to a missed meal. None of the plaintiffs alleges that that the meal deprivation occurred on more than one occasion.

**Remedies**. Plaintiffs [*11] all seek monetary damages. The five who allege mold-related claims also seek an order requiring defendants to remove the mold. *See, e.g.*, Garcia Compl. at ECF page 8. McNair seeks injunctive relief regarding the backless stools and the yoga mats, as well as a ban on "excessive hours more than eight in the cell." McNair Compl. at ECF page 7.

**Allegations as to Defendants**. In addition to Commissioner Ponte and Warden Windley, various plaintiffs name as defendants (in various combinations) Deputy Warden Rene, Deputy Warden Joseph Caputo, and Correction Officer Jennifer Decicco.[2] Plaintiffs Garcia, Douglas, Rainey, Keaton, and Vaughn identify Decicco as responsible for the missed meal incident but do not otherwise specify the conduct of any individual defendant, or explain any defendant's connection to the incidents of which they complain. As to Ponte, Windley, and Rene — all presumably named in their supervisory capacities — plaintiffs Garcia, Douglas, Rainey, and Keaton allege only that they

---

[2] Certain other individuals listed as defendants in one or more of the amended complaints, including "Deputy Warden Security Hill," "C.O. Strong," and "C.O. Jane Doe," were never served (or, in the case of "Doe," identified) and have not appeared in this action.

failed to provide proper "directives and policies" to their subordinates. *See* Garcia Compl. at ECF page 5-6; Douglas Compl. at ECF page 5-6; Rainey Compl. at ECF page 5; Keaton Compl. at ECF page 8-9. **[*12]** Plaintiff Vaughn makes no allegations concerning any of these defendants beyond listing their names in his amended complaint. Vaughn Compl. at ECF page 3. McNair alleges that it was Commissioner Ponte, Warden Windley, and Deputy Hill who "forced" him to sleep on a yoga mat, but does not explain how. McNair Compl. at ECF page 3.

## THE MOTIONS TO DISMISS

On June 21, 2017, defendants Ponte, Windley, Rene, Caputo, and Decicco moved jointly to dismiss all of plaintiffs' claims pursuant to *Fed. R. Civ. P. 12(b)(6)*. *See* Def. Not. of Mot. dated June 21, 2017 (Dkt. No. 53), at 1-2. Only McNair, Keaton, and Vaughn filed opposition papers.[3] McNair filed an affidavit attesting, among other things, that he developed sciatica as "the direct [result of] sleeping on these floor mats and sitting on stools without back support." McNair Aff. dated July 11, 2017 (Dkt. No. 60), at ECF page 4. He attached, as exhibits, medical records (many of them from the Eric M. Taylor Center (EMTC) at Rikers, where he was apparently housed in the spring and summer of 2017) showing, *inter alia*, that he uses a cane, wears a back brace, and has been treated for back pain, for which he was prescribed Tylenol. *See id.* at ECF pages 9-13.[4]

---

[3] "A plaintiff's failure to oppose a *12(b)(6)* motion does not by itself merit dismissal of a complaint." *Edwards v. Horn, 2012 U.S. Dist. LEXIS 30968, 2012 WL 760172, at \*4 (S.D.N.Y. Mar. 8, 2012)* (citing *Goldberg v. Danaher, 599 F.3d 181, 183-84 (2d Cir. 2010)* and *McCall v. Pataki, 232 F.3d 321, 322-23 (2d Cir. 2000))*. In this case, the failure of certain plaintiffs to oppose the motion to dismiss had no bearing on my analysis of their claims.

[4] McNair was also prescribed Neurontin, which can be used to treat neuropathic pain. *See, e.g.,* McNair Aff. at ECF page 15. It is not clear from the records presented to the Court whether he was originally prescribed Neurontin for his back pain or another condition. McNair also has a variety of psychiatric diagnoses and has

Thereafter, **[*13]** McNair filed another letter informing the Court "of my continu[ing] and increasing back pain and injuries related to the yoga mats" that the DOC "continue[s] to use," and asserting that "the backless stools continue to also be accessible to inmates." McNair Letter dated September 15, 2017 (Dkt. No. 73), at 1. McNair asserts, among other things, that "the clinic is being flooded with sickcall complaints for back injuries" as a result of "these furnished materials." *Id.* To this letter McNair attached additional exhibits, including emails from the Prisoner's Rights Project to Rikers Island medical personnel requesting that McNair be given "pain medication that is appropriate for his condition" and that he be "seen by EMTC medical staff as soon as possible" after "slipping on the stairs" on August 8, 2017. *Id.* at ECF pages 2-4.

Plaintiffs Keaton and Vaughn filed substantially identical opposition memoranda reiterating many of the same allegations contained in their pleadings. (Dkt. Nos. 71, 74.) Additionally, insofar as relevant here, these plaintiffs provided the dimensions of a modified stool that would provide better back support and claimed, for the first time, that **[*14]** they were denied outside exercise on the same day that they missed their breakfast meal.

On October 11, 2017, Judge Gardephe denied defendants' motion to revoke plaintiff McNair's IFP status and dismiss his claims, made on the ground that McNair had accumulated more than three "strikes" within the meaning of the Prison Reform Litigation Act (PLRA), *28 U.S.C. § 1915(g)*. *See* Order dated October 11, 2017 (Dkt. No. 77) at 1. In fact, McNair had nine strikes. However, Judge Gardephe ruled that he could pursue his claims under the "imminent danger" exception to the PLRA, because his allegations concerning the risk of additional harm to his back demonstrated that he was "'under imminent danger of serious physical injury' at the time he commenced this action." *Id.* at 3.

---

been prescribed, among other things, the antipsychotic medication Seroquel and the anti-anxiety agent Buspirone. *See id.*

## ANALYSIS

## I. LEGAL STANDARDS

### A. 12(b)(6) Standards

*Fed. R. Civ. P. 8(a)(2)* requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." If that "short and plain statement" fails to present "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," the deficient claims may be dismissed pursuant to *Fed. R. Civ. P. 12(b)(6)*. *Absolute Activist Value Master Fund Ltd. v. Ficeto, 677 F.3d 60, 65 (2d Cir. 2012)* (quoting *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009))*. A claim is facially plausible "when the plaintiff pleads factual **[*15]** content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal, 556 U.S. at 678*. If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*.

When faced with a *Rule 12(b)(6)* motion, the trial court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007)*. However, those factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly, 550 U.S. at 555*. The court may not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal, 556 U.S. at 678* (quoting *Twombly, 550 U.S. at 555*). This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Geldzahler v. New York Med. Coll.,* *663 F. Supp. 2d 379, 385 (S.D.N.Y. 2009)* (quoting *Iqbal, 556 U.S. at 678*).

At a minimum, the complaint must "give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.'" *Atuahene v. City of Hartford, 10 F. App'x 33, 34 (2d Cir. 2001)* (quoting *Ferro v. Ry. Express Agency, Inc., 296 F.2d 847, 851 (2d Cir. 1961))*. The standard cannot be satisfied "[b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct." *Atuahene, 10 F. App'x at 34*. Instead, a complaint should provide "specification **[*16]** of any particular activities by any particular defendant." *In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007)*.

"Implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007)* (internal quotation marks omitted). Therefore, "[a] document filed *pro se* is to be liberally construed," and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007)* (internal quotation marks and citation omitted). Since all of the pleadings now before the Court were filed *pro se*, they must be construed liberally "to raise the strongest arguments [they] suggest[]." *Walker v. Schult, 717 F.3d 119, 124 (2d Cir. 2013)* (internal quotation marks omitted). Moreover, factual allegations made in a *pro se* plaintiff's opposition papers may be considered "as supplementing the Complaint, at least to the extent they are consistent with the allegations in the Complaint." *George v. Pathways to Hous., Inc., 2012 U.S. Dist. LEXIS 91014, 2012 WL 2512964, at *6 n.7 (S.D.N.Y. June 29, 2012)*.

Nevertheless, a *pro se* plaintiff, like any other plaintiff, "must state a plausible claim for relief," *Walker, 717 F.3d at 124*. The district court cannot

supply the necessary factual allegations if never made by the plaintiff. *See Rivera v. Baccarat, Inc., 1996 U.S. Dist. LEXIS 6355, 1996 WL 251850, at *2 (S.D.N.Y. May 10, 1996)* [*17] (quoting *Shannon v. Ford Motor Co., 72 F.3d 678, 685 (8th Cir. 1996))* ("there is a difference between liberally reading a claim which 'lacks specificity,' and inventing, *ex nihilo*, a claim which simply was not made"). "Courts have the power and duty to dismiss complaints that contain only conclusory, frivolous, or implausible allegations." *Walker, 717 F.3d at 130*.

## B. Section 1983

Construed "to raise the strongest arguments [they] suggest[]," *Walker, 717 F.3d at 124*, plaintiffs' pleadings assert claims arising under *§ 1983*, which permits civil suits against those who, acting "under color" of state law, have deprived the plaintiff of "any rights, privileges, or immunities secured by the Constitution" or laws of the United States. "*Section 1983* does not create any federal rights; rather, it provides a mechanism to enforce rights established elsewhere." *Portillo v. Webb, 2017 U.S. Dist. LEXIS 168854, 2017 WL 4570374, at *3 (S.D.N.Y. Oct. 11, 2017)* (quoting *West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988)), report and recommendation adopted, 2018 U.S. Dist. LEXIS 8136, 2018 WL 481889 (S.D.N.Y. Jan. 17, 2018)* (citing *Gonzaga Univ. v. Doe, 536 U.S. 273, 285, 122 S. Ct. 2268, 153 L. Ed. 2d 309 (2002))*. "To state a claim under *§ 1983*, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Id.* (quoting *West, 487 U.S. at 48*).

## C. Individual Liability

"[I]n order to establish a defendant's individual liability" under *§ 1983*, "a plaintiff must show []the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven, 720 F.3d 133, 138-39 (2d Cir. 2013)*. "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal, 556 U.S. at 676*. "Personal involvement is a question of fact and must be satisfied as to each individual [*18] defendant," including defendants who are alleged to have acted in a supervisory capacity. *Powell v. City of New York, 2016 U.S. Dist. LEXIS 94186, 2016 WL 4159897, at *9 (S.D.N.Y. July 14, 2016)* (quoting *Lloyd v. City of New York, 43 F. Supp. 3d 254, 266 (S.D.N.Y. 2014)), report and recommendation adopted, 2016 U.S. Dist. LEXIS 101919, 2016 WL 4147203 (S.D.N.Y. Aug. 3, 2016)*.

The Supreme Court has held that "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal, 556 U.S. at 676*. Thus, for example, where the underlying constitutional tort requires a showing of "deliberate indifference," plaintiffs are required to plead that each supervisory defendant "kn[e]w of, and disregard[ed], an excessive risk to inmate health or safety." *Powell, 2016 U.S. Dist. LEXIS 94186, 2016 WL 4159897, at *10* (quoting *Turkmen v. Hasty, 789 F.3d 218, 250 (2d Cir. 2015), rev'd on other grounds sub nom. Ziglar v. Abbasi, 137 S. Ct. 1843, 198 L. Ed. 2d 290 (2017))* (internal quotation marks omitted; alterations in the original).

## D. Conditions of Confinement

All of plaintiffs' claims arise out of their conditions of confinement at GRVC. Because plaintiffs were all pretrial detainees when their claims arose, they are analyzed under the *Due Process Clause of the Fourteenth Amendment. Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017)*. In order to survive a motion to dismiss, plaintiffs must plausibly satisfy a two-pronged test. First, the "objective prong" requires a plaintiff to plausibly allege that "the challenged conditions were sufficiently serious to

constitute objective deprivations of the right to due process." *Darnell, 849 F.3d at 29*. Second, the "mental element prong" requires a plaintiff **[\*19]** to plausibly allege that a defendant "acted with at least deliberate indifference to the challenged conditions." *Id.*

"[T]o establish an objective deprivation, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health, which includes the risk of serious damage to physical and mental soundness." *Darnell, 849 F.3d at 30* (internal citation and quotation marks omitted). This branch of the test is the same as that used for claims brought by convicted prisoners, which are analyzed under the *Eighth Amendment's* prohibition of "cruel and unusual" punishment. *Id. at 29-30*.

"There is no 'static test' to determine whether a deprivation is sufficiently serious; instead, 'the conditions themselves must be evaluated in light of contemporary standards of decency.'" *Id. at 30*; *see also Cintron v. Doldo, 688 Fed. App'x 44, 45 (2d Cir. 2017)* (quoting *Helling v. McKinney, 509 U.S. 25, 36, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993))* ("[A] court should 'assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk.'"); Order to Amend, at 3 ("Ultimately, the question is whether the conditions of the [detainee's] confinement violate contemporary standards of decency.") (citing *Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002))*. "[C]onditions of confinement may **[\*20]** be aggregated to rise to the level of a constitutional violation, but 'only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise.'" *Darnell, 849 F.3d at 30* (quoting *Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013))*.

To establish the subjective element of the test — that is, whether the defendant acted with a "sufficiently culpable state of mind," *Darnell, 849 F.3d at 35* — the plaintiff must allege facts showing that each defendant knew (or should have known) of the condition that posed the excessive risk and chose to disregard it. *Cintron, 688 Fed. App'x at 45* (quoting *Walker, 717 F.3d at 125*). As the Second Circuit recently explained:

> [T]o establish a claim for deliberate indifference to conditions of confinement under the *Due Process Clause of the Fourteenth Amendment*, the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety.

*Darnell, 849 F.3d at 35*. The deliberate indifference standard requires more than "mere negligence" on the part of the defendants. *Id. at 36*. In addition, the "reckless or intentional action (or inaction) **[\*21]** required to sustain a *§ 1983* deliberate indifference claim must be the product of a voluntary act (or omission) by the official." *Id. at 36 n.16*.

## II. APPLICATION OF STANDARDS

### A. Mold in the Showers

Plaintiffs' allegations that they were exposed to potentially toxic mold in the GRVC showers, even viewed in the most favorable light, are not sufficient to state a *§ 1983* claim against any of the defendants they have sued. Although the objective element of the claim presents a close question, plaintiffs fail to allege facts showing the personal involvement of any defendant in the mold condition, much less that any defendant knew about the mold, as well as its risks, and exhibited deliberate indifference to that danger.

Five of the six plaintiffs (all except McNair) allege that they are "subject to the ingestion of mold,

which is . . . toxic[,] from [the] shower area," and which "could very well cause cancerous and lung infection long term." Douglas Compl. at ECF page 4. The mold is "vaporize[d]" in the steam produced by the hot water in the showers, whereupon it is "inhaled during daily day and night showers." *Id. Accord* Garcia Compl. at ECF page 4; Vaughn Compl. at ECF page 4; Rainey Compl. at ECF page 4; Keaton Compl. **[*22]** at ECF page 5. Plaintiff Vaughn specifically alleges that the mold caused him to develop a foot rash. Vaughn Compl. at ECF page 5. No other plaintiff alleges that he has suffered any specific injury (or required any treatment) as a result of the mold.

Courts have found that "allegations of exposure to black mold may, in certain circumstances, satisfy the objective element of [a conditions of confinement] claim provided that the plaintiff alleges that he or she suffered, or is at a substantial risk of suffering from, an injury or health problem as a result of such exposure." *Reid v. Nassau Cty. Sheriff's Dep't, 2014 U.S. Dist. LEXIS 117471, 2014 WL 4185195, at *14 n.14 (E.D.N.Y. Aug. 20, 2014)* (collecting cases); *see also Henrius v. Cty. of Nassau, 2016 U.S. Dist. LEXIS 43795, 2016 WL 1296215, at *16 (E.D.N.Y. Mar. 31, 2016)* (allegations of mold in plaintiff's cell, and on the mattress where plaintiff slept, combined with allegations that plaintiff's cell had poor air ventilation and a roach infestation, were sufficient in combination to satisfy the objective element of a *§ 1983* claim).

However, even construing the mold claims "liberally," *Erickson, 551 U.S. at 94*, to allege conditions that violate "contemporary standards of decency," *Cintron, 688 Fed. App'x at 45*, plaintiffs fail to state facts making any of the defendants liable for the condition. Plaintiffs allege only that there were "pre-existing work orders" to remove the mold, but that the work was never **[*23]** completed or even attempted "by the Defendants' maintenance department." Vaughn Compl. at ECF page 4; *accord* Douglas Compl. at ECF page 4; Garcia Compl. at ECF page 4; Rainey Compl. at

ECF page 4; Keaton Compl. at ECF page 5. Plaintiffs do not allege that any of the individually named defendants knew about the work orders or otherwise were apprised of the mold condition or its dangers. For example, there are no allegations that any of the defendants saw the mold, heard about the mold, or discussed the mold with any plaintiff. Nor do plaintiffs allege that any defendant had maintenance responsibilities. *See Cintron, 688 Fed. App'x at 45* ("The defendant must have known of the condition that posed an excessive risk to inmate health and chosen to disregard it."); *Grullon, 720 F.3d at 139* (affirming dismissal of complaint against defendant warden where there were no "direct" or "indirect" allegations of the warden's "personal involvement in or awareness of the health, safety, and communications issues raised by [plaintiff].")

Plaintiff Vaughn, as noted above, does not allege any facts as to the conduct of any defendant; he simply lists them in the "Defendant Information" section of his amended complaint. Vaughn Compl. at ECF page 3. The other **[*24]** plaintiffs who have asserted mold-related claims appear to allege, in extremely general terms, that the most senior defendants — Commissioner Ponte, Warden Windley, and Deputy Warden Rene — failed to require their subordinates to comply with the Constitution. *See* Douglas Compl. at ECF page 6 (Ponte, Windley, and Rene failed to "use their broad discretion in forming directives and policies that let their subordinates operate [the] facility within the guidelines of the United States Constitution . . . which makes [these] defendants liable"); *accord* Garcia Compl. at ECF page 6; Rainey Compl. at ECF page 5; Keaton Compl. at ECF page 9.

These allegations are plainly inadequate. Under *§ 1983*, a plaintiff must show "more than the linkage in the prison chain of command; the doctrine of *respondeat superior* does not apply." *Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985)*. Where, as here, the underlying constitutional tort requires a showing of "deliberate indifference,"

plaintiffs must plead facts showing that each supervisory defendant "kn[e]w of, and disregard[ed], an excessive risk to inmate health or safety." *Turkmen, 789 F.3d at 250*. Here, plaintiffs failed to plead any facts suggesting that the supervisory defendants were made aware of the mold condition (or ignored **[*25]** direct evidence of it) and failed to rectify or address it, or knowingly permitted their subordinates to do the same.

The Second Circuit has held that a *pro se* plaintiff must be given an opportunity to amend his complaint "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Grullon, 720 F.3d at 139*. Plaintiffs here have already had one amendment opportunity. Moreover, Chief Judge McMahon instructed them, when granting leave to amend, that they must allege, with respect to all of their claims, "how each defendant's acts or omissions violated Plaintiffs' rights," and in connection with their mold claims should explain "whether Defendants [were] aware the Plaintiffs [had] become sick from the mold" and "how Defendants . . . ignored the risk of Plaintiffs' being exposed to the mold." Order to Amend, at 5, 3. However, I cannot conclude on the present record, that further amendment would be "futile," particularly in light of plaintiffs' allegations that work orders existed but were not executed. *See Grullon, 720 F.3d at 140*; *see also Abreu v. Schriro, 2016 U.S. Dist. LEXIS 86212, 2016 WL 3647958, at \*8 (S.D.N.Y. July 1, 2016)* ("Despite the fact that Plaintiff has amended his complaint twice, the Court is mindful that a *pro se* litigant in particular should be afforded **[*26]** every reasonable opportunity to demonstrate that he has a valid claim.") (internal quotation marks omitted).

I therefore recommend, respectfully, that the mold-related claims alleged by plaintiffs Garcia, Douglas, Vaughn, Rainey, and Keaton be DISMISSED WITHOUT PREJUDICE, and that they be permitted one further opportunity to allege *facts* showing (a) that the mold in the showers has caused, or poses an unreasonable risk of, "serious

damage" to their own health, *Darnell, 849 F.3d at 30*; and (b) that each defendant-official "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id. at 35*.

## B. Backless Stools

Once again viewing the amended complaints in the light most favorable to plaintiffs, I conclude that they do not plausibly allege any *§ 1983* claim arising out of the seating options in the day room of GRVC housing unit 15B. All six plaintiffs allege that they only have backless metal stools to sit on during the time they are in the day room. Although some of these plaintiffs claim **[*27]** in conclusory terms that they were "forced" to sit on these stools, *see, e.g.*, Garcia Compl. at ECF page 5 (plaintiffs were "forced to sit on stools that provide no back support daily for the duration (13 to 14 hours)"), a more plausible reading of their allegations is that no better furniture was available for them to sit on. *See, e.g.*, Douglas Compl. at ECF page 5 (plaintiff is "subjected without option to sit on metal stools in [the] day area"). No plaintiff alleges that he is unable to stand, to stretch, or to move around the day room.

Plaintiffs' injury allegations are similarly diffuse. Garcia, Douglas, Rainey, Keaton, and McNair allege that the stools "extend" their spines and/or cause "hunchback syndrome." *See, e.g.*, Garcia Compl. at ECF page 5. Garcia, Douglas, Rainey, and Keaton allege, in various combinations, that they may develop hemorrhoids and/or require the assistance of canes in the future. *See* Garcia Compl. at ECF page 5; Douglas Compl. at ECF page 5; Rainey Compl. at ECF page 5; Keaton Compl. at ECF page 8. Vaughn alleges that he is starting physical therapy for back pain. Vaughn Compl. at ECF page 5. Keaton alleges that he has already

developed hemorrhoids "as the **[\*28]** exact result of this dysfunctional furniture." Keaton Compl. at ECF page 8. McNair alleges in his motion papers (though not in his amended complaint) that the stools, together with the yoga mats, caused him to develop sciatica. McNair Aff. at ECF page 4.

While "prisoners may not be denied the minimal civilized measure of life's necessities," the Constitution "does not mandate comfortable prisons." *Phelps, 308 F.3d at 185* (quoting *Rhodes v Chapman, 452 U.S. 337, 347, 349, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981)*. I cannot conclude that offering only backless stools to sit on in the day room is sufficiently serious, in light of contemporary "standards of decency," *Cintron, 688 Fed. App'x at 45*, to rise to the level of a *Fourteenth Amendment* violation. Moreover, plaintiffs' allegations that sitting on the stools "extend[s] their spines or causes "hunchback syndrome" — particularly without any allegation that any particular plaintiff has actually required treatment for such a syndrome — appears both speculative and implausible. Even plaintiff Vaughn, who alleges that he is starting physical therapy for back pain, does not link that pain to his allegations concerning the backless stools.

Assuming, *arguendo*, that plaintiffs' allegations concerning the stools met the objective component of the test outlined in *Darnell*, the claim would nonetheless **[\*29]** fail, because plaintiffs do not explain how any of the defendants they have sued was personally involved in creating (or failing to remediate) the condition complained of, much less that any them acted with a "sufficiently culpable state of mind." *Darnell, 849 F.3d at 35*. I therefore recommend, respectfully, that plaintiffs' claims regarding the backless stools be DISMISSED WITH PREJUDICE.

## C. Yoga Mat

Plaintiff McNair alleges that Commissioner Ponte, Warden Windley, and Deputy Warden Caputo "forc[ed] [him] to sleep on yoga mats that were not manufactured for sleep purposes for months." McNair Compl. at ECF page 3. McNair is the only plaintiff to make this claim. He is also the only plaintiff to demonstrate a history of medical problems, including back pain, and to allege clearly that his back problems were caused or exacerbated by the conditions of which he complains. As noted above, McNair has shown that he uses a cane, wears a back brace, and takes back pain medication, McNair Aff. at ECF pages 9-36, and alleges that he developed sciatica as a result of (among other things) sleeping on a yoga mat "for months." *Id.* at ECF page 4; McNair Compl. at ECF page 3.

An inmate required to sleep on the floor may state **[\*30]** a claim for an unconstitutional condition of confinement. *Lareau v. Manson, 651 F.3d 96, 107-08 (2d Cir. 1981)* (holding that, *inter alia*, "forcing [inmates] to sleep on mattresses on the floors . . . do[es] not provide minimum decent housing under any circumstances for any period of time"). The sufficiency of such a claim must be evaluated in light of the "particular circumstances of the case," *Peterkin v. Walker, 101 F.3d 681 (2d Cir. 1996)*, including the "severity and duration" of the alleged deprivation. *Darnell, 849 F.3d at 32. See, e.g., Brown v. McGinnis, 2012 U.S. Dist. LEXIS 10847, 2012 WL 267638, at \*6 (W.D.N.Y. Jan. 30, 2012)* (finding that where plaintiff was required to sleep on "a floor mat for only two days" as a result of "Defendants' efforts to respond to Plaintiff's hunger strike. . . . the deprivations do not implicate the Constitution.") Although McNair's allegations are short on specifics — he does not describe his mattress other than to call it a "yoga mat," and does not explain when or why he was deprived of a standard prison mattress "manufactured for sleep purposes," McNair Compl. at ECF page 3 — his allegations that this condition persisted for "months," despite his pre-existing back problems, and that he developed additional medical problems as a result, arguably satisfy the pleading threshold for the objective prong of a *Fourteenth Amendment* conditions-of-confinement

claim.

However, McNair **[*31]** fails to allege facts demonstrating the personal involvement of any of the defendants he names. His allegation that Ponte, Windley, and Caputo "forced" him to sleep on a yoga mat, McNair Compl. at ECF page 3, is wholly conclusory and lacks any factual detail explaining what these defendants actually did. For example, there is no allegation that any of these senior DOC officials personally required McNair to sleep on a yoga mat, directed others to do so, or even knew what type of bedding McNair was given. Nor is there any allegation that these defendants created or enforced a policy requiring inmates to sleep on yoga mats at the GRVC.

McNair does allege that he filed a grievance regarding the yoga mat, which is still pending, and that "[i]n April of 2016, complaints were sent to Deputy Warden Caputo, Warden Windley, and Commissioner Joseph Ponte," to which they did not respond. McNair Compl. at ECF pages 6-7. However, it is well-settled that allegations of this type — charging only that a senior official failed to act following receipt of plaintiff's complaint — are insufficient to show that official's personal involvement in an alleged constitutional tort. *See, e.g., McIntosh v. United States, 2016 U.S. Dist. LEXIS 44290, 2016 WL 1274585, at \*16 (S.D.N.Y. Mar. 31, 2016)* (mere receipt **[*32]** of a complaint or grievance from an inmate is insufficient to establish "personal involvement" in the underlying violation); *Alvarado v. Westchester Cty., 22 F. Supp. 3d 208, 215 (S.D.N.Y. 2014)* (holding that defendant prison officials' "mere receipt of [plaintiff's] grievance, and their subsequent inaction, are insufficient to establish the personal involvement of these defendants," and collecting cases).

Absent any specific factual allegations from which this Court could infer that "each Government-official defendant, through the official's own individual actions, has violated the Constitution," *Iqbal, 556 U.S. at 676*, McNair's claim related to

the yoga mat cannot survive defendants' motion. Given the nature of the claim, however, and the relatively robust injury allegations, I respectfully recommend that plaintiff McNair's yoga mat claim be DISMISSED WITHOUT PREJUDICE, and that he be permitted one further opportunity to allege *facts* showing that each defendant-official "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell, 849 F.3d at 35*.[5]

## D. Missed Meal

I recommend that the missed meal claims — asserted by plaintiffs Garcia, Douglas, Rainey, Keaton, and McNair — be DISMISSED WITH PREJUDICE. It is well established that a single missed meal cannot satisfy even the objective prong of a conditions-of-confinement claim. *Pagan, 2014 U.S. Dist. LEXIS 33408, 2014 WL 982876, at \*20* (allegation that plaintiff missed a meal on days that he traveled to court did not rise to the level of a constitutional violation); *Edwards v. Horn, 2012 U.S. Dist. LEXIS 30968, 2012 WL 760172, at \*8-9 (S.D.N.Y. Mar. 8, 2012)* (allegation that plaintiff missed one morning meal and an afternoon meal in a six month period insufficient to establish a constitutional violation); *Odom v. Coombe, 1998 U.S. Dist. LEXIS 3210, 1998 WL 120361, at \*4 (S.D.N.Y. Mar. 18, 1998)* ("an occasional deprivation of meals cannot rise to a constitutional violation"), *abrogated on other grounds by Jenkins v. Haubert, 179 F.3d 19 (2d*

---

[5] If at the time of repleading McNair is not housed at the GRCV or otherwise not required to sleep on a yoga mat, his claim for injunctive relief will be moot and cannot be reasserted. The same is true with respect to any plaintiffs given leave to replead their claims arising from mold in the GRVC showers. *See* **[*33]** *Prins v. Coughlin, 76 F.3d 504, 506 (2d Cir. 1996)* ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility.").

*Cir. 1999)*. Here, no plaintiff alleges that he missed more than one breakfast. Thus, the missed-meal claim — whether considered alone or in combination with plaintiffs' other claims — cannot not survive against any defendant.[6]

**E. Missed Exercise Period**

Plaintiffs Vaughn and Keaton make additional claims for the first time in their opposition briefs: that they were denied outside exercise sometime in June 2016, apparently on the same day they missed breakfast. Vaughn Opp (Dkt. No. 74) at 4; Keaton Opp. (Dkt. No. 71) at **[*34]** 3. Because these are new claims (for deprivation of exercise rather than food), they are not properly considered in connection with defendants' motion to dismiss plaintiffs' existing claims. Even if I were to analyze them on the merits, however, I would conclude that they fail to state a constitutional claim, either alone or in combination with plaintiffs' missed breakfast claims. A missed day of exercise is not so "objectively sufficiently serious" as to constitute a denial of "the minimal civilized measure of life's necessities." *Darnell, 849 F.3d at 35*.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend:

1. That the claims of plaintiffs Garcia, Douglas, Vaughn, Rainey and Keaton related to mold in the GRVC showers be DISMISSED WITHOUT PREJUDICE, and that these

plaintiffs be granted leave to amend for the limited purpose set forth above in Part II.A of this Report and Recommendation;

2. That plaintiffs' claims related to backless stools be DISMISSED WITH PREJUDICE;

3. That plaintiff McNair's claim alleging that he was required to sleep on a yoga mat be DISMISSED WITHOUT PREJUDICE, and that McNair (the only plaintiff to make this claim) be granted leave to amend for the limited purpose set **[*35]** forth in Part II.C above; and

4. That plaintiffs' claims related to a missed breakfast meal be DISMISSED WITH PREJUDICE.

I further recommend that discovery, which has not yet commenced, be STAYED until such time as one or more plaintiffs have pleaded a cognizable claim.

The Clerk of Court is respectfully directed to mail a copy of this Report and Recommendation to the plaintiffs.

**NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen days from this date to file written objections to this Report and Recommendation pursuant to *28 U.S.C. § 636(b)(1)* and *Fed. R. Civ. P. 72(b)*. *See also Fed. R. Civ. P. 6(a)* and *(d)*. Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Hon. Paul G. Gardephe at 40 Foley Square, New York, New York 10007, and to the chambers of the undersigned magistrate judge. Any request for an extension of time to file objections must be directed to Judge Gardephe. Failure to file timely objections will preclude appellate review. *See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985)*; *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010)*.

---

[6] Plaintiffs Garcia, Douglas, Rainey, Keaton allege that defendant Dicecco (together with "Officer Strong," who was never served), was responsible for the missed meal. *See, e.g.*, Garcia Compl. at ECF page 5 (Decicco and Strong "took it upon themselves to deny all inmates breakfast that morning"). Plaintiff McNair, who gives a different date for the missed meal, blames "Officer Jane Doe," who was never identified or served. *See* McNair Compl. at ECF page 3. No plaintiff alleges any facts from which it could be inferred that these officers — much less the senior DOC officials named in their complaints — knew of, and ignored, an "excessive risk to health and safety." *Darnell, 849 F.3d at 35*.

2018 U.S. Dist. LEXIS 29792, *35

Dated: New York, New York

February 22, 2018

**SO ORDERED**.

/s/ Barbara Moses

**BARBARA MOSES**

**United States Magistrate Judge**

---

**End of Document**